1  David S. Kupetz (CA Bar No. 125062)
       dkupetz@sulmeyerlaw.com
2  Steven F. Werth (CA Bar No. 205434)
       swerth@sulmeyerlaw.com
3  **Sulmeyer**Kupetz
   A Professional Corporation
4  333 South Hope Street, Thirty-Fifth Floor
   Los Angeles, California  90071-1406
5  Telephone:  213.626.2311

6
7  (Proposed) Bankruptcy Counsel for No
   Fear Retail Stores, Inc. Simo Holdings, Inc,
   and No Fear MX, Inc., Debtors and Debtors
8  in Possession

9              **UNITED STATES BANKRUPTCY COURT**

10              **Southern District of California**

11  In re                                    | Case No.  11-02896-MM11

12                                           | (Jointly Administered with Case Nos.
                                             | 11-02897-MM11; 11-02898-MM11)
13  NO FEAR RETAIL STORES, INC.,
    a    California    corporation,    SIMO  | Chapter 11 Cases
14  HOLDINGS,    INC.,    a    California
    corporation, and NO FEAR MX, INC., a     | **MOTION OF DEBTORS AND
15  California corporation,                   | DEBTORS IN POSSESSION FOR
                                             | ORDER AUTHORIZING DEBTORS
16                                           | TO ENTER INTO DEBTOR IN
                                             | POSSESSION CREDIT FACILITY
17              Related Debtors.             | WITH HILCO BRANDS, LLC AND
                                             | INFINITY FS BRANDS, LLC;
18                                           | MEMORANDUM OF POINTS AND
                                             | AUTHORITIES; DECLARATIONS OF
19                                           | MARK SIMO AND MATTHEW
                                             | VENTURI IN SUPPORT THEREOF**
20
                                             | **[Ex Parte Motion For Order
21                                           | Shortening Time Filed Concurrently
    Employer  ID  Nos.  20-5238208,  93-     | Herewith]**
22  1037856, 26-0432196
                                             | DATE:   [To Be Determined]
23                                           | TIME:   [To Be Determined]]
                                             | PLACE: U.S. Bankruptcy Court
24                                           |            325 West "F" Street
                                             |            San Diego, CA 92101
25
26
27
28

SWERTH\ 708181.6

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF RELIEF REQUESTED ..................................... 5

II. BACKGROUND FACTS ................................................................................ 6

    A.    Commencement of Chapter 11 Cases............................................................. 6

    B.    Business Overview ......................................................................................... 6

    C.    The Debtors' Secured Debt............................................................................ 7

    D.    The Debtors' Unsecured Debt........................................................................ 8

    E.    Factors Precipitating Chapter 11 Filing ......................................................... 8

    F.    The Need For Post-Petition Financing ......................................................... 10

    G.    Hilco/Infinity And Its Proposed Financing..................................................... 11

    H.    The Terms Of The DIP Financing ................................................................. 13

    I.     The DIP Facility Should Be Approved........................................................... 16

           1.    The DIP Facility Is An Appropriate Exercise of the Debtors' Business Judgment........................................................................ 16

           2.    The Break-up Fee is Appropriate ....................................................... 20

           3.    Legal Fee Reimbursement Is Appropriate......................................... 21

III. CONCLUSION ........................................................................................ 22

DECLARATION OF MARK SIMO ..................................................................... 23

DECLARATION OF MATTHEW VENTURI ........................................................ 30

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

# TABLE OF AUTHORITIES

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

Page

<u>CASES</u>

Bray v. Ingersoll-Rand Fin. Credit Corp.,
    789 F.2d 1085 (4th Cir. 1986)............................................................... 19

Cottle v. Storer Communication Inc.,
    849 F.2d 570 (11th Cir. 1988)............................................................... 20

In re 995 Fifth Ave. Assoc., L.P.,
    96 B.R. 24 (Bankr. S.D.N.Y. 1989) ..................................................... 20

In re Ames Dept. Stores, Inc.,
    115 B.R. 34 (Bankr. S.D. N.Y. 1990) .................................................. 17

In re Financial News Network, Inc.,
    126 B.R. 152 n. 5 (Bankr. S.D.N.Y. 1991) ......................................... 20

In re Integrated Resources, Inc.,
    147 B.R. 650 (S.D.N.Y. 1992), ............................................................ 21

In re QHB Holdings LLC,
    2009 Bankr. LEXIS 4720 *50 (Bankr. D. Del. Dec. 22, 2009).............. 22

In re S.N.A. Nut Co.,
    186 B.R. 98, 101 (Bankr. N.D. Ill. 1995) ............................................. 20

In re Simasko Prod. Co.,
    47 B.R. 444 (D. Colo. 1985) ................................................................ 16

United States v. Block (In re Rigden),
    759 F.2d 727 (9th Cir. 1986). .............................................................. 19

<u>STATUTES</u>

11 U.S.C. § 364........................................................................................ 16

11 U.S.C. § 364(c)............................................................................... 16, 17

11 U.S.C. § 364(d) ................................................................................... 16

11 U.S.C. § 364(d)(1)................................................................................ 17

11 U.S.C. § 503(b) .................................................................................... 17

11 U.S.C. § 503(b)(1)................................................................................ 17

11 U.S.C. § 507(b) .................................................................................... 17

11 U.S.C. § 1101(1) .................................................................................... 6

11 U.S.C. § 1107 ................................................................................................ 19

11 U.S.C. § 1107(a) ............................................................................................ 6

11 U.S.C. § 1108 ............................................................................................ 6, 19

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TO THE HONORABLE MARGARET M. MANN, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, SECURED CREDITORS OF RECORD, THE TWENTY LARGEST UNSECURED CREDITORS OF THE DEBTORS, AND PARTIES ENTITLED TO NOTICE:

