Jeffrey N. Pomerantz (CA Bar No. 143717)
Jeffrey W. Dulberg (CA Bar No. 181200)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

[Proposed] Counsel for the Official Committee of
Unsecured Creditors of No Fear Retail Stores, Inc.

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| In re: | Case No. 11-02896-MM11 |
|---|---|
| NO FEAR RETAIL STORES, INC., a California corporation, SIMO HOLDINGS, INC., a California corporation, and NO FEAR MX, INC., a California corporation,<br><br>    Related Debtors. | (Jointly Administered with Case Nos. 11-02897-MM11; 11-02898-MM11) Chapter 11 Cases<br><br>**NO FEAR RETAIL STORES, INC. COMMITTEE'S OPPOSITION TO MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR ORDER AUTHORIZING DEBTORS TO ENTER INTO DEBTOR IN POSSESSION CREDIT FACILITY WITH HILCO BRANDS, LLC AND INFINITY FS BRANDS, LLC [RE: DOCKET NO. 87]**<br><br>DATE:    April 1, 2011<br>TIME:    2:00 p.m.<br>PLACE:   U.S. Bankruptcy Court<br>         325 West "F" Street<br>         San Diego, CA 92101 |

The Official Committee of Unsecured Creditors (the "Committee") appointed in the bankruptcy case of No Fear Retail Stores, Inc. ("NFRS"), one of the above-captioned debtors and debtors in possession (the "Debtors"), hereby files this opposition to *Debtors and Debtors in Possession's Motion for Order Authorizing Debtors to Enter Into Debtor in Possession Credit Facility With Hilco Brands, LLC and Infinity FS Brands, LLC* [Docket No. 87] (the "DIP Motion").[1]

## INTRODUCTION

The Debtors have not demonstrated that the DIP financing is in the best interests of the Debtors' estates and its creditors or that the DIP financing could not be obtained on more favorable terms. Importantly, the proposed DIP Financing, aside from being extremely expensive, contains several provisions that may restrict the exit strategies available to the Debtors and their creditors. Moreover, the Committee has been approached by an alternative financing source which appears ready, willing and able to offer DIP financing on terms substantially better than those in the Term Sheet making the provision of any bid protections to Hilco Brands, LLC and Infinity FS Brands, LLC (collectively, "Hilco") unnecessary. Accordingly the Court should not grant the DIP Motion for several reasons.

## SUMMARY OF DEFECTS WITH THIS DIP PROPOSAL

First, the DIP Motion is prematurely made. The Debtors have not filed any definitive documents detailing the specific terms of the DIP financing, instead relying solely on a Term Sheet. Hilco, however, is *not committed to provide any financing* at the current time. It is inappropriate to grant Hilco *any* bidding protections absent a firm lending commitment. Just as the Court would not approve a break-up fee to a buyer of assets who has due diligence and financing contingencies, the Court should not approve bidding protections for a provider of DIP financing without definitive documentation and a firm commitment to lend. The DIP financing milestones are not finalized and any number of other opprobrious terms might be inserted following approval of stalking horse protections. For this reason alone the Court should deny the DIP Motion.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning given them in the DIP Motion.

Second, the Debtors have not demonstrated that DIP financing is required or, if required, that the DIP financing as currently constructed will provide the Debtors with sufficient runway to explore reorganization strategies. As indicated in its cash collateral motion [Docket No. 14], NFRS has represented to this Court that it can survive on cash collateral and that its existing secured lender is adequately protected, at least through the projected budgeted period, or through the week ending April 18, 2011. [Ex. 3 to Simo Declaration, Docket No. 15]. If NFRS does not require DIP financing then it ought not to be burdened with an onerous loan designed to maximize the lender's ability to extract value from the Debtors' assets. The Committee was recently appointed and is in the process of retaining professionals. The first priority for the Committee will be to understand the Debtors' cash flows to determine what, if any, financing is needed and how the financing may affect reorganization strategies.