## MOTION

Through this Motion (the "Motion"), No Fear Retail Stores, Inc. ("NFRS"), Simo Holdings, Inc. ("Simo Holdings"), and No Fear MX, Inc. ("NFMX", and together with NFRS and Simo Holdings, the "Debtors") debtors and debtors in possession in the above-captioned cases, hereby move this Court, pursuant to 11 U.S.C. §§ 105, 363 and 364, for an Order:

(1)    authorizing the break-up fee ("Break-up Fee") as provided for in the signed term sheet dated March 15, 2011 (the "Term Sheet") among the Debtors and Hilco Brands, LLC and Infinity FS Brands, LLC (collectively, "Hilco/Infinity");

(2)    authorizing the Debtors to pay immediately the amount of $25,000 to Hilco/Infinity as a non-refundable fee for legal expenses;

(3)    authorizing the Debtors to pay Hilco/Infinity an additional fee for reasonable legal expenses of up to $65,000 to be paid at the closing of the financing contemplated by the Term Sheet; and

(4)    setting a final hearing for approval of a proposed debtor in possession credit facility with Hilco/Infinity (the "DIP Facility") consistent with the terms of the Term Sheet, for a date approximately 25 days from the date of this Motion, or as soon thereafter as the Court will allow.    The Debtors will file definitive documentation with the Court regarding the DIP Facility prior to the final hearing on the Motion.

As set forth in the Memorandum of Points and Authorities below, the Debtors need to access post-petition working capital in order to finance new inventory purchases and meet ongoing operating and administrative expenses. Such financing is critical in order for the Debtors to maintain their business

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1 | operations and enterprise value.  The Debtors believe that the DIP Facility meets
2 | the Debtors' needs and will allow the Debtors the necessary time and opportunity
3 | to develop, present and confirm a plan of reorganization in a reasonable fashion
4 | and on a timely basis.

5 | The Motion is based upon this Motion, the attached Memorandum of Points
6 | and Authorities, and the declaration of Mark Simo, the Debtors' chief executive
7 | officer, attached hereto, the Declaration of Matthew Venturi, the Debtors' financial
8 | advisor, attached hereto,  and the facts on record in these cases.

9 | The Debtors hereby request, as set forth in the concurrently-filed Ex Parte
10 | Motion for order shortening time on the Motion, that the Court schedule an initial
11 | hearing on the Motion to approve the Break-up Fee and legal fee
12 | advances/reimbursements on shortened time (approximately 8 days or as soon
13 | thereafter as the Court may allow), and further schedule a final hearing for
14 | approval of the DIP Facility on shortened time (approximately 25 days from the
15 | date of filing of this Motion, or as soon thereafter as the Court will allow), pursuant
16 | to Local Bankruptcy Rules 9006-1(f) and 9013-6(a)(1)(F).

17 | The Debtors' counsel shall provide telephonic notice, notice by electronic
18 | mail, or notice by facsimile of the initial hearing on this Motion to the Office of the
19 | United States Trustee, creditors alleging secured claims of the Debtors, creditors
20 | holding the twenty largest general unsecured claims of each of the Debtors, and
21 | parties requesting special notice.  In addition, the Debtors have served copies of
22 | this Motion of the same parties by electronic mail and/or overnight mail, and will
23 | provide a copy of this Motion to any party that appears at the initial hearing on this
24 | Motion.

25 | WHEREFORE, the Debtors respectfully request that the Court set an initial
26 | hearing to authorize the Break-up Fee as provided for in the Term Sheet and
27 | authorize the payment of legal expenses to Hilco/Infinity as provided for in the
28 | Term Sheet, on shortened time (approximately 8 days or as soon thereafter as the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  Court may allow), and further schedule a final hearing for approval of the DIP

2  Facility on shortened time (approximately 25 days from the date of filing of this

3  Motion, or as soon thereafter as the Court will allow), with the Debtors to file

4  further and definitive documentation regarding the DIP Facility prior to the final

5  hearing.

6  DATED: March 18, 2011                    Respectfully submitted,

7                                            **Sulmeyer**Kupetz
                                             A Professional Corporation

8

9

10                                            By: _____

11                                            Steven F. Werth
                                             (Proposed) Bankruptcy Counsel for No
                                             Fear Retail Stores, Inc., No Fear MX, Inc.,
12                                            and Simo Holdings, Inc., Debtors and
                                             Debtors in Possession

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SWERTH\ 708181.6                                4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.
## INTRODUCTION AND SUMMARY OF RELIEF REQUESTED

The Debtors need to access post-petition working capital in order to finance new inventory purchases and meet ongoing operating and administrative expenses. Such financing is critical in order for the Debtors to maintain their business operations and enterprise value. The Debtors believe that the DIP Facility, which will have the substantive terms set forth in the executed Term Sheet attached hereto, meets the Debtors' needs and will allow the Debtors the necessary time and opportunity to develop, present and confirm a plan of reorganization in a reasonable fashion and on a timely basis. A true and correct copy of the Term Sheet is attached hereto as **Exhibit "1"**. In order for Hilco/Infinity to proceed with the DIP Facility transaction, Hilco/Infinity must conduct certain due diligence and prepare definitive DIP Facility documentation, and requires approval of the Break-up Fee and the advance/reimbursement for its reasonable attorneys' fees and costs as set forth in the Term Sheet.