Importantly, if the Debtors persuade the Committee that DIP financing is needed, the Committee is concerned that the DIP financing may not provide the Debtors with any meaningful liquidity. The Debtors state that a portion of the funds will be used to pay off prepetition secured debt rather than to fund the ongoing expenses of the estate. Similarly, the DIP financing provides for certain fees and costs that must be paid up-front (5% closing fee; reimbursement of fees and expenses).

Third, the DIP Motion should not confer intellectual property ("IP") licensing consent rights to Hilco nor a right of first refusal to bid on store liquidations. The IP may very well be the most valuable asset in the Debtors' estates so decisions over their monetization must remain within the control of estate fiduciaries. Hilco appears to be providing the DIP financing as a means to obtain control over the disposition of remaining assets of the Debtors' estates. Giving Hilco a right of first refusal on store liquidations is likely to severely dampen their competitors' interest in this transaction. Restricting the Debtors' ability to license their intellectual property will provide Hilco with undue influence on exit strategies in these cases. It is particularly important that this Committee raise these concerns as there is no blanket lienholder (e.g. bank lender) counterbalancing the Debtors' decision-making authority. Unsecured creditors cannot allow the most valuable assets of these estates to potentially be compromised without a thorough

review of restructuring alternatives and exit strategies. The Court should not permit the Debtors to cede control at this stage of the case especially when alternatives exist that do not contain such restrictions.

<u>Fourth</u>, the DIP proposal is extremely expensive on every possible level. The stalking horse protections include a Breakup Fee of $105,000 and attorneys' fees up to $90,000. The DIP financing accrues interest at 12% annually <u>plus</u> an additional back-end 8% per annum that may be paid quarterly in arrears or else accrues and compounds annually and is payable upon default or maturity. The default rate of interest is 23% per annum paid quarterly in arrears. The proposal includes a 5% "closing fee" and an "early termination fee" of 5% as well. Based upon a review of the terms of the DIP financing that are currently available to the Committee and without adequate opportunity for analysis of the facts surrounding the need for the DIP financing or the full and final terms of the DIP loan, it appears to be an onerous loan that may not provide meaningful benefit to the estate or the unsecured creditors. The Committee objects to the approval of the DIP Motion absent the opportunity for further consideration of the DIP financing and all of its terms by the Committee and its professionals.

As noted above, just days after its appointment, the Committee approached Gordon Brothers who indicated that it would provide financing on terms superior to those contained in the Term Sheet. Attached hereto as Exhibit "1" is a true and correct copy of a term sheet from GB Merchant Partners, LLC, a Gordon Brothers affiliate, which offers better financial terms than Hilco's proposal and, most importantly, does not require the Debtors to agree to a right of first refusal or grant IP licensing consent rights to the lender.

The Committee was only recently appointed on March 22, 2011. The Committee retained counsel on March 24, 2011. Although the Debtors have agreed to extend the response deadline to the DIP Motion from Thursday, March 24, 2011 through Monday, March 28, 2011, this time period is still impossibly short to complete the diligence necessary to thoroughly vet the Committee's concerns with the DIP Motion. Until the Committee's counsel and financial advisors have had an adequate opportunity to assess the Debtors' business and prospects in this chapter 11 case, the Committee cannot appropriately analyze the DIP financing proposal.

-4-

60982-001\DOCS_LA:234996.3

4

## ARGUMENT

It goes without saying that the Court should approve a proposed debtor in possession financing only if such financing "is in the best interest of the general creditor body." *In re Roblin Industries, Inc.*, 52 B.R. 241, 244 (Bankr. W.D.N.Y. 1985) (citing Texlon Corp., *supra*, 596 F.2d at 1098-99 (2d Cir. 1979) and *In re Vanguard Diversified, Inc.*, 31 B.R. 364, 366 (Bankr. E.D.N.Y. 1983) ("Roblin"). *See also In re Tenney Village Co., Inc.*, 104 B.R. 562, 569 (Bankr. D. N.H. 1989) ("The debtor's prevailing obligation is to the bankruptcy estate and, derivatively, to the creditors who are its principal beneficiaries"). Moreover, the proposed financing must be "fair, reasonable, and adequate." *In re Crouse Group, Inc.*, 71 B.R. 544, 546 (Bankr. E.D. Pa. 1987).