The Debtors are seeking approval of the Break-up Fee and the attorneys' fees provisions of the Term Sheet at the initial hearing in this matter. Contemporaneously with the filing of this Motion, the Debtors are filing an ex parte motion for order shortening time, seeking Court authorization for such initial hearing to be set on 8 days notice or as soon thereafter as the Court will allow. The Debtors are also requesting that, at the initial hearing, the Court set a final hearing to address approval of the DIP Facility in accordance with the terms set forth in the Term Sheet, with the Debtors to file definitive DIP Facility documentation prior to the final hearing.

///
///
///

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

# II.
# BACKGROUND FACTS

## A.    Commencement of Chapter 11 Cases

The Debtors are the debtors in possession in the above-captioned jointly administered chapter 11 reorganization cases pending before this Court.  The Debtors commenced these cases by filing voluntary chapter 11 petitions on February 24, 2011 (the "Petition Date").

On February 25, 2011, the Debtors filed numerous "first day" motions before this Court, seeking (among other things) authority to use cash collateral, to establish procedures relating to utility providers, to pay employees' priority prepetition claims, preserve existing cash management systems, reject twelve real property leases, and for joint administration of these cases.

On March 4, 2011, the Court entered an order providing for joint administration of the chapter 11 cases of NFRS (Bankruptcy Case No. 11-02896-MM11), Simo Holdings (Bankruptcy Case No. 11-02898-MM11), and NFMX (Bankruptcy Case No. 11-02897-MM11).

The Debtors remain in possession of their assets and are acting as debtors in possession pursuant to 11 U.S.C. §§ 1101(1), 1107(a) and 1108.

## B.    Business Overview

NFRS, Simo Holdings, and NFMX are related entities that are operated and function together as a business enterprise that primarily involves the retail sale of casual apparel and accessories as well as protective motocross equipment and the licensing of intellectual property rights.  Their corporate and administrative offices and warehouse are located together at 1812 Aston Avenue, Carlsbad, California.  The Board of Directors for each of NFRS, Simo Holdings, and NFMX consist of Mark Simo, Brian Simo, and Scott Benjamin.  The senior officers for each of the entities are also the same.  NFMX is a wholly-owned subsidiary of Simo Holdings.  Simo Holdings owns 97.75% of the stock of NFRS.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 · FAX 213.629.4520

The Debtors currently operate 41 retail stores in seven different states. The difficult economic environment has imposed significant stress on the Company's operations and revenues. During recent months prior to commencement of these chapter 11 cases, the Debtors have implemented certain cost-cutting measures. Among other things, the Debtors closed twelve retail stores. In order to preserve the value of the Debtors' assets for the benefit of all creditors, and in order to allow the Debtors the opportunity to develop and present a plan of reorganization, the Applicants commenced these chapter 11 reorganization cases.

The primary source of income, at this time, for the Debtors (and the estates) are the revenues the Debtors generate through their retail operations.

**C.   The Debtors' Secured Debt**

In November 2009, NFRS entered into a credit card receivables financing arrangement with Credit Cash NJ, LLC ("Credit Cash"). Under this arrangement, Credit Cash made loans to NFRS, secured by a first lien on all assets of NFRS and that were repaid through deductions from NFRS's daily credit card receipts. NFRS took $500,000 loans from Credit Cash in November and December of 2009 and July, November and December of 2010. As of the Petition Date, NFRS owed Credit Cash approximately $1,129,038. Credit Cash asserts a security interest in certain of the Debtor's assets as well as the assets of NFMX.

There are only two entities with a secured interest in the assets of Simo Holdings, and both entities obtained such interest by filing a writ of attachment against Simo Holdings. Those entities are FMF Racing, which filed a writ of attachment against Simo Holdings in the amount of $1,500,000, and Don Emler, who filed a writ of attachment against Simo Holdings in the amount of $802,333.33. The scope of the liens created by the writs of attachment is limited to property subject to a statutory method of levy under California law, and includes real property in California, tangible personal property, inventory, accounts receivable, and general intangibles (but not copyrights and trademarks).

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    Additionally, AFCO Acceptance Corp. ("AFCO") is a secured creditor of the

2  Debtors pursuant to insurance premium financing agreements with the Debtors,

3  with such security interests limited to the subject insurance policies and related

4  proceeds.   Silver Triangle Industries Inc. ("STI") and Ralph's Sportswear LLC

5  ("RS") are consignment vendors to NFRS and also licensees of Simo Holdings

6  and NFRS.   Under their consignment agreements with NFRS, both STI and RS

7  have consigned inventory located at NFRS's warehouse and at NFRS retail

8  stores, and as licensees, both STI and RS are permitted to store licensed products

9  at the Debtors' warehouse in Carlsbad, CA.  As consignment vendors, STI and RS

10  have each filed a "consignee/consignor" financing statement against Simo

11  Holdings and NFRS.   These financing statements describe the collateral as

12  personal property consigned to NFRS and located at the NFRS warehouse or in

13  NFRS stores, and expressly exclude personal property owned by Simo Holdings

14  or NFRS.  As licenses, STI and RS also have each filed a "bailor/bailee" financing

15  statement against Simo Holdings and NFRS.    These financing statements

16  describe the collateral as personal property of STI or RS, as applicable, that is

17  located at the Debtors' Carlsbad warehouse, and also expressly exclude personal

18  property owned by Simo Holdings or NFRS.