The Committee respectfully submits that the Court must be particularly sensitive to the "best interests" issue in these cases. The very favorable terms of the DIP loan, the absence of a final DIP loan agreement, the uncertainty whether the DIP loan will provide the Debtors with meaningful liquidity, the right of first refusal regarding the liquidation of the estates, and the proposed Break-Up and attorney's fees raise serious concerns regarding the propriety of the DIP financing at this time. The Debtors will not be prejudiced by deferring consideration of the DIP Motion until such time as the Debtors have reached final agreement with Hilco (or some other lender) on the specific terms for any DIP financing. Allowing the Committee time to retain financial advisors to adequately analyze whether the proposed DIP term loan is (i) necessary, (ii) adequate, if it is necessary, and (iii) within market terms will not prejudice the Debtors given that they are able to sustain themselves on existing cash collateral for at least a few more weeks.

WHEREFORE, as there is an insufficient record to support bidding protections at this time, the Committee respectfully requests that the interim relief requested in the DIP Motion be denied, or at a minimum, continued to a future date and time to allow the Committee adequate time to analyze the DIP Motion and respond.

60982-001\DOCS_LA:234996.3

| | | |
|---|---|---|
| Dated: | March 28, 2011 | PACHULSKI STANG ZIEHL & JONES LLP |

By  */s/ Jeffrey W. Dulberg*
Jeffrey N. Pomerantz
Jeffrey W. Dulberg
[Proposed] Counsel for the Official
Committee of Unsecured Creditors

60982-001\DOCS_LA:234996.3

# EXHIBIT 1

**Simo Holdings, Inc., No Fear Retail Stores, Inc. and No Fear MX, Inc.**
**Summary of Terms and Conditions**
**For Senior DIP Credit Facility**
03/~~14/~~28/11

*THESE PROPOSED TERMS AND CONDITIONS ARE PROVIDED FOR DISCUSSION PURPOSES ONLY AND DO NOT CONSTITUTE AN OFFER, AGREEMENT OR COMMITMENT TO LEND. THE ACTUAL TERMS AND CONDITIONS UPON WHICH LENDERS MIGHT EXTEND CREDIT TO THE BORROWER ARE SUBJECT TO SATISFACTORY COMPLETION OF DUE DILIGENCE, CREDIT COMMITTEE APPROVAL, SATISFACTORY REVIEW OF DOCUMENATION AND SUCH OTHER TERMS AND CONDITIONS AS ARE DETERMINED BY LENDERS AND THEIR COUNSEL*

Borrower: Simo Holdings, Inc. ("Simo"), No Fear Retail Stores, Inc. ("No Fear Retail"), and No Fear MX, Inc. ("No Fear MX") (and such other legal entities deemed appropriate by Lenders in their reasonable discretion) (collectively, "Borrower" or the "Company") on a cross-collateralized basis.~~,~~

Lender: GB Merchant Partners ("GBMP") ~~Hilco Brands, LLC ("Hilco") and Infinity FS Brands, LLC ("Infinity").~~

Credit Facility: $3,000,000 Debtor-in-Possession ("DIP") term loan (the "Credit Facility").

Purpose: To finance (i) the costs associated with Borrower's Chapter 11 bankruptcy cases; (ii) the continued operation of Borrower's business; (iii) the maintenance of Borrower's assets while the Borrower restructures and/or pursues a strategic transaction that will provide this basis for a chapter 11 plan of reorganization; and (iv) the repayment of at least 50% of the outstanding Credit Cash NJ, LLC ("Cash Credit") facility.

Maturity: Eighteen months from the date of the Borrower Chapter 11 bankruptcy filing, accelerated by typical DIP financing acceleration events, including without limitation, reasonable performance and timing milestones to be agreed to by the parties. If the Borrower successfully emerges from Chapter 11, the Credit Facility can be converted to an exit loan at the Borrowers option (subject to a ~~5~~3.5% conversion fee applied to the principal amount converted).