19    **D.    The Debtors' Unsecured Debt**

20    As of the Petition Date, NFRS had estimated unsecured debt in the

21  approximate amount of $8 million, Simo Holdings had estimated unsecured debt in

22  the approximate amount of $14.6 million, and NFMX had estimated unsecured

23  debt in the approximate amount of $6 million, all primarily owed to landlords, trade

24  vendors, suppliers, shippers, and other service providers.

25    **E.    Factors Precipitating Chapter 11 Filing**

26    As a consumer business selling discretionary items, the Debtors have been

27  negatively impacted by the recession that hit the United States starting in late 2007. The

28  Debtors have been disproportionately impacted by the downturn in consumer spending

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

given (i) the discretionary nature of their products, (ii) their target customer and (iii) their geographic concentration. The Debtors' businesses primarily consist of the wholesale and retail sale of casual apparel and accessories as well as protective motocross equipment. All of these items are discretionary purchases for consumers and have been disproportionately impacted by the downturn in consumer spending. In addition, the Debtors target "blue collar" customers, who have been severely hurt by the housing and labor crises, further driving down their discretionary spending power. Further, the Debtors' retail stores are concentrated in California, Arizona and Nevada, three of the hardest hit areas in the United States. In fact, the Company's stores in these states tend to be concentrated in the most negatively affected markets in the states – the Central Valley and Inland Empire in California (where the majority of the Company's stores are located), Phoenix in Arizona, and Las Vegas in Nevada.

As a result of these factors, the Debtors have experienced declining comparable store sales and declining overall sales for the last three years. Sales declined approximately 20% in NFRS's fourth fiscal quarter compared to the fourth quarter of 2009 and same store sales were down approximately 12.0% in fiscal 2010. NFRS is bound by a number of long term leases with landlords who have, prior to the commencement of the Debtors' chapter 11 cases, generally been unwilling to renegotiate its leases to reflect the current state of NFRS's business.

The Debtors are also burdened by a significant amount of expenses as a result of a failed attempt in 2009 and 2010 to raise capital through a proposed reverse merger with Gatorz Inc. The Debtors incurred approximately $1,000,000 in professional fees including legal and accounting fees in order to execute a public financing which ultimately failed. Finally, the Debtors have been unable to secure third party inventory for NFRS's retail stores due to its lack of financing. Lack of third party inventory, which serves as the primary traffic driver in NFRS's stores, has created a negative downward spiral – the lack of inventory has impaired store sales, which has further impacted cash flow, which, in turn, has further impaired the Debtors' ability to secure third party inventory.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   Having been unable to renegotiate leases with landlords, NFRS has already
2   closed a number of unprofitable stores (12 stores were closed prior to the
3   commencement of the Debtors' chapter 11 cases) in an attempt to mitigate its losses.
4   Since the commencement of their chapter 11 case, the Debtors have been attempting to
5   secure third party financing, necessary to allow the Debtors an adequate opportunity to
6   develop, negotiate, present, and confirm a reorganization that likely would include a
7   reduction in corporate overhead, the operation by NFRS of its now smaller store base,
8   and a focus on licensing of the Company's established brands in order to create a
9   simpler and more profitable entity going forward.  The most promising opportunity for
10  post-petition financing is the proposed financing by Hilco/Infinity.

11  **F.    The Need For Post-Petition Financing**

12  The Debtors require post-petition financing to finance new inventory
13  purchases and meet ongoing operating and administrative expenses.  Such
14  financing is necessary in order for the Debtors to maintain their business
15  operations and preserve and enhance enterprise value.  New inventory purchases
16  are especially critical, as the Debtors' current levels and mix of inventory are
17  severely deficient.  If the Debtors do not replenish and correct their inventory by
18  the end of April, they likely will forego substantial sales revenue as the important
19  summer selling season begins, and they may also be inadequately stocked for the
20  crucial back-to-school season in August.  Poor sales over the summer and/or at
21  back-to-school would, of course, have a direct and immediate negative impact on
22  the Debtors, but would also impair the Debtors' market position longer term.
23  Inasmuch as the Debtors anticipate that the continued and profitable operation of
24  retail stores will be central to its successful reorganization, such impairment would
25  be detrimental to the interests of the estates and all creditors.  The Debtors have
26  determined that they require funding of approximately $3,000,000 to satisfy their
27  needs for inventory replenishment and operating/administrative costs during the
28  reorganization process.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    In connection with the Debtors' efforts to meet their necessary short-term

2    and intermediate-funding requirements, the Debtors' financial advisor, Venturi &

3    Company, initially explored pre-petition financing alternatives with several different

4    potential lenders.   None were prepared to consider funding the Debtors' needs

5    without a commitment to effect either a sale of the Debtors or change-of-control of

6    the Debtors' enterprise as part of any such funding arrangement.