Security: The Credit Facility will be secured by: 1) a first priority security position on all of the Borrower's Intellectual Property (including, but not limited to: trademarks, trade names, customer lists and domain names) (with respect to the No Fear trademark, this first position may be obtained either through consensual subordination by Credit Cash or by a full payment of Credit Cash's claim from initial proceeds disbursed under the Credit Facility); 2) Subject to the attachment liens held by FMF Racing and Don Emler, a first priority position on all of Simo's other current and future assets and capital stock, including but not limited to: accounts receivable, inventory, FF&E, shares and cash but excluding real estate; 3) a second priority security position on all real estate of the Borrowers, subordinated only to existing senior mortgage; 4) a first priority position on all other of No Fear MX's and No Fear Retail's current and future assets and capital stock excluding accounts receivable and cash balances (including, but not limited to: inventory, FF&E, and shares); and, 5) a second priority security position on

Simo Holdings, Inc. No Fear Retail Stores, Inc. and No Fear MX, Inc.



8

|   |   |
|---|---|
| | all of No Fear MX's and No Fear Retail's accounts receivable and cash balances, subordinated only to liens held by Credit Cash. |
| Commitment Fee: | 3.55% of the total Credit Facility paid at closing. |
| Interest Rate: | 112% per annum payable quarterly in arrears, and an additional 48% per annum that at Borrower's option may be paid quarterly in arrears or else accrues and compounds annually and is payable upon default or upon maturity. ~~If the Credit Facility is not fully repaid at maturity or upon other events of default then the interest rate becomes 23% per annum payable quarterly in arrears.~~ |
| Default Rate: | 2% |
| Early Termination Fee: | 35% of any principal amount repaid year 1 (if Borrower converts Credit Facility to an exit loan then Early Termination Fee would not apply). |
| Amortization: | Bullet maturity at close. |
| Financial and Other Covenants: | In addition to typical and customary covenants applicable to transactions of this type, 1) ~~any licensing of Intellectual Property subject to Credit Facility lien will require Lenders approval, which approval will not be unreasonably withheld; and 2)~~ any net proceeds from the sale of Borrower's owned real estate (including property located in North Carolina) ("Net Sale Proceeds") will be allowed, with the Lender's approval not to be unreasonably withheld, to support the Company's working capital. Lenders shall provide any such approval based upon receipt of a detailed plan showing the uses of such Net Sale Proceeds, with such approval not to be unreasonably withheld. Under no case will any Net Sale Proceeds be allowed to repay any creditor except to repay the Credit Facility. |
| Financial Reporting: | The financing documentation would require Borrower, on a monthly and quarterly basis, to provide to the Lender internally prepared financial statements. Annually, Borrower would be required to provide audited financial statements and a board approved operating plan for the subsequent fiscal year. All financial statements would be prepared on a consolidated and consolidating basis. Lender would also receive additional reporting and valuation as reasonably requested by Lender, which shall be determined by Lender upon due diligence. |
| Conditions Precedent: | Closing shall be conditioned upon satisfaction of the following conditions precedent and other conditions customary to transactions of this type or reasonably required by the Lenders. |

1. Demonstration of adequate liquidity to fund i) the expenses of the Chapter 11 bankruptcy proceeding; ii) the efforts in pursuit of a strategic transaction (if applicable); and (iii) the working capital requirements of the Company through August 31, 2011.

2. Bankruptcy Court grants approval of the Credit Facility and all associated terms.

3. Liens on all of the Borrower's collateral shall have been filed and otherwise perfected to the satisfaction of the Lenders, including but not limited to all UCC filings.

4. Satisfactory completion of business due diligence, including, without limitation, a satisfactory review by the Lenders of the following items:
   a. Financial projections.
   b. Most recent financial statements (income statement, balance sheet and cash flow).