7    In anticipation of the Debtors' bankruptcy reorganization filings, Venturi &

8    Company explored several debtor-in-possession financing options for the Debtors

9    by identifying and contacting close to a dozen qualified lender parties.   The

10   challenges of raising relatively smaller amounts of financing for the Debtors (the

11   majority of financers are looking to make debtor-in-possession loans of $5 million

12   to $7 million or more and the Debtors' requirements are in the $3,000,000 range),

13   coupled with the high sense of urgency for accessing funding on a timely basis

14   (the Debtors operate a seasonal business and face significant liquidity needs in

15   the period leading up to the summer season and then the back-to-school season)

16   from a reliable source with which the Debtors could be assured of a closing,

17   narrowed the list of prospective parties to insiders and selected parties already

18   having reasonable familiarity with the Debtors' operations and prospects.

19   **G.    Hilco/Infinity And Its Proposed Financing**

20   Hilco/Infinity is a lender that had been in discussions with the Debtors for

21   several months prior to the bankruptcy reorganization filings.   The affinity of

22   Hilco/Infinity for the Debtors' business prospects, before and after commencement

23   of the Debtors' bankruptcy reorganization cases, helped to facilitate arm's-length

24   negotiations for an attractive debtor-in-possession financing commitment under

25   the circumstances.   In combination with providing a funding facility considered to

26   be a low dollar amount by most industry standards and, therefore, unattractive

27   among many of the more traditional funding sources, Hilco/Infinity was also not

28   demanding that the Debtors agree to a sale of the business as a condition of their

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  funding commitment.   This is important as the Debtors are considering all

2  potential, viable reorganization options.   Moreover, it is premature at this time to

3  allow the terms of a debtor-in-possession financing facility to directly dictate the

4  terms of the exit plan for the Debtors' cases.

5       The Debtors are also considering potentially engaging Hilco Real Estate, an

6  affiliate of Hilco Brands, LLC, to assist the Debtors with certain lease mitigation

7  work and landlord negotiations.   This possibility is referenced at page 4 of the

8  Term Sheet.

9       The pricing, terms and conditions of the financing proposal from

10  Hilco/Infinity are fair and reasonable, and meet the Debtors' funding requirements

11  over the foreseeable future and have a high certainty of closing in a timely

12  manner.   See Declaration of Matthew Venturi attached hereto.   Furthermore,

13  Hilco/Infinity has not required the Debtors to agree to an exclusive agreement to

14  fund during the documentation and due diligence period, thereby allowing for

15  potential third party funding alternatives and a "fiduciary out" to the extent that a

16  substantially more attractive alternative were to become available, subject to the

17  Break-up Fee and legal fee advance provisions under the Term Sheet, which the

18  Debtors believe to be reasonable under the circumstances.   The post-petition

19  financing facility proposed by Hilco/Infinity is the only viable, and best available,

20  option for the Debtors at this time.

21       The proposed post-petition funding is needed without delay by the Debtors

22  in order to continue their operations and meet their necessary, ongoing financial

23  requirements.   The Debtors are particularly in need of funding for inventory

24  purchases so that they are prepared to meet demand in the fast approaching

25  summer selling season.   The proposed debtor-in-financing facility with

26  Hilco/Infinity meets the Debtors' needs and will allow the Debtors the necessary

27  time and opportunity to develop, present and confirm a plan of reorganization in a

28  reasonable fashion and on a timely basis.   Approval of the proposed financing

facility as soon as practicable is necessary and appropriate in order to preserve and protect the value of the Debtors' assets and business enterprise and is in the Debtors' and the Estates' best interest.

### H.    The Terms Of The DIP Financing

As more fully described in the Term Sheet, the DIP Facility will have the following terms:

**Borrower:**  Simo Holdings, Inc.,, No Fear Retail Stores, Inc., and Fear MX, Inc., on a cross-collateralized basis.

**Lenders:**  Hilco/Infinity

**Credit Facility:**  $3,000,000 Debtor-in-Possession term loan

**Purpose:**  To finance (i) the costs associated with Debtors' Chapter 11 bankruptcy cases; (ii) the continued operation of Debtors' business; (iii) the maintenance of Debtors' assets while the Debtors restructure and/or pursue a strategic transaction that will provide this basis for a chapter 11 plan of reorganization; and (iv) the repayment of at least 50% of the outstanding Credit Cash NJ, LLC ("Credit Cash") facility.

**Maturity:**  Eighteen months from February 24, 2011, accelerated by typical DIP financing acceleration events, including reasonable performance and timing milestones to be agreed to by the parties. If the Debtors successfully confirm a chapter 11 plan of reorganization, the DIP Facility can be converted to an exit loan at the Debtors' option (subject to a 5% conversion fee applied to the principal amount converted).

**Security:**  The DIP Facility will be secured by: 1) a first priority security position on all of the Debtors' Intellectual Property (including, but not limited to: trademarks, trade names, customer lists and domain names) (with respect to the No Fear trademark, this first position may be obtained either through consensual subordination by Credit Cash or by full payment of Credit Cash's claim from initial proceeds disbursed under the DIP Facility); 2) Subject to the attachment liens held by FMF Racing and Don Emler, a first priority security position on all of Simo Holdings' other current and future assets and capital stock, including, but not limited to: accounts receivable, inventory, FF&E, shares and cash but excluding real estate; 3) a second priority security position on all real estate of the Debtors, subordinated only to existing senior mortgage; 4) a first priority security position on all other of NFMX's and NFRS's current and future assets and capital stock excluding accounts receivable and cash balances (including, but not limited to: inventory, FF&E, and shares); and, 5) a second priority security

SuImeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

position on all of NFMX's and NFRS's accounts receivable and cash balances, subordinated only to liens held by Credit Cash.