5. All necessary consents and approval to the financing shall have been obtained.

6. Completion of legal due diligence investigation by the Lender's counsel, with results satisfactory to the Lenders and their counsel.

6.7.

7.8. Preparation, execution and delivery of definitive documentation satisfactory to the Lenders. Documenation shall contain representations, covenants, events of default, expense reimbursement, and indemnification provisions for the benefit of the Lenders customary for transactions of this size, type and purpose.

8.9. The Lenders shall have received such corporate resolutions, certificates and other documents as the Lenders shall reasonably request.

9. ~~Legal costs associated with the negotiation and documentation of the Credit Facility are estimated to be Sixty Thousand Dollars ($60,000) and will be paid out of the Credit Facility on Closing. The expenses include: $25,000 for documentation, $25,000 for credit review and $10,000 for other out of pocket legal expenses. Upon authorization of the Bankruptcy Court (the "Court") presiding over the Company's chapter 11 cases, Borrower will fund a non-refundable partial Expense payment in the amount of Twenty Five Thousand Dollars ($25,000) and will fund the remaining Thirty-Five Thousand Dollars ($35,000) at close. In the event that legal proceedings become more intensive and lengthy than expected, Lenders will submit an itemized legal bill for reimbursement. In any event, the all-in legal costs associated with the negotiation and documentation of the Credit Facility are not to exceed Ninety Thousand Dollars ($90,000) ("Legal Cost Cap").~~

10. No material misstatements in or omissions from the materials previously furnished to the Lenders for their review. The Lenders must be satisfied that any financial statements and projections delivered to them fairly represent the business and financial condition of the Borrower; and that there had been no material adverse change in the assets, business, financial condition, income or prospects of the Borrower since the date of the most recent financial information delivered to the Lenders.

11. Except as disclosed in the Debtors Bankruptcy Schedules and /or Statement of Affairs to be filed with the Court, the absence of any litigation or other proceeding the result of which might have a material adverse effect on the Borrower.

12. Except as disclosed in the Debtors Bankruptcy Schedules and/or Statement of Affairs to be filed with the Court, the absence of any default of any material contract or agreement of the Borrower or any of its subsidiaries or related entities.

**Formatted:** List Paragraph, Left, Line spacing: single, No bullets or numbering, Adjust space between Latin and Asian text, Adjust space between Asian text and numbers

|  |  |
|---|---|
|  | 13. The proposed financing is subject to the condition that no material changes in governmental regulations or policies affecting the Borrower or Lenders involved in this transaction occur prior to the closing date. |
|  | 13.14. Understanding of Restructuring Advisor's role in the bankruptcy and go forward process. |
|  | 14. Borrower will grant Hilco Merchant Resources the right of first refusal to liquidate any or all stores that are closed during the term of this Credit Facility and will grant Hilco Real Estate the right of first refusal to advice on any lease mitigation work and landlord negotiations during the term of this Credit Facility. |
| Expenses: | In the event the Lenders are prepared to issue a commitment letter or close the transaction on substantively the same terms and condition contained herein, and the Borrower chooses not to proceed, the balance of any outstanding legal costs (subject to the Legal Cost Cap) and a Break Fee equal to 3.5% of the Credit Facility will be immediately due and owing and deemed a priority administrative expense in Borrowers Chapter 11 proceeding. |
|  | Lender's reasonable legal costs post funding of the Credit Facility will be deemed a priority administrative expense in Borrower's Chapter 11 proceeding and once approved by the Court, to the extent they require Court approval, they are payable on demand or added to the balance of the outstanding principal amount of the Credit Facility if not timely paid. |
| Expense Deposit: | In connection with the proposed Credit Facility, Borrower agrees to pay to the Lender a good faith deposit of $20,000 (the "Expense Deposit") as a deposit for the Lender's reasonable expenses that may be incurred by the Lender in connection with the transactions contemplated by this Term Sheet, including the reasonable expenses of the Lender's financial and business due diligence and the preparation of any definitive financing documents. The legal costs associated with the negotiation and documentation of the Credit Facility will not exceed $100,000. All unused amounts of the Expense Deposit will be returned to Borrower. Please remit the Expense Deposit via wire transfer pursuant to the following instructions: |
|  | GB Merchant Partners, LLC<br>Bank of America – Boston, MA<br>Account #00942-9284385<br>ABA #026 009 593 |
|  | The Expense Deposit will not be segregated and may be commingled with other funds. Borrower will not be entitled to receive interest on the Expense Deposit. |
|  | By your acceptance of this Term Sheet, you agree to pay GBMP on request for all reasonable costs, fees and expenses of GBMP, any of its affiliates or any persons acting on its behalf (including, without limitation, the fees, costs and expenses of counsel and independent appraisers, consultants and auditors retained by GBMP, and the travel, lodging and expenses of GBMP and its affiliates' personnel in inspecting any collateral) in connection with this Term Sheet or any of the transactions contemplated hereby, whether before or after the date hereof and whether or not any of the transactions are consummated, and GBMP's due diligence in respect thereof, the preparation of any letter evidencing GBMP's commitment to provide funding for any of the transactions contemplated hereby, and the preparation, negotiation, syndication and, if |