**Commitment Fee:** 5.0% of the total Credit Facility paid at closing.

**Interest Rate:** 12.0% per annum payable quarterly in arrears, and an additional 8.0% per annum that at Debtors' option may be paid quarterly in arrears or else accrues and compounds annually and is payable upon default or upon maturity. If the DIP Facility is not fully repaid at maturity or upon other events of default then the interest rate becomes 23.0% per annum payable quarterly in arrears.

**Early Termination Fee:** 5.0% of any principal amount repaid in year 1 (if Borrower converts Credit Facility to an exit loan then Early Termination Fee would not apply).

**Amortization:** Bullet maturity at close.

**Financial and Other Covenants:** In addition to typical and customary covenants applicable to transactions of this type: 1) any licensing of Intellectual Property subject to DIP Facility lien will require Lenders' approval, which approval will not be unreasonably withheld; and, 2) any net proceeds from the sale of Debtors' owned real estate (including property located in North Carolina) ("Net Sale Proceeds") will be allowed, with the Lenders' approval not to be unreasonably withheld, to support the Debtors' working capital. Lenders shall provide any such approval based upon receipt of a detailed plan showing the uses of such Net Sale Proceeds, with such approval not to be unreasonably withheld. Under no case will any Net Sale Proceeds be allowed to repay any creditor except to repay the DIP Facility.

**Conditions Precedent:** Closing shall be conditioned upon satisfaction of the following conditions precedent and other conditions customary to transactions of this type, or reasonably required by the Lenders.

1. Demonstration of adequate liquidity to fund (i) the expenses of the Chapter 11 bankruptcy proceeding; (ii) the efforts in pursuit of a strategic transaction (if applicable); and (iii) the working capital requirements of the Debtors through August 31, 2011.

2. Bankruptcy Court grants approval of the DIP Facility and all associated terms.

3. Liens on all of the Debtors' collateral shall have been filed and otherwise perfected to the satisfaction of the Lenders, including but not limited to all UCC filings.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

4. Satisfactory completion of business and legal due diligence.

5. All necessary consents and approvals to the financing shall have been obtained.

6. Preparation, execution and delivery of definitive documentation satisfactory to the Lenders. Documentation shall contain representations, covenants, events of default, expense reimbursement, and indemnification provisions for the benefit of the Lenders customary for transactions of this size, type, and purpose.

7. The Lenders shall have received such corporate resolutions, certificates and other documents as the Lenders shall reasonably request.

8. Legal costs associated with the negotiation and documentation of the DIP Facility are estimated to be Sixty Thousand Dollars ($60,000) and will be paid out of the DIP Facility on Closing. The expenses include: $25,000 for documentation, $25,000 for credit review and $10,000 for other out of pocket legal expenses. Upon authorization of the Bankruptcy Court (the "Court") presiding over the Company's chapter 11 cases, Debtors will fund a non-refundable partial Expense payment in the amount of Twenty Five Thousand Dollars ($25,000) and will fund the remaining Thirty Five Thousand Dollars ($35,000) at close. In the event that legal proceedings become more intensive and lengthy than expected, Lenders will submit an itemized legal bill for reimbursement. In any event, the all-in legal costs associated with the negotiation and documentation of the Credit Facility are not to exceed Ninety Thousand Dollars ($90,000) ("Legal Cost Cap").

9. No material misstatements in or omissions from the materials previously furnished to the Lenders for their review. The Lenders must be satisfied that any financial statements and projections delivered to them fairly represent the business and financial condition of the Debtors; and that there has been no material adverse change in the assets, business, financial condition, income or prospects of the Debtors since the date of the most recent financial information delivered to the Lenders.

10. Except as disclosed in the Debtors' Bankruptcy Schedules and/or Statement of Affairs filed with the Court, the absence of any litigation or other proceeding the result of which might have a material adverse effect on the Debtors.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

11.    Except as disclosed in the Debtors' Bankruptcy Schedules and/or Statement of Affairs filed with the Court, the absence of any default of any material contract or agreement of the Borrower or any of its subsidiaries or related entities.

12.    Debtors will grant Hilco Merchant Resources the right of first refusal to liquidate any or all stores that are closed during the term of this DIP Facility and will grant Hilco Real Estate the right of first refusal to advise on any lease mitigation work and landlord negotiations during the term of this DIP Facility.

**Expenses:**    In the event the Lenders are prepared to issue a commitment letter or close the transaction on substantively the same terms and conditions contained herein, and the Debtors choose not to proceed, the balance of any outstanding legal costs (subject to the Legal Cost Cap) and a Break Fee equal to 3.5% of the DIP Facility will be immediately due and owing and deemed a priority administrative expense in Debtors' Chapter 11 proceeding.

Lenders' reasonable legal costs post funding of the Credit Facility will be deemed a priority administrative expense in Borrower's Chapter 11 proceeding and once approved by the Court, to the extent they require Court approval, they are payable on demand or added to the balance of the outstanding principal amount of the Credit Facility if not timely paid.

## I.    The DIP Facility Should Be Approved

### 1.    The DIP Facility Is An Appropriate Exercise of the Debtors' Business Judgment

Pursuant to Bankruptcy Code §364, a debtor in possession may, in the exercise of its business judgment, incur secured debt if it has been unable to obtain unsecured credit and the borrowing is in the best interest of the estate. *See* 11 U.S.C. §364(c), (d); *see also, e.g.,* In re Simasko Prod. Co., 47 B.R. 444, 448-49 (D. Colo. 1985) (authorizing interim financing agreement where Debtor's best business judgment indicated financing was necessary and reasonable for benefit of the estate); In re Ames Dept. Stores, Inc., 115 B.R. 34, 38 (Bankr. S.D. N.Y.