Formatted: List Paragraph, Left, Line spacing: single, No bullets or numbering, Adjust space between Latin and Asian text, Adjust space between Asian text and numbers

Formatted: Normal, Left, Indent: Left: 0"

<div style="margin-left: 2em;">
applicable, the execution of definitive legal documents with respect to such transactions and the creation or perfection of liens and security interests in connection therewith.
</div>

> **Formatted:** Font: (Default) Times New Roman
>
> **Formatted:** Normal, Left, Indent: Left: 0"

~~Expiration:~~ ~~This letter shall expire, if Borrower has not accepted this letter by returning a signed copy to the Lenders by no later than 5:00 p.m. Pacific Time on March 15, 2011.~~

Please note that this letter, except with regard to the Expenses provisions set forth above, is not a binding commitment of Borrower or Lenders, nor does it define all of the terms and conditions of the financing, but is a framework upon which the documentation for this transaction shall be structured, and is a basis for future discussion and negotiation of the terms as may be appropriate.

Very truly yours,

**GB Merchant Partners, LLC**

By: _____
    Name:
    Title:

Accepted and Agreed to in all respects:

**Simo Holdings, Inc., No Fear Retail Stores, Inc. and No Fear MX, Inc.**

By: _____
    Name:
    Title:

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
10100 Santa Monica Blvd., 11th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as **NO FEAR RETAIL STORES, INC. COMMITTEE'S OPPOSITION TO MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR ORDER AUTHORIZING DEBTORS TO ENTER INTO DEBTOR IN POSSESSION CREDIT FACILITY WITH HILCO BRANDS, LLC AND INFINITY FS BRANDS, LLC** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 28, 2011,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On **March 28, 2011,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 28, 2011,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

The Honorable Margaret M. Mann
U.S. Bankruptcy Court
Southern District of California
Jacob Weinberger U.S. Courthouse
325 West F Street, Chambers 1 – Room 218
San Diego, CA 92101 - 6998

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 28, 2011 | Mary de Leon | /s/ Mary de Leon |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010
60982-002\DOCS_LA:235217.1

**F 9013-3.1.PROOF.SERVICE**

13

## ADDITIONAL SERVICE LIST:

**11-02896-MM11 Notice will be electronically mailed to:**

Robert R. Barnes on behalf of Creditor Landlords Affiliated with General Growth Properties
bbarnes@allenmatkins.com, bcrfilings@allenmatkins.com

Jeffrey D. Cawdrey on behalf of Creditor Jido & Juniar, Inc.
jcawdrey@gordonrees.com, ebojorquez@gordonrees.com

Christine Fitzgerald on behalf of Creditor FMF Racing
cfitzgerald@scckg.com

Thomas M. Geher on behalf of Interested Party Ultimate Brand Management, LLC
tmg@jmbm.com