1990) (with respect to post-petition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties").

Section 364(c) of the Bankruptcy Code provides as follows:

(c) If the trustee [or debtor in possession] is unable to obtain unsecured credit allowable under §503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt;

(1)     with priority over any and all administrative expenses of the kind specified in §503(b) or 507(b) of this title;

(2)     secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3)     secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c)

In addition, §364(d)(1), which governs the incurrence of post-petition debt secured by superpriority liens, provides that the Court may, after notice and a hearing,

authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if---

(A)     the trustee is unable to obtain such credit otherwise; and

(B)     there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed.

11 U.S.C. § 364(d)(1).

Here, the Term Sheet provides for a priming lien only as to Credit Cash, which has a first priority perfected interest in certain of the Debtors' assets.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

The Term Sheet provides that Hilco/Infinity will obtain this lien only with the consent of Credit Cash. Otherwise, DIP Facility proceeds will be used for full payment to Credit Cash of its allowed claim. Thus, Hilco/Infinity will not obtain a priming lien ahead of any party that does not consent to it.

The Debtors believe that the financing from Hilco/Infinity is the best option available to the Debtors. Prior to the filing of the case, the Debtors solicited proposals from other potential investors, none of which were prepared to consider funding the Debtors' needs without a commitment to effect either a sale of the company or change-of-control of the Debtors' enterprise as part of any such funding commitment (the Debtors believe it to be premature to enter into any such arrangement). This is important as the Debtors are considering all potential, viable reorganization options and the Debtors did not want to obtain a financing facility which would directly dictate the terms of the exit plan for the Debtors' cases or be determined to be a *sub rosa* plan by the Court.

The pricing, terms and conditions of the financing proposal from Hilco/Infinity are fair and reasonable, and meet the Debtors' funding requirements over the foreseeable future and have a high likelihood of closing in a timely manner. Furthermore, Hilco/Infinity has not required the Debtors to agree to an exclusive agreement to fund during the documentation and due diligence period, thereby allowing for potential third party funding alternatives and a "fiduciary out" to the extent that a substantially more attractive alternative were to become available, subject to the Break-up Fee and legal expense advance provisions under the Term Sheet, which the Debtors believe to be reasonable under the circumstances.

The Debtors concluded that the pricing, terms and conditions of the financing proposal from Hilco/Infinity were fair and reasonable, met the Debtors' funding requirements, and provided the most economical and feasible option. The Debtors have proceeded diligently but they have "no duty to seek credit from every

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    possible lender." <u>Bray v. Ingersoll-Rand Fin. Credit Corp.</u>, 789 F.2d 1085, 1088

2    (4th Cir. 1986).    In the exercise of its sound business judgment, the Debtors

3    submit that this Motion should be approved.    As stated in more detail above and

4    in the attached Declarations, it is necessary for the Debtors to obtain post-petition

5    financing in order to successfully reorganize.

6              Section 1108 of the Bankruptcy Code governs a debtor in

7    possession's authorization to operate its business.  The purpose of a chapter 11

8    reorganization case, unlike a liquidation case, is to restructure a business'

9    finances so that it may continue to operate, provide its employees with jobs and

10   pay creditors.  Section 1108 recognizes this rehabilitative policy in chapter 11

11   cases by making continued operation of the debtor's business the norm.   The

12   power to operate the business is one of the powers that a debtor in possession

13   acquires by virtue of the tandem provisions of Sections 1107 and 1108 of the

14   Bankruptcy Code.

15             Debtors in possession, like officers and directors of a corporation

16   outside bankruptcy are required to exercise the measure of care, diligence and

17   skill that an ordinary prudent person would exercise under similar circumstances.

18   <u>United States v. Block (In re Rigden)</u>, 759 F.2d 727, 730 (9th Cir. 1986).  Here, the

19   Debtors' management is attempting to carry out their fiduciary duties obtaining a

20   post-petition financing, under reasonable terms, which will allow the Debtors to

21   cover their operational short falls and fund administrative costs during the

22   reorganization.  The Debtors ask that the Court apply the business judgment rule

23   to authorize the Debtors to enter into the DIP Facility, as well as approve the

24   Break-up Fee and the proposed attorneys' fee advance and reimbursement so

25   that Hilco/Infinity may proceed with due diligence and documentation of the DIP

26   Facility without delay.  Preventing the Debtors from obtaining a postpetition credit

27   facility of some form is not in any party's best interest, and would be contrary to

28

1  the principals of the Bankruptcy Code of allowing the Debtors a reasonable

2  opportunity to reorganize.

3

4          **2.     The Break-up Fee is Appropriate**

5         In general, a break-up fee is an incentive payment to an unsuccessful

6  bidder or potential financing party to place the estate's property in such a mode

7  that it attracts other parties to the transaction. *See* In re Financial News Network,

8  Inc., 126 B.R. 152, 154 n. 5 (Bankr. S.D.N.Y. 1991).   Agreements to provide

9  break-up fees are designed to compensate the potential acquirer or financing

10  party who serves as a catalyst which attracts more favorable offers.  In re S.N.A.