Sue J. Hodges on behalf of Creditor Credit Cash NJ, LLC
sue.hodges@klgates.com

Mark S. Hoffman on behalf of Creditor LFP Apparel, LLC
mshllh@aol.com

Haeji Hong on behalf of United States Trustee United States Trustee
Haeji.Hong@usdoj.gov,
USTP.Region15@usdoj.gov;shannon.m.vencill@usdoj.gov;tiffany.l.carroll@usdoj.gov

Brian D. Huben on behalf of Creditor The Macerich Company
brian.huben@kattenlaw.com, carole.levine@kattenlaw.com

David S. Kupetz on behalf of Debtor No Fear MX, Inc.
dkupetz@sulmeyerlaw.com

Jeffrey N. Pomerantz on behalf of Creditor Committee Official Committee of Unsecured Creditors of No Fear Retail Stores, Inc.
jpomerantz@pszjlaw.com, scho@pszjlaw.com

United States Trustee
ustp.region15@usdoj.gov

Steven F. Werth on behalf of Debtor No Fear MX, Inc.
swerth@sulmeyerlaw.com

Dennis J. Wickham on behalf of Creditor Cobra-Blackmore, LP
wickham@scmv.com, havard@scmv.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010
60982-002\DOCS_LA:235217.1

F 9013-3.1.PROOF.SERVICE

14

**11-02896-MM11 Notice will be sent via U.S. mail or email to:**

VIA EMAIL AS FOLLOWS:
Attys for Centro Independence LLC
Joel F. Crystal, Esq.
VP, Corporate Legal Services
420 Lexington Avenue, 7th Floor
New York, NY  10170
Email: joel.crystal@centroprop.com

Attys for LFP Apparel, LLC
Jonathan Brown, Esq.
Lipsitz Green Scime Cambria LLP
42 Delaware Avenue, Suite 300
Buffalo, New York  14202
Email: jbrown@lglaw.com

Attys for Westfield, LLC and
The Macerich Company
Thomas J. Leanse, Esq.
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA  90067-3012
Email: thomas.leanse@kattenlaw.com

Attys for La Jolla Group, Inc.
Benjamin Seigel, Esq.
Buchalter Nemer
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA  90017-2457
Email: bseigel@buchalter.com

Attys for The Irvine Company
Ernie Zachary Park, Esq.
Bewley, Lassleben & Miller, LLP
13215 E. Penn Street, Suite 510
Whittier, CA  90602-1797
Email: ernie.park@bewleylaw.com

Attys for Heather Moates
John O. Cronin, Esq.
Cronin & Cronin
225 East Third Avenue
Escondido, CA  92025-4203
Email: john@croninandcronin.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010
60982-002\DOCS_LA:235217.1

F 9013-3.1.PROOF.SERVICE

15

Attys for Creditors,
FMF Racing and Don Emler
Barry R. Gore, Esq.
Christine M. Fitzgerald, Esq.
Smith Campbell Clifford Kearney Gore
3424 Carson Street, Suite 350
Torrance, CA  90503
Email: bgore@scckg.com

Attys for Landlords Affiliated with
General Growth Properties
Ivan M. Gold, Esq.
Allen Matkins Leck Gamble Mallory Natsis
Three Embarcadero Center, 12th Floor
San Francisco, CA  94111
Email: igold@allenmatkins.com

Diane Baxa
Email: Diane.Baxa@cnb.com

On behalf of Jido & Juniar, Inc.
Laith Haisha
Email: laith@jandjclothing.com

On behalf of Orange 21 North America Inc.
Nicole Kelley
Email: nkelley@o21na.com

Matthew B. Venturi
Email: mventuri@venturico.com

Josh Garver
Email: jgarver@venturi@venturico.com

VIA U.S. MAIL AS FOLLOWS:
Christine R. Etheridge
Ikon Financial Services
Bankruptcy Administration
1738 Bass Road
PO Box 13708
Macon, GA  31208-3708

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010
60982-002\DOCS_LA:235217.1

F 9013-3.1.PROOF.SERVICE

16