11  Nut Co., 186 B.R. 98, 101 (Bankr. N.D. Ill. 1995); In re 995 Fifth Ave. Assoc., L.P.,

12  96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989).

13         Outside of bankruptcy, a break-up fee is generally allowed as long as

14  it "enhances" the transaction.  S.N.A. Nut Co., *supra*, 186 B.R. at 102.   In the

15  bankruptcy context, a break-up fee is generally permissible if it is reasonably

16  related to the transaction's magnitude.  Cottle v. Storer Communication Inc., 849

17  F.2d 570, 578 (11th Cir. 1988).   Generally speaking, whether the payment of a

18  break-up fee is appropriate is evaluated under the "business judgment rule."

19  S.N.A. Nut Co., *supra*, 186 B.R. at 102.   Under this rule, there is a presumption

20  that, in making a business decision, the principals of the trustee acted on an

21  informed basis, in good faith and in the honest belief that the action taken was in

22  the best interest of the estate.   Therefore, procedures utilized by a trustee with

23  respect to a proposed transaction should be approved when the Court determines

24  that such procedures are fair and do not violate any of the trustee's fiduciary

25  duties.

26         In evaluating the appropriateness of a break-up fee in the context of

27  debtor-in-possession financing, the appropriate question for the Court to consider

28  is whether the break-up fee served any of three possible useful functions:  (i) to

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SWERTH\ 708181.6

20

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   attract or retain a potential lender; (ii) to establish a  standard for other lenders to

2   follow; or (iii) to attract additional interest from third parties in performing the same

3   transaction.   See In re Integrated Resources, Inc., 147 B.R. 650, 662 (S.D.N.Y.

4   1992), appeal dismissed, 3 F.3d 49 (2d Cir. 1993) (in context of a sale, a break-up

5   fee is permissible if reasonably related to the bidder's efforts and the transaction's

6   magnitude).  Additionally, so long as the break-up fee is not (i) the product of self-

7   dealing by the debtor or the trustee, (ii) likely to hamper or chill, rather than

8   encourage, interest in third parties in the transaction, or (iii) unreasonably large in

9   relation to the proposed transaction price, courts have approved break-up fees.

10  Id., at 657.

11          Here, the proposed break-up fee is reasonable, appropriate, and

12  satisfies the business judgment rule.   The Debtors believe that given the

13  complexity of the DIP Facility, the risks associated with debtor-in-possession

14  financing, and the magnitude of the proposed financing, which is $3 million, a

15  break-up fee of $105,000, representing 3.5% of the entire transaction, is

16  reasonable and appropriate.  The Break-up Fee is required by Hilco/Infinity and is

17  one of the factors that enticed Hilco/Infinity to commit to the DIP Facility, and the

18  catalyst for the commencement of further due diligence and necessary

19  documentation of the DIP Facility.   As such, the Break-up Fee serves its

20  recognized purposes.

21          **3.   Legal Fee Reimbursement Is Appropriate**

22          Pursuant to the Term Sheet, Hilco/Infinity estimates that its legal fees

23  in connection with the DIP Facility will total approximately $60,000.  The Term

24  Sheet contemplates that upon Court approval, the Debtors will pay $25,000 of that

25  amount immediately, and the balance at closing.   The Term Sheet also

26  contemplates that Hilco/Infinity's legal fees could be higher, which if correct

27  Hilco/Infinity will provide evidence of at closing, though the parties have agreed

28

SWERTH\ 708181.6                                     21

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   that the Debtors will in no instance pay more than $90,000 to Hilco/Infinity on

2   account of reasonable attorneys' fees prior to closing.

3          Courts have approved such fees in the context of post-petition

4   financing so long as they are reasonable.  *See* In re QHB Holdings LLC, 2009

5   Bankr. LEXIS 4720 *50 (Bankr. D. Del. Dec. 22, 2009) (approving reimbursement

6   of legal, accounting, examination, appraisal, and financial advisory fees, and other

7   out of pocket expenses of lending party, regardless of whether financing was

8   consummated).  The Debtors submit that legal fees of no greater than $90,000 for

9   pre-closing work are reasonable given the magnitude of the financing proposed by

10  Hilco/Infinity.    Further,   like   the   Break-up   Fee,   the   proposed   legal   fee

11  reimbursement to Hilco/Infinity may have been one of the factors that enticed

12  Hilco/Infinity to commit to pursuing DIP Facility, and the catalyst for further due

13  diligence.  Without such reimbursement, it is possible that Hilco/Infinity will refuse

14  to commit further resources to finalizing the DIP Facility.

### III.
### CONCLUSION

17         Based upon the foregoing, the Debtors respectfully request that the Court

18  authorize the Break-up Fee as provided for in the Term Sheet, authorize the

19  payment of legal expenses to Hilco/Infinity as provided for in the Term Sheet, and

20  set a hearing for final approval of the DIP Facility approximately 25 days from the

21  date of this Motion, or as soon thereafter as this Court will allow.

22  Dated: March  18, 2011          **Sulmeyer**Kupetz
                                    A Professional Corporation

24

25  By: _____
                                    Steven F. Werth
26                                  (Proposed) Bankruptcy Counsel for No
                                    Fear Retail Stores, Inc., No Fear MX, Inc.,
27                                  and  Simo  Holdings,  Inc.,  Debtors  and
                                    Debtors in Possession
28

SWERTH\ 708181.6                           22