1  David S. Kupetz (CA Bar No. 125062)
     dkupetz@sulmeyerlaw.com
2  Steven F. Werth (CA Bar No. 205434)
     swerth@sulmeyerlaw.com
3  **Sulmeyer**Kupetz
   A Professional Corporation
4  333 South Hope Street, Thirty-Fifth Floor
   Los Angeles, California 90071-1406
5  Telephone:   213.626.2311
   Facsimile:   213.629.4520
6
   Bankruptcy Counsel for No Fear Retail
7  Stores, Inc. Simo Holdings, Inc, and No
   Fear MX, Inc., Debtors and Debtors in
8  Possession

9              **UNITED STATES BANKRUPTCY COURT**

10              **Southern District of California**

11  In re                              Case No.  11-02896-MM11

12                                      (Jointly Administered with Case Nos.
                                        11-02897-MM11; 11-02898-MM11)
13  NO FEAR RETAIL STORES, INC.,
    a California corporation, SIMO       Chapter 11 Cases
14  HOLDINGS, INC., a California
    corporation, and NO FEAR MX, INC.,   **DEBTORS' REPLY TO OBJECTIONS OF**
15  a California corporation,            **CREDITORS' COMMITTEE AND UNITED**
                                        **STATES TRUSTEE TO MOTION FOR**
16                                      **ORDER AUTHORIZING DEBTORS TO**
                                        **ENTER INTO DEBTOR IN POSSESSION**
17              Related Debtors.        **CREDIT FACILITY WITH HILCO BRANDS,**
                                        **LLC AND INFINITY FS BRANDS, LLC,**
18                                      **DECLARATION OF MARK SIMO;**
                                        **DECLARATION OF MATTHEW VENTURI**
19
                                        **DATE:**     April 1, 2011
20                                      **TIME:**     2:00 p.m.
                                        **JUDGE:**    Hon. Margaret M. Mann
21                                      **PLACE:**    Chamber 1—Room 218
                                                     U.S. Bankruptcy Court
22                                                   325 West "F" Street
                                                     San Diego, CA 92101
23  Employer ID Nos. 20-5238208, 93-
    1037856, 26-0432196
24
25
26
27
28

*left margin vertical text:* **Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1              No Fear Retail Stores, Inc. ("NFRS"), Simo Holdings, Inc. ("SHI"), and No

2 Fear MX, Inc. ("NFMX", and together with NFRS and SHI, the "Debtors" or the

3 "Company"), debtors and debtors in possession in the above-captioned jointly

4 administered chapter 11 reorganization cases, reply to the objections of the Creditors'

5 Committee and United States Trustee to the Debtors' motion (the "Motion") for

6 authorization to enter into a debtor in possession credit facility (the "DIP Facility") with

7 Hilco Brands, LLC and Infinity FS Brands, LLC ("Hilco/Infinity"), as follows:

8 A.     **Financing is Urgently Needed to Promptly Replenish Inventory and to Meet**
       **Other Operating and Administrative Expenses**

9

10        1.     Since the commencement of their chapter 11 cases, the Debtors' ability to

generate cash flow from operations has stemmed from a reduction of costs and inventory

11 sell-through, including inventory from stores closed by the Debtors prior to the

12 commencement of the reorganization cases.

13        2.     The Debtors' 13-week cash flow projections (beginning with the week

14 starting Monday, March 28, 2011) attached hereto as **Exhibit "1"** and incorporated

15 herein by this reference reflect that without the Debtors' receipt of additional financing in

16 April, 2011, the Debtors will lack adequate funds to continue their operations in the

17 ordinary course in May, 2011.

18        3.     Postpetition financing is necessary in order for the Company to maintain its

19 business operations, preserve and enhance enterprise value, and avoid immediately

20 jeopardizing the prospects for a successful reorganization.  New inventory purchases are

21 especially critical, as the Company's current inventory is severely deficient.  Nearly all

22 current inventory is relatively high-cost, because it largely was acquired in the months

23 prior to the Debtors' chapter 11 filings, when, given its poor financial condition, the

24 Company could not command favorable pricing.  Sales of this high-cost inventory yield

25 lower margins.  In addition, inventory levels are depleted and inventory mix is sub-

26 optimal.

27        4.     If the Company does not replenish and begin correcting its inventory by the

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

end of April, it likely will forego substantial sales revenue and margin as the important summer selling season begins, and may also be inadequately stocked for the crucial back-to-school season in July/August.

5. The Company needs to purchase product 2-3 months in advance. Because of the Company's cash position it is unable to purchase adequate inventory in advance of the critical back-to-school season (July/August) without postpetition financing.

6. The Company's purchases for the July/August selling season need to begin in early May. Poor sales over the summer and/or at the back-to-school sales period would have a direct and immediate negative impact on the Debtors, and also would impair the Company's market position longer term.

7. The Debtors' vendors are requiring the Debtors to purchase goods either on a cash on delivery (COD) or deposit on future delivery basis. Deposits are being required before the vendors will produce the goods for the Debtors. Moreover, the vendors are requiring that the balance of payment be made prior to shipment of product to the Company. Due to this lack of credit terms, the Company has lost access to 2-3 months of cash flow that otherwise would be available. At the same time, the Company is requesting a 20% discount on all cash purchases from vendors and is consistently receiving this discount which will improve sales margins.

8. The Debtors' current inventory position is weak in two major respects: inventory mix is sub-optimal and the cost of current inventory is high. Inventory is heavy on the Debtors' house brands ("No Fear," "Fearless," "So Cal," and "No Cal"), which account for approximately 74% of total inventory, and light on key third-party brands, which account for approximately 26%. Third party brands drive store traffic and sales, and the optimal ratio is approximately 50%/50%. Inventory also is heavy on older, less appealing merchandise and light on faster-selling new products. In addition, current inventory is relatively high-cost, because the bulk of it was acquired in the months prior to the Debtors' chapter 11 filing, when, given its poor financial condition, the Company could not command favorable pricing. This stale, high-cost inventory sells slowly and yields

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  significantly lower margins.

2      9.      If the Company does not obtain funds to replenish and correct its inventory

3  by the end of April, it will forego substantial sales revenue and margin as the important

4  summer selling season begins, and it will be precluded from any meaningful participation

5  in the crucial back-to-school season in July/August.  More urgent, as the 13-week budget

6  (Exhibit 1 hereto) shows, the Company's cash will exhausted by the first week of May.

7  B.    **Runway Created by the DIP Facility**

8      1.      The Debtors' cash flow forecast through September 4, 2011, assuming

9  approval of the postpetition financing, is attached hereto as **Exhibit "2"** and incorporated

10  herein by this reference.  The Debtors believe the funding under the proposed

11  postpetition credit facility will allow the Debtors the necessary time and opportunity to

12  develop, present and confirm a plan of reorganization and will provide sufficient runway

13  throughout 2011.  The Company intends to work with and include the Creditors'

14  Committee (the "Committee") and other significant creditors in the plan process.  As

15  reflected in Exhibit "2", approval of the DIP Facility will provide adequate funds for the

16  Debtors to continue to operate in the ordinary course throughout 2011.

17      2.      The primary assumptions underlying the cash flow forecast attached hereto

18  as Exhibit 2 include the following:  store sales follow current trends; inventory purchases

19  are between 35% to 50% of sales, depending on projected sales phasing (but are double

20  immediately following closing of the DIP Facility, in order to purchase inventory for the

21  summer and back to school seasons); store rents remain at current rates; and a portion

22  of the DIP Facility funds are allocated to purchases of motocross gear ($220,000

23  immediately and $400,000 in late August 2011).[1]

24      3.      As indicated above, the Debtors contemplate initially paying down the

25

---

26  [1] Depending on how the Debtors decide to proceed with the motocross aspect of the
business, the $400,000 payment in late August 2011 (which would be made in the 23rd
27  week of the projections) may not be incurred.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

secured claim of Credit Cash NJ, LLC, by approximately $565,000 from proceeds of the DIP Facility.

C.  **Changes to Hilco/Infinity Term Sheet, Including Commitment Eliminating Due Diligence Out and Other Improvements to the Term Sheet**

1.  Hilco/Infinity is now committed to the DIP Facility.  As set forth in **Exhibit "3"** hereto, and incorporated herein by this reference, Hilco/Infinity has moved forward from its term sheet and has now provided the Debtors with a commitment letter (the "Commitment Letter").  As set forth in Exhibit "3" hereto, Hilco/Infinity waived its business due diligence requirement with respect to the Commitment Letter.  Attached hereto as **Exhibit "4"** and incorporated herein by this reference is a mark-up showing the modifications to the Hilco/Infinity term sheet previously filed with the Court when compared to the Outline of Terms and Conditions included as Exhibit A to the Commitment Letter attached hereto as Exhibit "3".  Among other improvements to the Hilco/Infinity term sheet, in addition to the elimination of the business due diligence condition, reflected in Exhibits "3" and "4" hereto include:  (1) the removal of Hilco/Infinity's right of first refusal in the event of any store liquidation; and (2) the elimination of any right of first refusal to advise on any lease mitigation work or landlord negotiations.

2.  Hilco/Infinity has stepped up and shown its commitment to closing the DIP Facility.  Certainty of close is an extremely important factor with regard to why the Company and its financial advisor have concluded that it is imperative that the Debtors move forward and obtain approval of the DIP Facility in light of the Company's urgent funding needs and substantial uncertainties regarding all other potential proposals.  That being said, the DIP financing by Hilco/Infinity was intentionally structured in order to accommodate alternative financing options up until the actual funding of the DIP Facility with Hilco/Infinity.  The Company does not believe that the terms of the proposed Hilco/Infinity financing restrict the exit strategies; just the contrary, there are no commitments, either firm or implied, that require the Debtors to work with Hilco/Infinity

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

upon exit, or limit interested parties from submitting competitive alternatives throughout the reorganization process.

3.    The pricing terms of the GB Merchant Partners ("Gordon Brothers") proposal attached as Exhibit 1 to the Committee Objection is more competitive. However, that financing option does not mitigate the risks or contingencies relating to the certainty of closing.  Gordon Brothers has yet to do any due diligence on the Debtors' estates.  In contrast, Hilco/Infinity no longer has a business due diligence contingency and has been familiar with the Debtors for months as a result of their ongoing discussions and contemplated proposals.

D.    **Availability of Favorable Financing Terms**

1.    The amount of the Company's financing needs are relatively small by most lending standards, not to mention that there are a limited number of options available for sourcing more complicated debtor in possession financing, without having recourse guarantees or excess amounts of collateral – neither of which are available in these cases.  Liquidation values for fashion apparel with seasonal characteristics can be limited, and the difficulty in valuing trademark rights, especially if a company does not remain as a going concern, can become subjective and highly contingent.

2.    The relatively high interest rate of the proposed debtor in possession financing reflects supply-demand issues in the debtor in possession financing market, specifically, and the lack of readily available funding for transactions of this size. Furthermore, the perceived fundamentals of the business limits the number of debtor in possession loan providers willing to lend to the Debtors.

E.    **Marketing to and Qualifying Alternative Financing Sources**

1.    More than 25 potential funding sources were identified by the Debtors' financial advisor (Venturi & Company) as potential candidates for possible debtor in possession financing, a number of which were ruled out due to the limitations referenced above.  Several interested parties related to the case expressed a willingness to provide debtor in possession financing, but none delivered term sheets or reasonable outlines

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1 that could be acted upon prior to the Company signing the term sheet with Hilco/Infinity.

2      2.     Several parties that were approached by Venturi & Company would only

3 consider providing debtor in possession financing if the Debtors agreed to a concurrent

4 sale of the business or change-in-control of the Debtors' enterprise. This option was

5 untenable at this initial stage of the cases. Furthermore, except for two parties (including

6 Hilco/Infinity) that had engaged in active due diligence efforts early-on in order to qualify

7 making a bid, all of the parties would require significant time to be able to sufficiently

8 conduct due diligence and qualify the potential opportunity, creating a protracted timeline

9 that would have been unworkable for the Debtors in light of the need for financing prior to

10 May 2011.

11      3.     The Hilco/Infinity group had been in discussions with the Debtors for

12 several months leading up to the bankruptcy petition filing. Consequently, they were

13 more familiar with the Debtors' businesses than any other party. Hilco/Infinity negotiated

14 in good faith and demonstrated a reasonableness and willingness to be flexible on key

15 terms of the debtor in possession financing, particularly in connection with the change-in-

16 control provision and the ability to provide a "fiduciary out" in the case whereby another

17 party interested in providing debtor in possession were to come forth in a timely manner.

18 These were critical to the Debtors' ability to secure financing, including avoiding having to

19 enter into an exclusivity period that would have otherwise precluded negotiations with

20 third parties and, potentially, putting the Debtors in the precarious position of not having a

21 debtor in possession financing alternative at all (e.g., if Hilco/Infinity were to decide to not

22 proceed with funding and closing the financing). The Debtors could not afford to run the

23 risk of not having a financing commitment in hand, and Hilco/Infinity, at the time of

24 execution of the term sheet, provided the most competitive and compelling option, with

25 the highest certainty of close, than any other parties identified.

26      4.     As evidenced by Exhibit 1 to the Committee's Objection, the ability of the

27 Debtors to get Hilco/Infinity to step forward with the term sheet that could serve as the

28 basis for the DIP Facility has already produced competition in the form of the proposal

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

presented by Gordon Brothers' mark-up of the Hilco/Infinity term sheet.  Moreover, the Debtors' financial advisor is currently engaged in discussions with other parties who previously had been unprepared and/or unwilling to step forward with a postpetition financing proposal and who are now stating that they may come forward with a proposal now that the Hilco/Infinity term sheet has been made available to them.

5.    Conditional, non-binding term sheets are usual and customary within industry practices, until the definitive loan documentation can be completed and a final credit review and commitment is received from a lender.  No transaction alternative would practically provide an unconditional commitment to fund, certainly without a substantially large, nonrefundable commitment fee, if at all; however, this would still be highly unlikely with a transaction of this size and nature.

6.    Hilco/Infinity has not been provided with any "bidding protections" as referenced in the Committee Objection.  In fact, Hilco/Infinity specifically agreed to forgo any exclusivity rights and, instead, allowed the Debtors to continue to explore any and all alternative DIP financing options up through and to funding date.  The concept of a break-up fee (discussed below) is intended to reimburse Hilco/Infinity for the lost opportunity if the Debtors were to close on a more attractive DIP Financing and to induce Hilco/Infinity to serve as a stalking horse (which has already proven its value). Hilco/Infinity's legal fees and breakage costs in total are considered to be reasonable, fair and equitable.

7.    In contrast to the Committee Objection, the Proposed DIP Facility is, in fact, explicitly intended to provide the Debtors with sufficient runway to explore reorganization strategies, in addition to providing the necessary interim liquidity in a timely manner.  The Debtors' 13- week cash flow forecast (beginning with the week starting March 28, 2011) specifically indicates that as early as the week of May 2nd, the Company will have insufficient working capital to continue to run its business in the ordinary course.  This, in turn, will directly impact the Debtors' business as a going concern, the value of the estates, and reorganization prospects.  Alternatively, given the respective terms of the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

DIP Facility, including those which allow the Company the opportunity to pursue more permanent reorganization alternatives over the longer term as well as the short term, the proposed DIP Facility is necessary and critical to preserving value for the estates and the creditors.

8.     It is believed that the DIP Facility will provide the Debtors with meaningful liquidity over the short and longer term of this case.  The Debtors have preliminarily negotiated an agreement with secured creditor (Credit Cash NJ, LLC) to be able to partially pay down the obligation owed to Credit Cash, with the flexibility, if necessary, to extend the remaining payments over time.

9.     The upfront fees and expenses proposed by Hilco/Infinity, on the other hand, are considered usual and customary, and unavoidable in any financing transaction of this type.  The Gordon Brothers proposal helps to reaffirm such fees and amounts, when contrasting the two options with one another.  The Gordon Brothers proposal provides that its legal fees associated with the negotiation and documentation of the proposed credit facility will not exceed $100,000 and that, in addition, without limitation, the Debtors would be responsible for all reasonable costs, fees and expenses of Gordon Brothers including (without limitation) the fees, costs, and expenses of counsel and independent appraisers, consultants, and auditors, and the travel, lodging and expenses of Gordon Brothers and its affiliates' personnel.

10.    Hilco/Infinity agreed to restrict its ability to withhold its right to consent to the licensing of intellectual property, by being subject to a reasonableness test, which was considered to be a practical approach to this issue, thereby not limiting the Debtors in their ability to pursue any licensing opportunities that may help to enhance the value of the estates and the resulting recovery levels of the creditors.  The appearance of Hilco/Infinity providing the DIP Facility as means to obtain control over the disposition of the remaining assets of the Debtors' estates is only that--an appearance.  In fact, this issue was specifically addressed in the context of the Company's discussion with Hilco/Infinity and reaffirmed to the Debtors' satisfaction that no such ulterior motive

existed. The terms of the provision regarding licensing does not provide Hilco/Infinity with undue influence on exit strategies in these cases as there were no limitations placed on the Debtors and their ability to pursue any and all exit strategies that may develop throughout the case and upon completion of the restructuring process.

11. The right of first refusal to bid on store liquidations and to advise on lease mitigation and in landlord negotiations has been relinquished by Hilco/Infinity. That being said, it was the Debtors' view that coordinating with Hilco/Infinity, and providing them the opportunity to offer their resident expertise (which is nationally recognized), on an arm's-length basis, could provide the estates with an advantage if store liquidations and/or landlord negotiations were deemed to be necessary.

12. The Debtors agree that the original Hilco/Infinity terms were considerably expensive; however, they were reflective of the nature of the credit and the absence of an alternative DIP financing proposal. However, the DIP Facility was structured in a fashion to solicit other, bona fide interested parties willing to provide a DIP financing alternative at comparable or more competitive terms to come forward. The Debtors were successful in doing so, through such a stalking horse strategy, and anticipate the possibility of seeing other proposals presented before the final closing of the DIP financing.

13. The Gordon Brothers' proposal, albeit offering more competitive pricing, is considered to provide similar fees and expenses to that of Hilco/Infinity, including factoring in the costs associated with the proposed break-up fee. More importantly, however, the Gordon Brothers' proposal is still simply a proposal, which notwithstanding the relatively high expenses and similar commitment fees, is entirely contingent and subject to business, financial and legal due diligence, of which none has been done so far. In contrast, Hilco/Infinity originally engaged with the Debtors months ago and has the opportunity to conduct due diligence on the Debtors' businesses. Most significantly, subsequent to the delivery of the Gordon Brothers' mark-up of the Hilco/Infinity term sheet, Hilco/Infinity has agreed to forego its business due diligence requirement, thereby eliminating a significant contingency of their DIP financing proposal and thereby

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  shortening the time to a successful closing and has advanced its term sheet to a

2  Commitment Letter.

3          14.    Subsequent to the retention of counsel and a financial advisor by the

4  Committee, the Debtors and their financial advisor have made a conscious effort to

5  accommodate all requests of said advisors in a timely and productive fashion.

6  Conference calls, with the opportunity to meet face-to-face prior to the DIP Motion

7  hearing, have been conducted and/or arranged in order to attempt to better inform these

8  advisors of the Debtors' need for immediate liquidity.

9  F.      **Break-Up Fee Reasonableness:**

10         1.     Break-up fees are usual and customary in transactions of this type.  The

11  Hilco/Infinity break-up fee is 3.5% of the $3 million financing commitment (or $105,000),

12  not 5% as incorrectly stated by the U.S. Trustee.

13         2.     While break-up fees typically seen in larger financings may be somewhat

14  lower (e.g., in the 2% range), the absolute dollar amount of the break-up fee, given the

15  complexity and time constraints on such a small commitment, can be  considered fair and

16  reasonable.  Commonly also referred to as a "topping fee," the break-up fee in the

17  Hilco/Infinity case allows any party interested and capable of providing a competitive

18  debtor in possession financing alternative to step forward with a commitment.  To the

19  extent that a third party were to provide a similar 18-month debtor in possession financing

20  commitment to the Debtors, just a modest reduction in the implied interest rate on the line

21  from 20% to 17.5% would make up for this inherent cost (i.e., having to repay the

22  additional $105,000 over 18 months, representing a 2.33% net interest cost differential),

23  assuming such party were willing to match or improve on all of the other terms and

24  conditions of the Hilco/Infinity term sheet.

25  G.      **High Sense of Urgency and Need to Close on the Debtor in Possession**
        **Financing:**

26

27         1.     This case is relatively small for one involving a retail chain and is

28  vulnerable to delays in commencing a timely reorganization of the Debtors' businesses.

Sulmeyerkupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

DKUPETZ\ 712415.1 3/30/2011 (6:16 PM)                    11

1    Without having a supplemental source of short-term liquidity in order to address the

2    ongoing working capital needs of the Debtors, the value of Debtors' estates as a going

3    concern rapidly can become greatly diminished, and inherently runs the risk of going into

4    liquidation.  The economic environment for specialty retailers is fragile and the industry, in

5    general, is highly fashion-driven.  Without the ability to continue its store operations, and

6    demonstrate a certain level of business sustainability, it is unlikely that the Debtors could

7    reorganize and emerge as a going concern and offer anything more than simply a

8    licensing opportunity, whose trade mark and intellectual property values will also be

9    impacted by a protracted and prolonged stay in bankruptcy.

10          2.      Without the benefit of having prompt access to debtor in possession

11   financing at this stage of the process, the opportunity for reorganization in these cases

12   could be ended very quickly, the potential recovery for unsecured creditors could become

13   significantly impaired.

14          3.      In closing, the Debtors and their financial advisor believe that the DIP

15   Financing, as proposed by Hilco/Infinity on a restructured basis, is in the best interest of

16   the general creditor body and is necessary in order to preserve the value of the estates

17   over the short term and the longer term.  Notwithstanding that the proposed Hilco/Infinity

18   DIP Facility will continue to remain a stalking horse financing option until closed, the

19   critical timing requirements and certainty of closing are paramount to preserving the

20   necessary liquidity of the estates.  Until such time that an more viable, cost-effective and

21   non-conditional alternative is presented in the case, the Debtors' ability to successfully

22   reorganize with be greatly impacted if the proposed DIP Facility is not approved and

23   subsequently funded on a timely basis.

24          **WHEREFORE**, the Debtors respectfully request that the Court (1) approve

25   the $25,000 expense payment provided for in the Hilco/Infinity Commitment Letter, (2)

26   approve the 3.5% break-up fee set forth in the Hilco/Infinity Commitment Letter, and (3)

27   set a final hearing for approval of the DIP Facility on or about April 15, 2011.

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1 | Dated: March 30, 2011

Respectfully submitted,

**Sulmeyer**Kupetz
A Professional Corporation

By: _____
David S. Kupetz
Steven F. Werth
Bankruptcy Counsel for No Fear Retail
Stores, Inc. Simo Holdings, Inc, and No
Fear MX, Inc., Debtors and Debtors in
Possession

# DECLARATION OF MARK SIMO

I, Mark Simo, declare:

1.    I am the CEO of No Fear Retail Stores, Inc., Simo Holdings, Inc., and No Fear MX, Inc. (collectively, the "Debtors" or the "Company"). I have been the CEO of the Debtors since their formation.

2.    I have personal knowledge of the facts contained in this declaration. I can testify that said facts are true and correct. My declaration ("My Prior Declaration") was previously submitted in support of the "Motion of Debtors and Debtors in Possession for Order Authorizing Debtors to Enter Into Financing Agreement With Hilco Brands, LLC and Infinity FS Brands, LLC" (the "Motion"). My Prior Declaration is incorporated herein by this reference.

3.    Since the commencement of their chapter 11 cases, the Debtors' ability to generate cash flow from operations has stemmed from a reduction of costs and inventory sell-through, including inventory from stores closed by the Debtors prior to the commencement of the reorganization cases.

4.    The Debtors' 13-week cash flow projections (beginning with the week starting Monday, March 28, 2011) attached hereto as Exhibit 1 and incorporated herein by this reference reflect that without the Debtors' receipt of additional financing in April, 2011, the Debtors will lack adequate funds to continue their operations in the ordinary course in May, 2011.

5.    Postpetition financing is necessary in order for the Company to maintain its business operations, preserve and enhance enterprise value, and avoid immediately jeopardizing the prospects for a successful reorganization. New inventory purchases are especially critical, as the Company's current inventory is severely deficient. Nearly all current inventory is relatively high-cost, because it was largely acquired in the months prior to the Debtors' chapter 11 filing, when, given its poor financial condition, the Company could not command favorable pricing. Sales of this

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

high-cost inventory yield lower margins.  In addition, inventory levels are depleted and inventory mix is sub-optimal.

6.    If the Company does not replenish and begin correcting its inventory by the end of April, it likely will forego substantial sales revenue and margin as the important summer selling season begins, and may also be inadequately stocked for the crucial back-to-school season in July/August.

7.    The Company needs to purchase product 2-3 months in advance. Because of the Company's cash position it is unable to purchase adequate inventory in advance of the critical back-to-school season (July/August) without postpetition financing.

8.    The Company's purchases for the July/August selling season need to begin in early May.  Poor sales over the summer and/or at the back-to-school sales period would have a direct and immediate negative impact on the Debtors, and would also impair the Company's market position longer term.

9.    The Debtors' vendors are requiring the Debtor to purchase goods either a cash on delivery (COD) or deposit on future delivery basis.  Deposits are being required before the vendors will produce the goods for the Debtors.  Moreover, the vendors are requiring that the balance of payment be made prior to shipment of product to the Company.  Due to this lack of credit terms, the Company has lost access to 2-3 months of cash flow that otherwise would be available.  At the same time, the Company is requesting a 20% discount on all cash purchases from vendors and is consistently receiving this discount which will improve sales margins.

10.    The Debtors' current inventory position is weak in two major respects:  inventory mix is sub-optimal and the cost of current inventory is high. Inventory is heavy on the Debtors' house brands ("No Fear," "Fearless," "So Cal," and "No Cal"), which account for approximately 74% of total inventory, and light on key third-party brands, which account for approximately 26%.  Third party brands drive store traffic and sales, and the optimal ratio is approximately 50%/50%.  Inventory also is heavy on older, less appealing merchandise and light on faster-selling new products.  In addition,

1  current inventory is relatively high-cost, because the bulk of it was acquired in the months

2  prior to the Debtors' chapter 11 filing, when, given its poor financial condition, the

3  Company could not command favorable pricing. This stale, high-cost inventory sells

4  slowly and yields significantly lower margins.

5         11.    If the Company does not obtain funds to replenish and correct its

6  inventory by the end of April, it will forego substantial sales revenue and margin as the

7  important summer selling season begins, and it will be precluded from any meaningful

8  participation in the crucial back-to-school season in July/August. More urgent, as the 13-

9  week budget (Exhibit 1 hereto) shows, the Company's cash will exhausted by the first

10  week of May.

11         12.    The Debtors' cash flow forecast through September 4, 2011,

12  assuming approval of the postpetition financing, is attached hereto as Exhibit "2" and

13  incorporated herein by this reference. The Debtors believe the funding under the

14  proposed postpetition credit facility will allow the Debtors the necessary time and

15  opportunity to develop, present and confirm a plan of reorganization and will provide

16  sufficient runway throughout 2011. The Company intends to work with and include the

17  Creditors' Committee (the "Committee") and other significant creditors in the plan

18  process. As reflected in Exhibit "2", approval of the DIP Facility will provide adequate

19  funds for the Debtors to continue to operate in the ordinary course throughout 2011.

20         13.    The primary assumptions underlying the cash flow forecast attached

21  hereto as Exhibit 2 include the following: store sales follow current trends; inventory

22  purchases are between 35% to 50% of sales, depending on projected sales phasing (but

23  are double immediately following closing of the DIP Facility, in order to purchase

24  inventory for the summer and back to school seasons); store rents remain at current

25  rates; and a portion of the DIP Facility funds are allocated to purchases of motocross

26  gear ($220,000 immediately and $400,000 in late August 2011). Depending on how the

27  Debtors decide to proceed with the motocross aspect of the business, the $400,000

28  payment in late August 2011 (which would be made in the 23rd week of the projections)

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   may not be incurred.

2        14.   As indicated above, the Debtors contemplate initially paying down

3   the secured claim of Credit Cash NJ, LLC, by approximately $565,000 from proceeds of

4   the DIP Facility.

5        15.   The cash flow forecasts attached hereto as Exhibits "1" and "2" were

6   prepared by the Debtors' accounting personnel, at my request and under my direction,

7   and take into account the Company's recent sales results, the current retail sales

8   environment, the Company's current and anticipated inventory, and historical seasonal

9   sales levels.

10       I declare under penalty of perjury that the foregoing is true and correct.

11   Executed this 30th day of March, 2011, at Carlsbad, California.

12

13

14

15                     **MARK SIMO**

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**DECLARATION OF MATTHEW VENTURI**

I, Matthew Venturi, declare:

1.     I have personal knowledge of the facts stated herein.  I can testify that said facts are true and correct.

2.     I am the principal of Venturi & Company LLC ("Venturi & Company"). My declaration ("My Prior Declaration") was previously submitted in support of the "Motion of Debtors and Debtors in Possession for Order Authorizing Debtors to Enter Into Financing Agreement With Hilco Brands, LLC and Infinity FS Brands, LLC" (the "Motion"). My Prior Declaration is incorporated herein by this reference.

3.     Hilco/Infinity is now committed to the DIP Facility.  As set forth in Exhibit 3 hereto, and incorporated herein by this reference Hilco/Infinity has moved forward from its term sheet and has now provided the Debtors with a commitment letter (the "Commitment Letter").  As set forth in Exhibit 3 hereto, Hilco/Infinity has waived its business due diligence requirement in its Commitment Letter.  Attached hereto as Exhibit 4 and incorporated herein by this reference is a mark-up showing the modifications to the Hilco/Infinity term sheet previously filed with the Court when compared to the Outline of Terms and Conditions included as Exhibit A to the Commitment Letter attached hereto as Exhibit 3.  Among other improvements to the Hilco/Infinity term sheet, in addition to the elimination of the business due diligence condition, reflected in Exhibits 3 and 4 hereto include:  (1) the removal of Hilco/Infinity's right of first refusal in the event of any store liquidation; and (2) the elimination of any right of first refusal to advise on any lease mitigation work or landlord negotiations.

4.     Hilco/Infinity has stepped up and shown its commitment to closing the DIP Facility.  Certainty of close is an extremely important factor with regard to why the Company and its financial advisor have concluded that it is imperative that the Debtors move forward and obtain approval of the DIP Facility in light of the Company's urgent funding needs and substantial uncertainties regarding all other potential proposals.  That being said, the DIP financing by Hilco/Infinity was intentionally structured in order to

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    accommodate alternative financing options up until the actual funding of the DIP Facility

2    with Hilco/Infinity.  The Company does not believe that the terms of the proposed

3    Hilco/Infinity financing restrict the exit strategies; just the contrary, there are no

4    commitments, either firm or implied, that require the Debtors to work with Hilco/Infinity

5    upon exit, or limit interested parties from submitting competitive alternatives throughout

6    the reorganization process.

7            5.      The pricing terms of the GB Merchant Partners ("Gordon Brothers")

8    proposal attached as Exhibit 1 to the Committee Objection is more competitive.

9    However, that financing option does not mitigate the risks or contingencies relating to the

10   certainty of closing.  Gordon Brothers has yet to do any due diligence on the Debtors'

11   estates.  In contrast, Hilco/Infinity no longer has a business due diligence contingency

12   and has been familiar with the Debtors for months as a result of their ongoing discussions

13   and contemplated proposals.

14           6.      The amount of the Company's financing needs are relatively small by

15   most lending standards, not to mention that there are a limited number of options

16   available for sourcing more complicated debtor in possession financing, without having

17   recourse guarantees or excess amounts of collateral – neither of which are available in

18   this case.  Liquidation values for fashion apparel with seasonal characteristics can be

19   limited, and the difficulty in valuing trademark rights, especially if a company does not

20   remain as a going concern, can become subjective and highly contingent.

21           7.      The relatively high interest rate of the proposed debtor in possession

22   financing reflects supply-demand issues in the debtor in possession financing market,

23   specifically, and the lack of readily available funding for transactions of this size.

24   Furthermore, the perceived fundamentals of the business limits the number of debtor in

25   possession loan providers willing to lend to the Debtors.

26           8.      More than 25 potential funding sources were identified by the

27   Debtors' financial advisor (Venturi & Company) as potential candidates for possible

28   debtor in possession financing, a number of which were ruled out due to the limitations

1   referenced above.  Several interested parties related to the case expressed a willingness

2   to provide debtor in possession financing, but none delivered term sheets or reasonable

3   outlines that could be acted upon prior to the Company signing the term sheet with

4   Hilco/Infinity.

5         9.      Several parties that were approached by Venturi & Company would

6   only consider providing debtor in possession financing if the Debtors agreed to a

7   concurrent sale of the business or change-in-control of the Debtors' enterprise.  This

8   option was untenable at this initial stage of the cases.  Furthermore, except for two

9   parties (including Hilco/Infinity) that had engaged in active due diligence efforts early-on

10  in order to qualify making a bid, all of the parties would require significant time to be able

11  to sufficiently due diligence and qualify the potential opportunity, creating a protracted

12  timeline that would have been unworkable for the Debtors in light of the need for

13  financing prior to May 2011.

14        10.     The Hilco/Infinity group had been in discussions with the Debtors for

15  several months leading up to the bankruptcy petition filing.  Consequently, they were

16  more familiar with the Debtors' businesses  than any other party.  Hilco/Infinity negotiated

17  in good faith and demonstrated a reasonableness and willingness to be flexible on key

18  terms of the debtor in possession financing, particularly in connection with the change-in-

19  control provision and the ability to provide a "fiduciary out" in the case whereby another

20  party interested in providing debtor in possession were to come forth in a timely manner.

21  These were critical to the Debtors' ability to secure financing, including avoiding having to

22  enter into an exclusivity period that would have otherwise precluded negotiations with

23  third parties and, potentially, putting the Debtors in the precarious position of not having a

24  debtor in possession financing alternative at all (e.g., if Hilco/Infinity were to decide to not

25  proceed with funding and closing the financing).  The Debtors could not afford to run the

26  risk of not having a financing commitment in hand, and Hilco/Infinity, at the time of

27  execution of the term sheet, provided the most competitive and compelling option, with

28  the highest certainty of close, than any other parties identified.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL  213.626.2311 • FAX 213.629.4520

11.     As evidenced by Exhibit 1 to the Committee's Objection, the ability of the Debtors to get Hilco/Infinity to step forward with the term sheet that could serve as the basis for the DIP Facility has already produced competition in the form of the proposal presented by Gordon Brothers mark-up of the Hilco/Infinity term sheet.  Moreover, I am currently engaged in discussions with other parties who previously had been unprepared and/or unwilling to step forward with a postpetition financing proposal and who are now stating that they may come forward with a proposal now that the Hilco/Infinity term sheet has been made available to them.

12.     Conditional, non-binding term sheets are usual and customary within industry practices, until the definitive loan documentation can be completed and a final credit review and commitment is received from a lender.  No transaction alternative would practically provide an unconditional commitment to fund, certainly without a substantially large, nonrefundable commitment fee, if at all; however, this would still be highly unlikely with a transaction of this size and nature.

13.     Hilco/Infinity has not been provided with any "bidding protections" as referenced in the Committee Objection.  In fact, Hilco/Infinity specifically agreed to forgo any exclusivity rights and, instead, allowed the Debtors to continue to explore any and all alternative DIP financing options up through and to funding date.  The concept of a break-up fee (discussed below) is intended to reimburse Hilco/Infinity for the lost opportunity if the Debtors were to close on a more attractive DIP Financing and to induce Hilco/Infinity to serve as a stalking horse (which has already proven its value).  I consider Hilco/Infinity's legal fees and breakage costs in total to be reasonable, fair and equitable.

14.     In contrast to the Committee Objection, the Proposed DIP Facility is, in fact, explicitly intended to provide the Debtors with sufficient runway to explore reorganization strategies, in addition to providing the necessary interim liquidity in a timely manner.  The Debtors' 13- week cash flow forecast (beginning with the week starting March 28, 2011) specifically indicates that as early as the week of May 2nd, the Company will have insufficient working capital to continue to run its business in the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    ordinary course.  This, in turn, will directly impact the Debtors' business as a going

2    concern, the value of the estates, and reorganization prospects.  Alternatively, given the

3    respective terms of the DIP Facility, including those which allow the Company the

4    opportunity to pursue more permanent reorganization alternatives over the longer term as

5    well as the short term, the proposed DIP Facility is necessary and critical to preserving

6    value for the estates and the creditors.

7           15.    It is believed that the DIP Facility will provide the Debtors with

8    meaningful liquidity over the short and longer term of this case.  The Debtors have

9    preliminarily negotiated an agreement with secured creditor (Credit Cash NJ, LLC) to be

10   able to partially pay down the obligation owed to Credit Cash, with the flexibility, if

11   necessary, to extend the remaining payments over time.

12          16.    The upfront fees and expenses proposed by Hilco/Infinity, on the

13   other hand, are considered usual and customary, and unavoidable in any financing

14   transaction of this type.  The Gordon Brothers' proposal helps to reaffirm such fees and

15   amounts, when contrasting the two options with one another.  The Gordon Brothers

16   proposal provides that its legal fees associated with the negotiation and documentation of

17   the proposed credit facility will not exceed $100,000 and that, in addition, without

18   limitation, the Debtors would be responsible for all reasonable costs, fees and expenses

19   of Gordon Brothers including (without limitation) the fees, costs, and expenses of counsel

20   and independent appraisers, consultants, and auditors, and the travel, lodging and

21   expenses of Gordon Brothers and its affiliates' personnel.

22          17.    Hilco/Infinity agreed to restrict its ability to withhold its right to

23   consent to the licensing of intellectual property, by being subject to a reasonableness

24   test, which I consider to be a practical approach to this issue, thereby not limiting the

25   Debtors in their ability to pursue any licensing opportunities that may help to enhance the

26   value of the estates and the resulting recovery levels of the creditors.  The appearance of

27   Hilco/Infinity providing the DIP Facility as means to obtain control over the disposition of

28   the remaining assets of the Debtors' estates is only that--an appearance.  In fact, this

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 · FAX 213.629.4520

1    issue was specifically addressed in the context of the Company's discussion with

2    Hilco/Infinity and reaffirmed to the Debtors' satisfaction that no such ulterior motive

3    existed.  The terms of the provision regarding licensing does not provide Hilco/Infinity

4    with undue influence on exit strategies in these cases as there were no limitations placed

5    on the Debtors and their ability to pursue any and all exit strategies that may develop

6    throughout the case and upon completion of the restructuring process.

7           18.    The right of first refusal to bid on store liquidations and to advise on

8    lease mitigation and in landlord negotiations has been relinquished by Hilco/Infinity.  That

9    being said, it was the Debtors' view that coordinating with Hilco/Infinity, and providing

10   them the opportunity to offer their resident expertise (which is nationally recognized), on

11   an arms-length basis, could provide the estates with an advantage if store liquidations

12   and/or landlord negotiations were deemed to be necessary.

13          19.    The Debtors agree that the original Hilco/Infinity terms were

14   considerably expensive; however, they were reflective of the nature of the credit and the

15   absence of an alternative DIP financing proposal.  However, the DIP Facility was

16   structured in a fashion to solicit other, bona fide interested parties willing to provide a DIP

17   financing alternative at comparable or more competitive terms to come forward.  The

18   Debtors were successful in doing so, through such a stalking horse strategy, and

19   anticipates the possibility of seeing other proposals presented before the final closing of

20   the DIP financing.

21          20.    The Gordon Brothers proposal, albeit offering more competitive

22   pricing, is considered to provide similar fees and expenses to that of Hilco/Infinity,

23   including factoring in the costs associated with the proposed break-up fee.  More

24   importantly, however, the Gordon Brothers' proposal is still simply a proposal, which

25   notwithstanding the relatively high expenses and similar commitment fees, is entirely

26   contingent and subject to business, financial and legal due diligence, of which none has

27   been done so far.   In contrast, Hilco/Infinity originally engaged with the Debtors months

28   ago and has the opportunity to conduct due diligence on the Debtors' businesses.  Most

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  significantly, subsequent to the delivery of the Gordon Brothers' mark-up of the

2  Hilco/Infinity term sheet, Hilco/Infinity has agreed to forego its business due diligence

3  requirement, thereby eliminating a significant contingency of their DIP financing proposal

4  and thereby shortening the time to a successful closing and has advanced its term sheet

5  to a Commitment Letter.

6          21.     Subsequent to the retention of counsel and a financial advisor by the

7  Committee, the Debtors and I have made a conscious effort to accommodate all requests

8  of said advisors in a timely and productive fashion.  Conference calls, with the opportunity

9  to meet face to face prior to the DIP Motion hearing, have been conducted and/or

10  arranged in order to attempt to better inform these advisors of the Debtors' need for

11  immediate liquidity.

12          22.     Break-up fees are usual and customary in transactions of this type.

13  The Hilco/Infinity break-up fee is 3.5% of the $3 million financing commitment (or

14  $105,000), not 5% as incorrectly stated by the U.S. Trustee.

15          23.     While break-up fees typically seen in larger financings may be

16  somewhat lower (e.g., in the 2% range), the absolute dollar amount of the break-up fee,

17  given the complexity and time constraints on such a small commitment, can be

18  considered fair and reasonable.  Commonly also referred to as a "topping fee," the break-

19  up fee in the Hilco/Infinity case allows any party interested and capable of providing a

20  competitive  debtor in possession financing alternative to step forward with a

21  commitment.  To the extent that a third party were to provide a similar 18-month debtor in

22  possession financing commitment to the Debtors, just a modest reduction in the implied

23  interest rate on the line from 20% to 17.5% would make up for this inherent cost (i.e.,

24  having to repay the additional $105,000 over 18 months, representing a 2.33% net

25  interest cost differential), assuming such party were willing to match or improve on all of

26  the other terms and conditions of the Hilco/Infinity term sheet.

27          24.     This case is relatively small for one involving a retail chain and is

28  vulnerable to delays in commencing a timely reorganization of the Debtors' businesses.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  Without having a supplemental source of short-term liquidity in order to address the

2  ongoing working capital needs of the Debtors, the value of Debtors' estates as a going

3  concern can rapidly become greatly diminished, and inherently runs the risk of going into

4  liquidation.  The economic environment for specialty retailers is fragile and the industry, in

5  general, is highly fashion-driven.  Without the ability to continue its store operations, and

6  demonstrate a certain level of business sustainability, it is unlikely that the Debtors could

7  reorganize and emerge as a going concern and offer anything more than simply a

8  licensing opportunity, whose trade mark and intellectual property values will also be

9  impacted by a protracted and prolonged stay in bankruptcy.

10          25.      Without the benefit of having prompt access to debtor in possession

11  financing at this stage of the process, the opportunity for reorganization in these cases

12  could be ended very quickly, the potential recovery for unsecured creditors could become

13  significantly impaired.

14          I declare under penalty of perjury that the foregoing is true and correct.

15  Executed this 30th day of March, 2011, at *Burlingame*                  , California.

16

17

18  *Matthew Venturi*

    **MATTHEW VENTURI**

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

DKUPETZ\712415.1 3/30/2011 (5:08 PM)                    25

EXHIBIT "1"

Consolidated - Simo Holdings, Inc. No Fear Retail Stores, Inc., No Fear MX, Inc.
Cash Flow Analysis
as of 03/26/11

| Week | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3/29/2011 | 4/4/2011 | 4/11/2011 | 4/18/2011 | 4/25/2011 | 5/2/2011 | 5/9/2011 | 5/16/2011 | 5/23/2011 | 5/30/2011 | 6/6/2011 | 6/13/2011 | 6/20/2011 |
| **Cash Inflows** | | | | | | | | | | | | | |
| Retail Sales | $486,527 | $512,616 | $473,272 | $441,204 | $444,560 | $523,042 | $545,522 | $497,255 | $523,224 | $529,288 | $549,038 | $528,785 | $602,543 |
| Wholesale Sales | $38,922 | $41,009 | $37,882 | $35,296 | $35,565 | $41,843 | $43,642 | $39,780 | $41,859 | $39,843 | $49,823 | $42,303 | $43,203 |
| Royalties | $25,000 | $25,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 |
| Rental Income - North Carolina | $0 | $25,000 | $0 | $0 | $0 | $25,000 | $0 | $0 | $0 | $0 | $25,000 | $0 | $0 |
| DIP Financing | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $12,500 | $0 | $0 | $0 |
| | | | | | | | | | | | | | |
| **Total** | $550,449 | $603,625 | $516,133 | $481,500 | $485,125 | $594,885 | $594,164 | $542,035 | $570,082 | $589,131 | $622,359 | $571,088 | $650,746 |
| | | | | | | | | | | | | | |
| **Cash Outflows** | | | | | | | | | | | | | |
| Payroll | $100,000 | $196,769 | $100,000 | $193,962 | $262,115 | $258,000 | $100,000 | $258,000 | $100,000 | $258,000 | $100,000 | $258,000 | $100,000 |
| Mgmt Support Allocation | $0 | $0 | $0 | $162,625 | $0 | $0 | $0 | $0 | $2,500 | $0 | $0 | $0 | $100,000 |
| Sales Tax | $0 | $31,542 | $0 | $0 | $0 | $0 | $0 | $0 | $149,732 | $31,636 | $0 | $0 | $167,123 |
| Credit Card Fees | $0 | $13,425 | $0 | $0 | $0 | $28,375 | $0 | $0 | $0 | $64,996 | $0 | $0 | $0 |
| Insurance | $51,561 | $13,425 | $0 | $0 | $51,561 | $13,625 | $0 | $0 | $0 | $0 | $369,273 | $0 | $0 |
| Rent - Retail Stores | $0 | $369,273 | $0 | $0 | $0 | $389,273 | $0 | $0 | $0 | $0 | $87,486 | $0 | $0 |
| Rent - HQ | $0 | $87,486 | $0 | $0 | $0 | $87,486 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Rent - Allocation | $189,444 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Vendors | $4,167 | $199,879 | $184,142 | $171,315 | $217,113 | $256,354 | $267,594 | $243,461 | $256,445 | $285,941 | $296,803 | $285,665 | $326,232 |
| Graphic Design | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 |
| Equipment & Vehicle Lease | $1,000 | $4,286 | $4,286 | $2,641 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,288 | $2,641 | $0 |
| Repairs and Replacement | $12,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| Freight | $20,000 | $12,000 | $12,000 | $12,000 | $11,250 | $11,250 | $11,250 | $11,250 | $11,100 | $11,100 | $0 | $11,000 | $11,000 |
| Mortgage - North Carolina | $0 | $20,000 | $0 | $0 | $20,000 | $20,000 | $0 | $0 | $20,000 | $20,000 | $20,000 | $0 | $0 |
| Bank Fees | $10,595 | $10,595 | $0 | $0 | $14,750 | $14,750 | $0 | $0 | $500 | $500 | $14,250 | $0 | $0 |
| Utilities - Store | $0 | $0 | $2,640 | $10,595 | $10,595 | $10,595 | $2,640 | $10,595 | $0 | $10,595 | $0 | $10,595 | $0 |
| Music - Store | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $2,340 | $0 | $0 |
| Supplies | $3,250 | $3,250 | $0 | $3,350 | $0 | $3,050 | $0 | $3,050 | $0 | $3,050 | $3,050 | $3,050 | $0 |
| IT - Phones and Internet | $8,593 | $8,593 | $15,664 | $8,593 | $0 | $8,593 | $0 | $8,218 | $0 | $8,218 | $8,218 | $8,218 | $0 |
| SW - POS | $15,664 | $0 | $2,022 | $0 | $0 | $0 | $15,664 | $15,664 | $0 | $0 | $375 | $16,664 | $0 |
| SW - Inventory Mgmt | $2,022 | $7,000 | $7,000 | $2,000 | $4,000 | $1,150 | $1,150 | $1,150 | $0 | $0 | $1,150 | $0 | $0 |
| Travel | $7,000 | $0 | $0 | $45,000 | $15,000 | $4,000 | $4,000 | $30,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 |
| Professional Fees - Debtors Financial Advisor | $0 | $0 | $0 | $60,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $4,000 | $15,000 | $15,000 | $30,000 |
| Professional Fees - Debtors Counsel | $0 | $0 | $0 | $45,000 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $15,000 |
| Professional Fees - OCC Counsel | $0 | $0 | $0 | $22,500 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $7,500 | $7,500 | $7,500 | $7,500 |
| Professional Fees - DIP Lender Counsel | $0 | $0 | $0 | $0 | $0 | $27,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $0 |
| Professional Fees - Conflicts Counsel | $0 | $0 | $0 | $15,000 | $0 | $0 | $0 | $0 | $0 | $5,000 | $5,000 | $5,000 | $5,000 |
| Professional Fees - OCC Financial Advisor | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Professional Fees - Other | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Professional Fees - Tax | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Credit Cash | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Interest | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total** | $365,172 | $981,679 | $332,919 | $714,647 | $578,957 | $1,148,818 | $422,437 | $620,706 | $566,444 | $730,693 | $928,940 | $631,500 | $671,022 |
| | | | | | | | | | | | | | |
| Beginning Balance | $695,716 | $880,993 | $502,939 | $866,154 | $463,007 | $399,175 | ($195,757) | ($24,030) | ($102,700) | ($89,062) | ($230,625) | ($536,606) | ($597,018) |
| Cash Gained/(Used) | 185,277 | (378,054) | 183,215 | (233,147) | (55,829) | (553,932) | 171,727 | (78,670) | 13,638 | (141,562) | (305,581) | (60,412) | (20,276) |
| Ending Balance | $880,993 | $502,939 | $866,154 | $453,007 | $399,175 | ($195,757) | ($24,030) | ($102,700) | ($89,062) | ($230,625) | ($536,606) | ($597,018) | ($617,293) |

No Fear Retail Stores, Inc.
Cash Flow Analysis
as of 03/28/2011

| Week | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3/28/2011 | 4/4/2011 | 4/11/2011 | 4/18/2011 | 4/25/2011 | 5/2/2011 | 5/9/2011 | 5/16/2011 | 5/23/2011 | 5/30/2011 | 6/6/2011 | 6/13/2011 | 6/20/2011 |
| **Cash Inflows** | | | | | | | | | | | | | |
| Retail Sales | $486,527 | $512,616 | $473,272 | $441,204 | $444,560 | $523,042 | $545,522 | $497,255 | $523,224 | $523,288 | $549,036 | $528,785 | $602,543 |
| Sales Tax | 38,922 | 41,009 | 37,862 | 35,296 | 35,565 | 41,843 | 43,642 | 39,780 | 41,868 | 42,343 | 43,823 | 42,303 | 48,203 |
| Wholesale Sales | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Royalties | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Rental Income – North Carolina | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 12,500 | 0 | 0 | 0 |
| DIP Financing | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total** | **$525,449** | **$553,625** | **$511,133** | **$476,500** | **$480,125** | **$584,985** | **$599,164** | **$537,035** | **$565,082** | **$584,131** | **$592,359** | **$571,088** | **$650,746** |
| **Cash Outflows** | | | | | | | | | | | | | |
| Payroll | $100,000 | $185,982 | $100,000 | $185,982 | $262,115 | $250,000 | $250,000 | $250,000 | $250,000 | $250,000 | $100,000 | $250,000 | $100,000 |
| Mgmt Support Allocation | ($30,000) | $0 | 0 | 0 | ($82,500) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Sales Tax | 0 | 0 | 0 | 162,625 | 0 | 0 | 0 | 0 | 149,732 | 0 | 0 | 0 | 167,123 |
| Credit Card Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Insurance | 51,561 | 30,492 | 0 | 0 | 0 | 28,075 | 0 | 0 | 0 | 31,336 | 0 | 0 | 0 |
| Rent – Retail Stores | 0 | 12,425 | 0 | 51,581 | 0 | 12,425 | 0 | 0 | 0 | 63,986 | 0 | 0 | 0 |
| Rent – HQ | 0 | 389,273 | 0 | 0 | 389,273 | 389,273 | 0 | 0 | 0 | 0 | 369,273 | 0 | 0 |
| Rent – Allocation | 0 | 87,486 | 0 | 0 | 87,486 | 87,486 | 0 | 0 | 0 | 0 | 87,486 | 0 | 0 |
| Vendors | 189,444 | (6,000) | 184,142 | 171,315 | (6,000) | (6,000) | 0 | 0 | 0 | 0 | (6,300) | 0 | 0 |
| Graphic Design | 4,167 | 189,879 | 4,167 | 171,315 | 217,113 | 256,354 | 267,594 | 243,461 | 255,445 | 285,941 | 296,803 | 285,685 | 336,232 |
| Equipment & Vehicle Leases | 1,000 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 |
| Repairs and Replacement | 0 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Freight | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 |
| Mortgage – North Carolina | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Bank Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Utilities – Store | 0 | 14,000 | 0 | 0 | 0 | 14,000 | 0 | 0 | 0 | 14,000 | 14,000 | 0 | 0 |
| Music – Store | 0 | 9,485 | 0 | 9,485 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Supplies | 0 | 9,485 | 0 | 9,485 | 9,485 | 9,485 | 9,485 | 9,485 | 9,485 | 9,485 | 9,485 | 9,485 | 9,485 |
| IT – Phones and Internet | 0 | 0 | 2,640 | 0 | 0 | 0 | 2,640 | 0 | 0 | 0 | 2,640 | 0 | 0 |
| SW – POS | 3,000 | 3,000 | 0 | 3,000 | 0 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| SW – Inventory Mgmt | 0 | 8,218 | 15,664 | 8,218 | 0 | 8,218 | 8,218 | 8,218 | 8,218 | 8,218 | 8,218 | 8,218 | 8,218 |
| Travel | 2,000 | 2,000 | 2,000 | 2,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 15,664 | 15,664 |
| Professional Fees – Debtors Financial Advisor | 0 | 0 | 1,010 | 2,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 1,010 | 4,000 | 0 |
| Professional Fees – Debtors Counsel | 0 | 0 | 0 | 60,000 | 0 | 0 | 0 | 30,000 | 0 | 0 | 4,000 | 0 | 30,000 |
| Professional Fees – OCC Counsel | 0 | 0 | 0 | 45,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 30,000 |
| Professional Fees – DIP Lender Counsel | 0 | 0 | 0 | 22,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Professional Fees – Conflicts Counsel | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees – OCC Financial Advisor | 0 | 0 | 0 | 15,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Professional Fees – Other | 0 | 0 | 0 | 0 | 0 | 5,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees – Tax | 0 | 0 | 0 | 0 | 0 | 7,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Credit Cash | 0 | 0 | 0 | (15,000) | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Interest | 0 | 0 | 1,010 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total** | **$329,172** | **$932,387** | **$321,623** | **$701,271** | **$575,567** | **$1,091,983** | **$417,991** | **$608,505** | **$553,864** | **$699,633** | **$917,679** | **$619,669** | **$671,022** |
| **Beginning Balance** | $598,401 | $794,678 | $415,916 | $605,427 | $380,656 | $284,824 | $417,901 | $605,505 | $553,844 | $699,633 | $917,879 | $619,669 | $671,022 |
| **Cash Gained/(Used)** | 196,277 | (378,762) | 189,511 | (224,771) | (95,852) | (242,273) | (71,010) | (142,479) | (131,241) | (115,502) | (324,920) | (48,611) | (20,276) |
| **Ending Balance** | $794,678 | $415,916 | $605,427 | $380,656 | $284,824 | $417,901 | $605,505 | $553,844 | $699,633 | $917,879 | $619,669 | $671,022 | $650,746 |

**No Fear MX, Inc.**
Cash Flow Analysis
as of 03/28/11

| Week | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3/28/2011 | 4/4/2011 | 4/11/2011 | 4/18/2011 | 4/25/2011 | 5/2/2011 | 5/9/2011 | 5/16/2011 | 5/23/2011 | 5/30/2011 | 6/6/2011 | 6/13/2011 | 6/20/2011 |
| **Cash Inflows** | | | | | | | | | | | | | |
| Retail Sales | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Sales Tax | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Wholesale Sales - AR | 25,000 | 25,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 0 | 0 |
| Royalties | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Rental Income - North Carolina | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| DIP Financing | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total** | $25,000 | $25,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $0 | $0 |
| **Cash Outflows** | | | | | | | | | | | | | |
| Payroll | $25,000 | $10,807 | $0 | $8,000 | $0 | $8,000 | $0 | $8,000 | $0 | $8,000 | $0 | $8,000 | $0 |
| Mgmt Support Allocation | $25,000 | $0 | $0 | $0 | $2,500 | $0 | $0 | $2,500 | $2,500 | $0 | $0 | $0 | $0 |
| Sales Tax | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Credit Card Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Insurance | 0 | 750 | 0 | 0 | 0 | 300 | 0 | 0 | 0 | 300 | 0 | 0 | 0 |
| Rent - Retail Stores | 0 | 1,000 | 0 | 0 | 0 | 1,000 | 0 | 0 | 0 | 1,000 | 0 | 0 | 0 |
| Rent - HQ | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Rent - Allocation | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Vendors | 0 | 6,000 | 0 | 0 | 0 | 6,000 | 0 | 0 | 0 | 0 | 6,000 | 0 | 0 |
| Graphic Design | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Equipment & Vehicle Leases | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Repairs and Replacement | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Freight | 1,000 | 1,000 | 1,000 | 1,000 | 500 | 250 | 250 | 250 | 100 | 100 | 250 | 0 | 0 |
| Mortgage - North Carolina | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Bank Fees | 0 | 2,500 | 0 | 0 | 0 | 250 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Utilities | 0 | 1,110 | 0 | 1,110 | 0 | 1,110 | 0 | 1,110 | 0 | 1,110 | 0 | 1,110 | 0 |
| Music | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Supplies | 0 | 250 | 250 | 250 | 0 | 50 | 0 | 50 | 50 | 50 | 250 | 150 | 0 |
| IT - Phone and Internet | 0 | 375 | 375 | 375 | 0 | 375 | 0 | 0 | 0 | 0 | 375 | 0 | 0 |
| SW - POS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SW - Inventory Mgmt | 0 | 0 | 1,010 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Travel | 5,000 | 5,000 | 5,000 | 0 | 0 | 0 | 0 | 150 | 0 | 0 | 150 | 0 | 0 |
| Professional Fees - Debtors Financial Advisor | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - Debtors Counsel | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - DCC Counsel | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - DIP Lender Counsel | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - Conflicts Counsel | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - OCC Financial Advisor | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - Other | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - Tax | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Credit Cash | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Interest | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total** | $31,000 | $28,792 | $7,010 | $10,735 | $3,000 | $17,335 | $250 | $9,560 | $2,600 | $10,560 | $6,775 | $9,160 | $0 |
| **Beginning Balance** | $45,905 | $39,905 | $36,113 | $34,103 | $28,368 | $30,368 | $18,033 | $22,783 | $18,223 | $20,623 | $15,063 | $13,288 | $4,128 |
| **Cash Gained/(Used)** | (6,000) | (3,792) | (2,010) | (5,735) | 2,000 | (12,335) | 4,750 | (4,560) | 2,400 | (5,560) | (1,775) | (9,160) | 0 |
| **Ending Balance** | $39,905 | $36,113 | $34,103 | $28,368 | $30,368 | $18,033 | $22,783 | $18,223 | $20,623 | $15,063 | $13,288 | $4,128 | $4,128 |

**Sino Holdings, Inc.**
Cash Flow Analysis
as of 03/28/11

| Week | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3/28/2011 | 4/4/2011 | 4/11/2011 | 4/18/2011 | 4/25/2011 | 5/2/2011 | 5/9/2011 | 5/16/2011 | 5/23/2011 | 5/30/2011 | 6/6/2011 | 6/13/2011 | 6/20/2011 |
| **Cash Inflows** | | | | | | | | | | | | | |
| Retail Sales | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Sales Tax | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Wholesale Sales | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Royalties | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Rental Income - North Carolina | 0 | 0 | 0 | 0 | 0 | 25,000 | 0 | 0 | 0 | 0 | 25,000 | 0 | 0 |
| DIP Financing | 0 | 25,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total** | $0 | $25,000 | $0 | $0 | $0 | $25,000 | $0 | $0 | $0 | $0 | $25,000 | $0 | $0 |
| **Cash Outflows** | | | | | | | | | | | | | |
| Payroll | $5,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Mgmt Support Allocation | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Sales Tax | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Credit Card Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Insurance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Rent - Retail Stores | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Rent - HQ | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Rent - Allocation | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Vendors | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Graphic Design | 0 | 0 | 0 | 2,641 | 0 | 0 | 0 | 2,641 | 0 | 0 | 0 | 2,641 | 0 |
| Equipment & Vehicle Leases | 0 | 0 | 4,286 | 0 | 0 | 0 | 4,286 | 0 | 0 | 0 | 4,286 | 0 | 0 |
| Repairs and Replacement | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Freight | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Mortgage - North Carolina | 0 | 20,000 | 0 | 0 | 0 | 20,000 | 0 | 0 | 0 | 20,000 | 0 | 0 | 0 |
| Bank Fees | 0 | 500 | 0 | 0 | 0 | 500 | 0 | 0 | 0 | 500 | 0 | 0 | 0 |
| Utilities - Store | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Music - Store | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Supplies | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| IT Purchase and Internet | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SW - POS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SW - Inventory Mgmt | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Travel | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - Debtors Financial Advisor | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - Debtor Counsel | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - OCC Counsel | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - DIP Lender Counsel | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - Conflicts Counsel | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - OCC Financial Advisor | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - Other | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - Tax | 0 | 0 | 0 | 0 | 0 | 20,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Credit Cash | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Interest | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total** | $5,000 | $20,500 | $4,286 | $2,641 | $0 | $40,500 | $4,286 | $2,641 | $0 | $20,500 | $4,286 | $2,641 | $0 |
| | | | | | | | | | | | | | |
| Beginning Balance | $51,410 | $46,410 | $50,910 | $46,624 | $43,983 | $43,983 | $28,483 | $24,197 | $21,556 | $21,556 | $1,056 | $21,770 | $19,129 |
| Cash Gained/(Used) | (5,000) | 4,500 | (4,286) | (2,641) | 0 | (15,500) | (4,286) | (2,641) | 0 | (20,500) | 20,714 | (2,641) | 0 |
| Ending Balance | $46,410 | $50,910 | $46,624 | $43,983 | $43,983 | $28,483 | $24,197 | $21,556 | $21,556 | $1,056 | $21,770 | $19,129 | $19,129 |

EXHIBIT "2"

**Consolidated - Sims Holdings, Inc., No Fear Retail Stores, Inc., No Fear MX, Inc.**
**Cash Flow Analysis**
**as of 03/28/11**

| Week | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3/28/2011 | 4/4/2011 | 4/11/2011 | 4/18/2011 | 4/25/2011 | 5/2/2011 | 5/9/2011 | 5/16/2011 | 5/23/2011 | 5/30/2011 | 6/6/2011 | 6/13/2011 | 6/20/2011 | 6/27/2011 |
| **Cash Inflows** | | | | | | | | | | | | | | |
| Retail Sales | $466,527 | $412,816 | $473,272 | $441,204 | $444,590 | $323,042 | $572,798 | $572,118 | $575,546 | $582,217 | $603,940 | $581,964 | $692,797 | $546,732 |
| Wholesale Sales | $38,922 | $41,028 | $37,862 | $37,862 | $38,965 | $45,843 | $46,504 | $41,769 | $46,044 | $46,577 | $46,315 | $46,533 | $33,024 | $43,739 |
| Sales Tax | $37,862 | $35,295 | $35,295 | $35,295 | $35,565 | $45,843 | $45,304 | $46,040 | $46,644 | $46,877 | $45,577 | $46,513 | $25,000 | $25,000 |
| Royalties | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $12,500 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 |
| Rental Income - North Carolina | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| DIP Financing | $0 | $0 | $0 | $0 | $3,000,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total** | $550,449 | $603,626 | $516,133 | $481,500 | $3,594,885 | $623,622 | $568,867 | $628,590 | $646,294 | $702,255 | $653,197 | $740,821 | $815,470 | |
| **Cash Outflows** | | | | | | | | | | | | | | |
| Payroll | $169,444 | $199,679 | $184,142 | $171,315 | $217,113 | $226,354 | $231,232 | $203,680 | $225,052 | $227,720 | $227,498 | $299,892 | $213,528 | |
| Mgmt Support Allocation | $100,000 | $196,769 | $100,000 | $193,892 | $262,115 | | $100,000 | $258,000 | $100,000 | $256,000 | | $258,000 | $100,000 | $256,000 |
| Sales Tax | | | | | | $258,000 | | | $2,500 | | $100,000 | | | $2,500 |
| Credit Card Fees | $51,561 | $31,242 | | $162,825 | | | | | $149,732 | | $149,732 | | $175,480 | |
| Insurance | $13,425 | $13,425 | | | $31,561 | $28,375 | | | $33,303 | $33,303 | $33,303 | $64,986 | | |
| Rent - Retail Stores | | $369,273 | | | | $369,273 | | | | $64,986 | | $369,273 | $64,986 | |
| Rent - HQ | | $87,496 | | | | $87,496 | | | | $87,496 | | $87,496 | $3,900 | |
| Rent - Allocation | | | | | | | | | | | | | | $25,000 |
| Vendors | $199,444 | $199,679 | $164,142 | $171,315 | $217,354 | $531,232 | $203,680 | $226,052 | $227,720 | $227,498 | $259,892 | $213,528 | |
| Graphic Design | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 |
| Equipment & Vehicle Lease | $2,641 | $4,286 | $2,641 | $2,641 | $2,641 | $4,286 | $2,641 | $4,167 | $4,167 | $4,286 | $4,286 | $4,286 | $4,167 |
| Repairs and Replacement | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| Freight | $12,000 | $12,000 | $12,000 | $12,000 | $11,500 | $11,250 | $12,000 | $12,000 | $12,000 | $12,000 | $12,000 | $12,000 | $11,000 |
| Mortgage - North Carolina | $20,000 | $20,000 | | | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $11,000 |
| Bank Fees | $17,000 | | | | | $48,000 | | | | $14,250 | | $14,250 | |
| Utilities - Store | $500 | | | | | $500 | | $500 | | $500 | | $500 | |
| Music - Store | $10,595 | $10,595 | $10,595 | $10,595 | $10,595 | $10,595 | $10,595 | $10,595 | $10,595 | $10,595 | $10,595 | $10,595 | $10,595 |
| Supplies | | | $2,640 | | | | $2,640 | | | $2,640 | | $2,640 | |
| IT - Phones and Internet | $3,250 | $3,250 | $3,250 | $3,250 | $3,050 | $3,050 | $3,050 | $3,050 | $3,050 | $3,050 | $3,050 | $3,050 | $3,050 |
| SW - POS | $8,593 | $8,593 | $8,593 | $8,593 | | $8,218 | | $8,218 | $375 | $8,218 | $375 | $8,218 | |
| SW - Inventory Mgmt | | $15,664 | | | | $1,160 | | $1,160 | $15,664 | $15,664 | | $15,664 | |
| Travel | $7,000 | $7,000 | $7,000 | $2,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 |
| Professional Fees - Debtors Financial Advisor | | | | $7,000 | | | | | | | | | |
| Professional Fees - Debtors Counsel | | | | $60,000 | | | | | | | | | |
| Professional Fees - OCC Counsel | | | | $45,000 | $15,000 | $15,000 | $35,000 | | | | $30,000 | $30,000 | |
| Professional Fees - DIP Lender Counsel | | | $2,020 | $22,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $15,000 |
| Professional Fees - Conflicts Counsel | | | | | $225,000 | | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $7,500 |
| Professional Fees - IP Counsel | | | $15,000 | $15,000 | $27,000 | | $5,000 | | $5,000 | $5,000 | $5,000 | $5,000 | $15,000 |
| Professional Fees - CCC Financial Advisor | | | | | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 |
| Professional Fees - Tax | | | | $25,000 | $25,000 | | | | | | | | |
| Interest | | | | $64,983 | | $21,923 | $21,923 | $21,923 | $21,923 | $21,923 | $21,923 | $21,923 | $21,923 |
| Credit Cash | | | | | | | | | | | | | |
| **Total** | $365,172 | $981,679 | $332,919 | $714,647 | $578,957 | $2,454,460 | $707,968 | $603,598 | $547,874 | $556,082 | $591,469 | $598,257 | $636,022 | $630,065 |
| Beginning Balance | $695,716 | $880,993 | $880,993 | $698,154 | $453,007 | $359,175 | $793,005 | $793,005 | $848,595 | $847,874 | $880,963 | $596,257 | $636,022 | $530,565 |
| Cash Gained/(Used) | 185,277 | (378,054) | 183,215 | (233,147) | (93,823) | 1,180,405 | (84,276) | (34,711) | 78,716 | (59,507) | 189,214 | 104,799 | (115,552) | |
| Ending Balance | $880,993 | $502,939 | $698,154 | $453,007 | $359,175 | $1,519,581 | $1,435,204 | $1,400,493 | $1,479,210 | $1,428,642 | $1,479,210 | $1,239,428 | $1,296,368 | $1,401,167 |

Consolidated - Simo Holdings, Inc., No Fear Retail Stores, Inc., No Fe...
Cash Flow Analysis
as of 03/28/11

| Week | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 |
|---|---|---|---|---|---|---|---|---|---|
| | 7/4/2011 | 7/11/2011 | 7/18/2011 | 7/25/2011 | 8/1/2011 | 8/8/2011 | 8/15/2011 | 8/22/2011 | 8/29/2011 |
| **Cash Inflows** | | | | | | | | | |
| Retail Sales | $613,470 | $535,763 | $611,635 | $634,610 | $679,191 | $840,062 | $844,997 | $725,673 | $557,865 |
| Sales Tax | $49,078 | $42,861 | $50,769 | $50,769 | $54,335 | $67,205 | $67,600 | $58,046 | $44,613 |
| Wholesale Sales | $25,000 | $15,000 | $15,000 | $15,000 | $10,000 | $5,000 | $5,000 | $5,000 | $5,000 |
| Royalties | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Rental Income - North Carolina | $25,000 | $0 | $0 | $25,000 | $25,000 | $25,000 | $0 | $0 | $25,500 |
| DIP Financing | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total** | $712,548 | $593,624 | $675,596 | $700,379 | $768,526 | $938,267 | $917,597 | $788,619 | $627,778 |
| | | | | | | | | | |
| **Cash Outflows** | | | | | | | | | |
| Payroll | $100,000 | $258,000 | $100,000 | $258,000 | $100,000 | $258,000 | $100,000 | $258,000 | $100,000 |
| Mgmt Support Allocation | $0 | $0 | $0 | $2,500 | $0 | $0 | $0 | $0 | $2,500 |
| Sales Tax | $0 | $0 | $238,198 | $0 | $0 | $0 | $0 | $191,638 | $0 |
| Credit Card Fees | $0 | $0 | $0 | $0 | $38,232 | $0 | $0 | $0 | $46,647 |
| Insurance | $44,660 | $0 | $0 | $65,986 | $0 | $0 | $0 | $0 | $64,986 |
| Mortgage - North Carolina | $0 | $0 | $0 | $0 | $1,000 | $0 | $0 | $0 | $0 |
| Rent - Retail Stores | $369,273 | $0 | $0 | $0 | $369,273 | $0 | $0 | $0 | $369,273 |
| Rent - HQ | $97,498 | $0 | $0 | $92,735 | $92,735 | $0 | $0 | $0 | $92,735 |
| Rent - Allocation | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Vendors | $270,896 | $235,528 | $270,069 | $290,407 | $300,469 | $372,865 | $290,582 | $248,784 | $590,016 |
| Graphic Design | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 | $4,167 |
| Equipment & Vehicle Lease | $0 | $4,288 | $2,641 | $0 | $4,288 | $0 | $2,641 | $0 | $0 |
| Repairs and Replacement | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| Freight | $11,100 | $11,100 | $11,100 | $11,100 | $11,100 | $11,100 | $11,100 | $11,100 | $11,100 |
| Bank Fees | $20,000 | $0 | $0 | $0 | $20,000 | $0 | $0 | $0 | $0 |
| Utilities - Store | $14,750 | $10,595 | $10,595 | $14,750 | $14,750 | $10,595 | $10,595 | $10,595 | $0 |
| Music - Store | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Supplies | $2,640 | $8,218 | $8,218 | $3,050 | $2,640 | $2,640 | $2,640 | $2,640 | $2,640 |
| IT - Phones and Internet | $375 | $3,050 | $3,050 | $3,050 | $3,050 | $3,050 | $3,050 | $3,050 | $375 |
| SW - POS | $0 | $375 | $375 | $8,218 | $375 | $375 | $375 | $8,218 | $375 |
| SW - Inventory Mgmt | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Travel | $1,160 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 |
| Professional Fees - Debtors Financial Advisor | $4,000 | $15,000 | $30,000 | $15,000 | $15,000 | $30,000 | $30,000 | $4,000 | $4,000 |
| Professional Fees - Debtors Counsel | $15,000 | $0 | $15,000 | $15,000 | $15,000 | $15,000 | $30,000 | $15,000 | $15,000 |
| Professional Fees - OCC Counsel | $0 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 |
| Professional Fees - DIP Lender Counsel | $7,500 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Professional Fees - Conflicts Counsel | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Professional Fees - OCC Financial Advisor | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 |
| Professional Fees - IP Counsel | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 |
| Credit Cash | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Interest | $21,923 | $21,923 | $21,923 | $21,923 | $21,923 | $21,923 | $21,923 | $21,923 | $21,923 |
| Professional Fees - Tax | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total** | $985,929 | $605,429 | $710,588 | $696,447 | $1,102,164 | $727,860 | $508,577 | $789,975 | $1,340,022 |
| | | | | | | | | | |
| Beginning Balance | $1,385,772 | $1,112,391 | $1,100,585 | $1,065,563 | $1,069,455 | $735,857 | $946,264 | $1,355,284 | $1,353,928 |
| Cash Gained/(Used) | (273,381) | (11,806) | (35,022) | 3,892 | (333,638) | 210,407 | 409,020 | (1,356) | (712,244) |
| Ending Balance | $1,112,391 | $1,100,585 | $1,065,563 | $1,069,455 | $735,857 | $946,264 | $1,355,284 | $1,353,928 | $641,684 |

**No Fear MX, Inc.**
Cash Flow Analysis
as of 03/23/2011

| Week | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3/28/2011 | 4/4/2011 | 4/11/2011 | 4/18/2011 | 4/25/2011 | 5/2/2011 | 5/9/2011 | 5/16/2011 | 5/23/2011 | 5/30/2011 | 6/6/2011 | 6/13/2011 | 6/20/2011 | 6/27/2011 |
| **Cash Inflows** | | | | | | | | | | | | | | |
| Retail Sales | | | | | | | | | | | | | | |
| Sales Tax | | | | | | | | | | | | | | |
| Wholesale Sales - AR | 25,000 | 25,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| Royalties | | | | | | 1,000 | | | | | | | | |
| Rental Income - North Carolina | | | | | | 620,000 | | | | | | | | |
| DIP Financing | | | | | | | | | | | | | | |
| **Total** | $25,000 | $25,000 | $5,000 | $5,000 | $5,000 | $626,000 | $15,000 | $5,000 | $15,000 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 |
| | | | | | | | | | | | | | | |
| **Cash Outflows** | | | | | | | | | | | | | | |
| Payroll | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Mgmt Support Allocation | $25,000 | $10,807 | | | | | | | | | | | | |
| Sales Tax | | | | | | | | | | | | | | |
| Credit Card Fees | | | | 8,000 | 2,500 | 8,000 | 8,000 | 2,500 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 |
| Insurance | | 750 | | | | 300 | 300 | | 300 | 300 | | | | 2,500 |
| Rent - Retail Stores | | 1,000 | | | | 1,000 | | | 1,000 | | | | | |
| Rent - HQ | | | | | | | | | | | | | | |
| Rent - Allocation | | | | | | | | | | | | | | |
| Vendors | | 6,000 | | | | 220,000 | | | | 12,000 | | | | |
| Graphic Design | | | | | | | | | | | | | | |
| Equipment & Vehicle Leases | | | | | | | | | | | | | | |
| Repairs and Replacement | 1,000 | 1,000 | 1,000 | 1,000 | 500 | 250 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Freight | | | | | | | | | | | | | | |
| Mortgage - North Carolina | | | | | | | | | | | | | | |
| Bank Fees | | | | | 500 | 250 | 250 | 250 | | 250 | | | | |
| Utilities | | 2,500 | | 1,110 | | 1,110 | 1,110 | | 1,110 | | 1,110 | 1,110 | | 1,110 |
| Music | | 1,110 | | 1,110 | | | | | | | | | | |
| Supplies | | 250 | | 250 | 250 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | | |
| IT - Phones and Internet | | 375 | | 375 | 375 | 375 | | | 375 | 375 | | | | 1,110 |
| SW - POS | | | 1,010 | | | | | | | | | | | |
| SW - Inventory Mgmt | | | | | | | | | | | | | | |
| Travel | 5,000 | 5,000 | 5,000 | | | | 150 | | | 150 | | | | 100 |
| Professional Fees - Debtors Financial Advisor | | | | | | | | | | | | | | |
| Professional Fees - Debtors Counsel | | | | | | | | | | | | | | |
| Professional Fees - OCC Counsel | | | | | | | | | | | | | | |
| Professional Fees - DIP Lender Counsel | | | | | | | | | | | | | | |
| Professional Fees - Conflict Counsel | | | | | | | | | | | | | | |
| Professional Fees - OCC Financial Advisor | | | | | | | | | | | | | | |
| Professional Fees - IP Counsel | | | | | | | | | | | | | | |
| Professional Fees - Tax | | | | | | | | | | | | | | |
| Credit Cash | | | | | | | | | | | | | | |
| Interest | | | | | | | | | | | | | | |
| **Total** | $31,000 | $28,792 | $7,010 | $10,735 | $3,000 | $232,335 | $10,250 | $10,310 | $13,500 | $31,460 | $13,775 | $10,160 | $1,000 | $13,060 |
| | | | | | | | | | | | | | | |
| Beginning Balance | $45,905 | $39,905 | $36,113 | $34,103 | $28,368 | $30,368 | $424,033 | $428,783 | $423,473 | $424,973 | $418,513 | $429,738 | $444,578 | $468,578 |
| Cash Gained/(Used) | (6,000) | (3,792) | (2,010) | (5,735) | 2,000 | 393,665 | 4,750 | (5,310) | 1,500 | (6,460) | 11,225 | 14,840 | 24,000 | 11,940 |
| Ending Balance | $39,905 | $36,113 | $34,103 | $28,368 | $30,368 | $424,033 | $428,783 | $423,473 | $424,973 | $418,513 | $429,738 | $444,578 | $468,578 | $480,518 |

**No Fear MX, Inc.**
Cash Flow Analysis
as of 03/29/11

| Week | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 |
|---|---|---|---|---|---|---|---|---|---|
| | 7/4/2011 | 7/11/2011 | 7/18/2011 | 7/25/2011 | 8/1/2011 | 8/8/2011 | 8/15/2011 | 8/22/2011 | 8/29/2011 |
| **Cash Inflows** | | | | | | | | | |
| Retail Sales | 25,000 | 15,000 | 15,000 | 15,000 | 10,000 | 5,000 | 5,000 | 5,000 | 0 |
| Sales Tax | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Wholesale Sales - AR | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Royalties | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Rental Income - North Carolina | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| DIP Financing | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total** | $25,000 | $15,000 | $15,000 | $15,000 | $10,000 | $5,000 | $5,000 | $5,000 | $0 |
| **Cash Outflows** | | | | | | | | | |
| Payroll | $0 | $8,000 | $8,000 | $8,000 | $0 | $8,000 | $8,000 | $8,000 | $0 |
| Mgmt Support Allocation | $0 | $0 | $0 | $2,500 | $0 | $0 | $0 | $0 | $2,500 |
| Sales Tax | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Credit Card Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Insurance | | | | | 300 | | | | 300 |
| Rent - Retail Stores | | | | | 1,000 | | | | 1,000 |
| Rent - HQ | | | | | | | | | |
| Rent - Allocation | | | | | | | | | |
| Vendors | 6,000 | | | | 6,000 | | | | 6,000 |
| Graphic Design | | | | | | | | | |
| Equipment & Vehicle Leases | | | | | | | | | |
| Repairs and Replacement | | | | | | | | | |
| Freight | | | | | | | | | |
| Mortgage - North Carolina | | | | | | | | | 400,000 |
| Bank Fees | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Utilities | 250 | | | | 250 | | | | |
| Supplies | | 50 | | 50 | | 50 | | 50 | 50 |
| Music | | | | | | | | | |
| IT - Phones and Internet | | 1,110 | | 1,110 | | 1,110 | | 1,110 | 1,110 |
| SW - POS | 375 | 375 | | 375 | 375 | | | | 375 |
| SW - Inventory Mgmt | | | | | | | | | |
| Travel | 150 | | | | | 150 | | | 150 |
| Professional Fees - Debtors Financial Advisor | | | | | | | | | |
| Professional Fees - Debtors Counsel | | | | | | | | | |
| Professional Fees - OCC Counsel | | | | | | | | | |
| Professional Fees - DIP Lender Counsel | | | | | | | | | |
| Professional Fees - Conflict Counsel | | | | | | | | | |
| Professional Fees - OCC Financial Advisor | | | | | | | | | |
| Professional Fees - IP Counsel | | | | | | | | | |
| Professional Fees - Tax | | | | | | | | | |
| Credit Cash | | | | | | | | | |
| Internet | | | | | | | | | |
| **Total** | $6,875 | $9,260 | $100 | $11,760 | $8,025 | $9,410 | $100 | $9,260 | $410,425 |
| Beginning Balance | $480,518 | $498,643 | $504,383 | $519,283 | $522,523 | $524,498 | $520,088 | $524,988 | $520,728 |
| Cash Gain/(Used) | 18,125 | 5,740 | 14,900 | 3,240 | 1,975 | (4,410) | 4,900 | (4,260) | (410,425) |
| Ending Balance | $498,643 | $504,383 | $519,283 | $522,523 | $524,498 | $520,088 | $524,988 | $520,728 | $110,303 |

**Simo Holdings, Inc.**
Cash Flow Analysis
as of 03/28/11

| Week | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | 3/28/2011 | 4/4/2011 | 4/11/2011 | 4/18/2011 | 4/25/2011 | 5/2/2011 | 5/9/2011 | 5/16/2011 | 5/23/2011 | 5/30/2011 | 6/6/2011 | 6/13/2011 | 6/20/2011 | 6/27/2011 |
| **Cash Inflows** | | | | | | | | | | | | | | |
| Retail Sales | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Sales Tax | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Wholesale Sales | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Royalties | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Rental Income - North Carolina | 0 | 25,000 | 0 | 0 | 0 | 25,000 | 0 | 0 | 0 | 0 | 25,000 | 0 | 0 | 0 |
| DIP Financing | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total** | $0 | $25,000 | $0 | $0 | $0 | $25,000 | $0 | $0 | $0 | $0 | $25,000 | $0 | $0 | $0 |
| **Cash Outflows** | | | | | | | | | | | | | | |
| Payroll | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Mgmt Support Allocation | $5,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Sales Tax | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Credit Card Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Insurance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Rent - Retail Stores | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Rent - HQ | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Rent - Allocation | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Vendors | 0 | 20,000 | 0 | 0 | 0 | 20,000 | 0 | 0 | 0 | 20,000 | 0 | 0 | 0 | 0 |
| Graphic Design | 0 | 0 | 0 | 2,641 | 0 | 0 | 0 | 2,641 | 0 | 0 | 0 | 2,641 | 0 | 0 |
| Equipment & Vehicle Leases | 0 | 0 | 4,286 | 0 | 0 | 4,286 | 4,286 | 0 | 0 | 0 | 4,286 | 0 | 0 | 0 |
| Repairs and Replacement | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Freight | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Mortgage - North Carolina | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Bank Fees | 0 | 500 | 0 | 0 | 0 | 500 | 0 | 0 | 0 | 500 | 0 | 0 | 0 | 0 |
| Utilities - Store | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Music - Store | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Supplies | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| IT - Phones and Internet | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SW - POS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SW - Inventory Mgmt | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Travel | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - Debtors Financial Advisor | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - Debtors Counsel | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - OCC Counsel | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - DIP Lender Counsel | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - Conflict Counsel | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - OCC Financial Advisor | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - IP Counsel | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees - Tax | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Credit Cash | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Interest | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total** | $5,000 | $20,500 | $4,286 | $2,641 | $0 | $40,500 | $4,286 | $2,641 | $0 | $20,500 | $4,286 | $2,641 | $0 | $0 |
| **Beginning Balance** | $51,410 | $46,410 | $50,910 | $46,624 | $43,983 | $43,983 | $28,483 | $24,197 | $21,556 | $21,556 | $1,056 | $21,770 | $19,129 | $19,129 |
| **Cash Gained/(Used)** | (5,000) | 4,500 | (4,286) | (2,641) | 0 | (15,500) | (4,286) | (2,641) | 0 | (20,500) | 20,714 | (2,641) | 0 | 0 |
| **Ending Balance** | $46,410 | $50,910 | $46,624 | $43,983 | $43,983 | $28,483 | $24,197 | $21,556 | $21,556 | $1,056 | $21,770 | $19,129 | $19,129 | $19,129 |

**Simo Holdings, Inc.**
Cash Flow Analysis
as of 03/28/11

| | Week | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | 7/4/2011 | 7/11/2011 | 7/18/2011 | 7/25/2011 | 8/1/2011 | 8/8/2011 | 8/15/2011 | 8/22/2011 | 8/29/2011 |
| **Cash Inflows** | | | | | | | | | | |
| Retail Sales | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Sales Tax | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Wholesale Sales | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Royalties | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Rental Income - North Carolina | | 25,000 | 0 | 0 | 0 | 25,000 | 0 | 0 | 0 | 3,000 |
| DIP Financing | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total** | | $25,000 | $0 | $0 | $0 | $25,000 | $0 | $0 | $0 | $3,000 |
| **Cash Outflows** | | | | | | | | | | |
| Payroll | | 20,000 | | | | 20,000 | | | | |
| Mgmt Support Allocation | | | | | | | | | | |
| Sales Tax | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Credit Card Fees | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Insurance | | | | | | | | | | |
| Rent - Retail Stores | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Rent - HQ | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Rent - Allocation | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Vendors | | | | | | | | | | |
| Graphic Design | | | | | | | | | | |
| Equipment & Vehicle Leases | | | 4,286 | | | | 4,286 | | | |
| Repairs and Replacement | | | | | | | | | | |
| Freight | | | | | | | | | | |
| Mortgage - North Carolina | | | | 2,641 | | | | 2,641 | | |
| Bank Fees | | 500 | | | | 500 | | | | |
| Utilities - Store | | | | | | | | | | |
| Supplies | | | | | | | | | | |
| Music - Store | | | | | | | | | | |
| IT - Phones and Internet | | | | | | | | | | |
| SW - POS | | | | | | | | | | |
| SW - Inventory Mgmt | | | | | | | | | | |
| Travel | | | | | | | | | | |
| Professional Fees - Debtors Financial Advisor | | | | | | | | | | |
| Professional Fees - Debtors Counsel | | | | | | | | | | |
| Professional Fees - OCC Counsel | | | | | | | | | | |
| Professional Fees - DIP Lender Counsel | | | | | | | | | | |
| Professional Fees - Conflict Counsel | | | | | | | | | | |
| Professional Fees - OCC Financial Advisor | | | | | | | | | | |
| Professional Fees - IP Counsel | | | | | | | | | | |
| Professional Fees - Tax | | | | | | | | | | |
| Credit Cash | | | | | | | | | | |
| Interest | | | | | | | | | | |
| **Total** | | $20,500 | $4,286 | $2,641 | $0 | $20,500 | $4,286 | $2,641 | $0 | $0 |
| | | | | | | | | | | |
| Beginning Balance | | $19,129 | $23,629 | $19,343 | $16,702 | $16,702 | $21,202 | $16,916 | $14,275 | $14,275 |
| Cash Gained/(Used) | | 4,500 | (4,286) | (2,641) | 0 | 4,500 | (4,286) | (2,641) | 0 | 3,000 |
| Ending Balance | | $23,629 | $19,343 | $16,702 | $16,702 | $21,202 | $16,916 | $14,275 | $14,275 | $17,275 |

**No Fear Retail Stores, Inc.**
**Cash Flow Analysis**
**as of 03/28/11**

| | Week | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 3/28/2011 | 4/4/2011 | 4/11/2011 | 4/18/2011 | 4/25/2011 | 5/2/2011 | 5/9/2011 | 5/16/2011 | 5/23/2011 | 5/30/2011 | 6/6/2011 | 6/13/2011 | 6/20/2011 | 6/27/2011 |
| Sales Growth Adjustment | | 20% | 20% | 20% | 0% | 0% | 0% | 5% | 5% | 10% | 10% | 10% | 10% | 10% | 10% |
| Sales Growth Adjustment | | | | | | | | (27,276) | (24,883) | (52,322) | (52,929) | (54,904) | (52,879) | (60,254) | (49,703) |
| **Cash Inflows** | | | | | | | | | | | | | | | |
| Retail Sales | | 486,527 | 512,616 | 473,272 | 441,204 | 444,560 | 523,042 | 572,798 | 522,118 | 575,546 | 592,717 | 603,940 | 581,664 | 662,797 | 546,732 |
| Wholesale Sales | | 38,922 | 41,009 | 37,862 | 35,296 | 35,565 | 41,843 | 45,824 | 41,769 | 46,044 | 48,577 | 48,315 | 46,533 | 53,024 | 43,739 |
| Royalties | | | | | | | | | | | | | | | |
| Rental Income - North Carolina | | | | | | | | | | | 12,500 | | | | |
| DIP Financing | | | | | | | 2,380,000 | | | | | | | | |
| **Total** | | $525,449 | $553,625 | $511,133 | $476,500 | $480,125 | $2,944,885 | $618,622 | $563,887 | $621,590 | $641,294 | $652,255 | $628,197 | $715,821 | $590,470 |
| **Cash Outflows** | | | | | | | | | | | | | | | |
| Payroll | | $185,982 | $185,982 | $185,982 | $185,982 | $262,115 | $250,000 | $250,000 | $250,000 | $250,000 | $250,000 | $250,000 | $250,000 | $250,000 | $250,000 |
| Mgmt Support Allocation | | $100,000 | | | $100,000 | | $250,000 | $100,000 | | $100,000 | | $100,000 | | $100,000 | |
| Sales Tax | | | | | | | | | | | | | | | |
| Credit Card Fees | | | | | | | | | | | | | | | |
| Insurance | | 51,561 | | | | 51,561 | | | | | | | | | |
| Rent - Retail Stores | | | 30,492 | | 182,625 | | 28,075 | | 149,732 | 32,903 | | | 175,480 | | |
| Rent - HQ | | | 12,425 | | | | 12,425 | | | | | | | | |
| Rent - Allocation | | 369,273 | 369,273 | | | | 369,273 | | | | | | | | |
| Vendors | | 87,466 | 87,466 | | | | 87,466 | | 87,466 | 87,466 | 63,986 | 87,466 | | | 63,986 |
| Graphic Design | | 189,879 | | | | | | | | | | | | | |
| Equipment & Vehicle Leases | | 188,444 | 184,142 | 171,315 | 171,315 | 217,113 | 506,304 | 200,880 | 225,052 | 227,720 | 238,409 | 227,468 | 259,962 | 213,528 | 259,962 |
| Repairs and Replacement | | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 |
| Freight | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 531,232 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Mortgage - North Carolina | | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 |
| Bank Fees | | | | | | | | | | | | | | | |
| Utilities - Store | | 14,000 | 14,000 | | | 14,000 | 14,000 | 14,000 | 14,000 | | 14,000 | 9,485 | | | |
| Music - Store | | 9,485 | 9,485 | 2,640 | 9,485 | 9,485 | 9,485 | 9,485 | 9,485 | 9,485 | 9,485 | 9,485 | 9,485 | 9,485 | 9,485 |
| Supplies | | 3,000 | 3,000 | 15,664 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| IT - Phones and Internet | | 8,218 | 8,218 | 1,010 | 8,218 | 8,218 | 8,218 | 8,218 | 8,218 | 8,218 | 8,218 | 8,218 | 8,218 | 8,218 | 8,218 |
| S/W - POS | | 2,000 | 2,000 | 2,000 | 2,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 |
| S/W - Inventory Mgmt | | 2,000 | 1,010 | 1,010 | | 1,010 | | 1,010 | | 1,010 | | 1,010 | | 1,010 | |
| Travel | | | | 15,664 | | 15,664 | | 15,664 | 15,664 | | 15,664 | | 15,664 | | 15,664 |
| Professional Fees - Debtors Financial Advisor | | | | | 60,000 | 15,000 | 15,000 | | 30,000 | | 30,000 | | 30,000 | | 30,000 |
| Professional Fees - Debtors Counsel | | | | | 45,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Professional Fees - OCC Counsel | | | | | 22,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Professional Fees - DIP Lender Counsel | | | | | | | 225,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 |
| Professional Fees - Conflicts Counsel | | | | | 15,000 | 5,000 | 25,000 | | | | | | | | |
| Professional Fees - OCC Financial Advisor | | | | | | 5,000 | 25,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Professional Fees - IP Counsel | | | | | | | 7,000 | | | | | | | | |
| Professional Fees - Tax | | | | | | | 21,923 | 21,923 | 21,923 | 21,923 | 21,923 | 21,923 | 21,923 | 21,923 | 21,923 |
| Credit Cash | | | | | | | | | | | | | | | |
| Interest | | | | | | | | | | | | | | | |
| **Total** | | $329,172 | $932,367 | $321,623 | $701,271 | $575,857 | $2,162,645 | $703,462 | $590,647 | $544,374 | $664,902 | $873,408 | $583,459 | $635,022 | $617,865 |
| **Beginning Balance** | | $598,401 | $794,678 | $415,916 | $605,427 | $380,656 | $284,824 | $1,067,065 | $982,224 | $955,464 | $1,032,681 | $1,009,073 | $787,920 | $832,661 | $913,460 |
| **Cash Gained/(Used)** | | 196,277 | (378,762) | 189,511 | (224,771) | (95,832) | 782,240 | (84,840) | (26,760) | 77,216 | (23,607) | (221,153) | 44,741 | 80,799 | (27,335) |
| **Ending Balance** | | $794,678 | $415,916 | $605,427 | $380,656 | $284,824 | $1,067,065 | $982,224 | $955,464 | $1,032,681 | $1,009,073 | $787,920 | $832,661 | $913,460 | $886,125 |

**No Fear Retail Stores, Inc.**
**Cash Flow Analysis**
**as of 03/28/11**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Sales Growth Adjustment | 10% | 10% | 10% | 10% | 10% | 10% | 10% | 10% | 10% |
| Sales Growth Adjustment | 557,700 | 487,067 | 556,032 | 576,918 | 617,446 | 783,683 | 788,179 | 659,612 | 505,968 |
| | (55,770) | (48,706) | (55,603) | (57,592) | (61,745) | (78,369) | (76,818) | (65,961) | (50,687) |
| **Week** | **15** | **16** | **17** | **18** | **19** | **20** | **21** | **22** | **23** |
| | 7/4/2011 | 7/11/2011 | 7/18/2011 | 7/25/2011 | 8/1/2011 | 8/8/2011 | 8/15/2011 | 8/22/2011 | 8/29/2011 |
| **Total** | $562,548 | $578,624 | $660,596 | $985,379 | $733,528 | $933,267 | $912,597 | $783,619 | $624,776 |
| **Cash Inflows** | | | | | | | | | |
| Retail Sales | 513,470 | 535,763 | 611,635 | 634,610 | 678,191 | 840,062 | 844,997 | 725,573 | 557,865 |
| Sales Tax | 49,078 | 42,861 | 48,931 | 50,769 | 54,335 | 67,205 | 67,600 | 58,046 | 44,613 |
| Wholesale Sales | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Credit Card Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Royalties | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Rental Income - North Carolina | 0 | 0 | 0 | 0 | 0 | 26,000 | 0 | 0 | 22,500 |
| DIP Financing | 0 | 0 | 0 | 300,000 | 0 | 0 | 0 | 0 | 0 |
| **Cash Outflows** | | | | | | | | | |
| Payroll | 100,000 | 250,000 | 100,000 | 250,000 | 100,000 | 250,000 | 100,000 | 250,000 | 100,000 |
| Mgmt Support Allocation | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Sales Tax | 44,860 | 0 | 238,188 | 0 | 0 | 0 | 0 | 191,638 | 0 |
| Credit Card Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Insurance | 0 | 0 | 0 | 63,986 | 35,932 | 0 | 0 | 0 | 46,347 |
| Rent - HQ | 0 | 0 | 0 | 0 | 369,273 | 0 | 0 | 0 | 63,986 |
| Rent - Retail Stores | 369,273 | 0 | 0 | 0 | 92,735 | 0 | 0 | 0 | 369,273 |
| Rent - Allocation | 87,486 | 0 | 0 | 0 | (6,000) | 0 | 0 | 0 | 92,735 |
| Vendors | (6,000) | 255,926 | 270,999 | 289,467 | 304,689 | 372,861 | 290,582 | 248,794 | 350,225 |
| Graphic Design | 270,999 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 |
| Equipment & Vehicle Leases | 4,167 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Repairs and Replacement | 1,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 |
| Freight | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 1,000 |
| Mortgage - North Carolina | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Bank Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Utilities - Store | 14,000 | 0 | 0 | 0 | 14,000 | 0 | 0 | 0 | 14,000 |
| Music - Store | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Supplies | 9,485 | 9,485 | 9,485 | 9,485 | 9,485 | 9,485 | 9,485 | 9,485 | 9,485 |
| IT - Phones and Internet | 2,640 | 8,218 | 8,218 | 8,218 | 3,000 | 3,000 | 3,000 | 3,000 | 2,640 |
| SW - POS | 3,000 | | | | 8,218 | 8,218 | 8,218 | 8,218 | |
| SW - Inventory Mgmt | 8,218 | | | | | | | | |
| Travel | 15,664 | 15,664 | | | | | 15,664 | | |
| Professional Fees - Debtors Financial Advisor | 1,010 | | | | 1,010 | 1,010 | 1,010 | | 1,010 |
| Professional Fees - Debtors Counsel | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 |
| Professional Fees - OCC Counsel | 15,000 | 15,000 | 30,000 | 15,000 | 15,000 | 30,000 | 30,000 | | |
| Professional Fees - DIP Lender Counsel | 7,500 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | | 15,000 | 15,000 |
| Professional Fees - Conflicts Counsel | 5,000 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Professional Fees - OCC Financial Advisor | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Professional Fees - IP Counsel | 0 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Professional Fees - Tax | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Credit Cash | 0 | 0 | 0 | 90,000 | 0 | 0 | 0 | 0 | 0 |
| Interest | 21,923 | 21,923 | 21,923 | 21,923 | 21,923 | 21,923 | 21,923 | 21,923 | 21,923 |
| **Total** | $858,554 | $591,883 | $707,847 | $984,687 | $1,073,639 | $714,164 | $505,838 | $780,715 | $925,687 |
| **Beginning Balance** | $886,725 | $590,119 | $576,659 | $529,579 | $530,270 | $190,157 | $409,260 | $916,021 | $818,925 |
| Cash Gained/(Used) | (296,006) | (13,260) | (47,281) | 682 | (340,113) | 219,103 | 406,761 | 2,904 | (304,819) |
| **Ending Balance** | $590,119 | $576,659 | $529,579 | $530,270 | $190,157 | $409,260 | $916,021 | $818,925 | $514,106 |

EXHIBIT "3"

*Hilco Brands, LLC and Infinity FS Brands, LLC*

March 30th, 2011

Simo Holdings, Inc.;
<Insert Address>
San Diego, California
<Inset ZIP>

Attention: Mark Simo
cc: Scott Benjamin, David Kupetz and Matt Venturi

Re:    DIP Financing Commitment

Gentlemen:

   Hilco Brands, LLC and Infinity FS Brands, LLC (collectively, the "Lenders") are pleased to advise you that the Lenders are willing to provide Simo Holdings, Inc., No Fear Retail Stores, Inc., and, No Fear MX, Inc. (collectively, the "Borrower"), as debtor-in-possession, with the DIP Facility, substantially on the same terms and conditions set forth in the Terms and Conditions attached hereto as Exhibit A (the "Term Sheet").  The Lenders' commitment to provide the DIP Facility is subject in all respects to satisfaction of, among other things, the terms and conditions contained in this commitment letter and in the Term Sheet.

   Borrower acknowledges that this commitment letter and the Term Sheet are intended as an outline only and do not purport to summarize all the conditions, covenants, representations, warranties and other provisions which would be contained in definitive legal documentation for the DIP Facility.  The loan documentation for the DIP Facility will include, in addition to the provisions that are summarized in this commitment letter and the Term Sheet, provisions that, in the opinion of the Lenders, are customary or typical for this type of financing transaction and other provisions that the Lenders determines to be appropriate in the context of the proposed transaction.  Such definitive loan documentation shall be in form and substance satisfactory to the Lenders.

   By its execution hereof and its acceptance of the commitment contained herein, Borrower agrees to indemnify and hold harmless the Lenders and each of their respective assignees and affiliates and their respective directors, officers, employees and agents (each an "Indemnified Party") from and against any and all losses, claims, damages, liabilities or other expenses to which such Indemnified Party may become subject, insofar as such losses, claims, damages, liabilities (or actions or other proceedings commenced or threatened in respect thereof) or other expenses arise out of or in any way relate to or result from, this letter or the extension of the DIP Facility contemplated by this commitment letter, or in any way arise from any use or intended use of this commitment letter or the proceeds of the DIP Facility, and Borrower agrees to reimburse each such Indemnified Party for any legal or other expenses incurred in connection

1

with investigating, defending or participating in any such loss, claim, damage, liability or action or other proceeding (whether or not such Indemnified Party is a party to any action or proceeding out of which indemnified expenses arise), but excluding therefrom all expenses, losses, claims, damages and liabilities which are finally determined in a final non-appealable decision of a court of competent jurisdiction to have resulted solely from the gross negligence or willful misconduct of such Indemnified Party. If for any reason the foregoing indemnification is unavailable to an Indemnified Party or insufficient to hold an Indemnified Party harmless, then Borrower shall contribute to the amount paid or payable by such Indemnified Party as a result of such loss, claim, damage or liability in such proportion as is appropriate to reflect the relative economic interests of (i) Borrower and their respective affiliates, stockholders, partners or other equity holders on the one hand and (ii) the Indemnified Parties on the other hand in the matters contemplated by this commitment letter as well as the relative fault of (a) Borrower and their respective affiliates, stockholders, partners or other equity holders and (b) the Indemnified Persons with respect to such loss, claim, damage or liability and any other relevant equitable considerations. In the event of any litigation or dispute involving this commitment letter or the DIP Facility, the Lenders shall not be responsible or liable to Borrower, or any other person or entity for any special, indirect, consequential, incidental or punitive damages. In addition: 1) Borrower agrees to reimburse the Lenders for all reasonable fees and expenses (the "Expenses") incurred by or on behalf of the Lenders in connection with the negotiation, preparation, execution and delivery of this commitment letter, the Term Sheet and any and all definitive documentation relating hereto and thereto, subject to the terms in the attached Term Sheet; and, 2) in the event the Lenders are prepared to close the transaction on substantively the same terms and conditions contained herein, and the Borrower chooses not to proceed, the balance of any outstanding legal costs (subject to the terms in the attached Term Sheet) and a break-up fee ("Break Fee") equal to 3.5% of the DIP Facility will be immediately due and owing and deemed a priority administrative expense in Borrower's Chapter 11 proceeding. The obligations of the Borrower under this paragraph shall remain effective whether or not definitive documentation is executed and notwithstanding any termination of this commitment letter.

The Lenders' commitment to provide the DIP Facility is subject to (i) the negotiation, execution and delivery of definitive loan documentation in form and substance reasonably satisfactory to the Lenders and its counsel (including, but not limited to, the form and substance of the orders of the Bankruptcy Court approving the DIP Facility), (ii) the satisfaction of the Lenders that since the date of this Commitment Letter there has not occurred or become known to the Lenders any material adverse change with respect to the condition, financial or otherwise, business, operations, assets, liabilities or prospects of Borrower, and (iii) the conditions set forth in the Term Sheet. If at any time the Lenders shall determine (in their sole and absolute discretion) that either (A) the Borrower will be unable to fulfill any condition set forth in this commitment letter or in the Term Sheet or (B) any Material Adverse Change has occurred, the Lenders may terminate this letter by giving notice thereof to Borrower (subject to the obligation of Borrower to pay all Expenses and other payment obligations expressly assumed by Borrower hereunder, which shall survive the termination of this letter).

Should the terms and conditions of the offer contained herein meet with your approval, please indicate your acceptance by signing and returning a copy of this commitment letter to the Lenders.

This commitment letter, including the attached Term Sheet (i) supersedes all prior discussions, agreements, commitments, arrangements, negotiations or understandings, whether oral or written, of the parties with respect thereto, (ii) shall be governed by the law of the State of California, without giving effect to the conflict of laws provisions thereof, (iii) shall be binding upon the parties and their respective successors and assigns, (iv) may not be relied upon or enforced by any other person or entity, and (v) may be signed in multiple counterparts and delivered by facsimile or electronic transmission, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. If this commitment letter becomes the subject of a dispute, each of the parties hereto hereby waives trial by jury. This commitment letter may be amended, modified or waived only in a writing signed by the parties hereto.

Sincerely,

Hilco Brands, LLC

By:

_____
Mitch Berk, CEO

Infinity FS Brands, LLC

By:

_____
Ike Franco, Managing Partner

Infinity FS Brands, LLC

By:

_____
Brad Snyder, Managing Partner

3

AGREED & ACCEPTED

No Fear Retail Stores, Inc.

_____

By:_____

Its:_____

Simo Holdings, Inc.

_____

By:_____

Its:_____

No Fear MX, Inc.

_____

By:_____

Its:_____

## Exhibit A

## <u>Simo Holdings, Inc., No Fear Retail Stores, Inc., and No Fear MX, Inc.</u>

### <u>Outline of Terms and Conditions</u>

This Outline of Terms and Conditions is part of the Commitment Letter, dated March 30th, 2011 (the "<u>Commitment Letter</u>") addressed to Borrower by Lenders and is subject to the terms and conditions of the Commitment Letter. Capitalized terms used herein shall have the meanings set forth in the Commitment Letter unless otherwise defined herein.

| | |
|---|---|
| **Borrower:** | Simo Holdings, Inc. ("Simo"), No Fear Retail Stores, Inc. ("No Fear Retail"), and No Fear MX, Inc. ("No Fear MX") (and such other legal entities deemed appropriate by Lenders in their reasonable discretion) (collectively, "Borrower" or the "Company") on a cross-collateralized basis. |
| **Lenders:** | Hilco Brands, LLC ("Hilco") and Infinity FS Brands, LLC ("Infinity"). |
| **DIP Facility:** | $3,000,000 Debtor-in-Possession ("DIP") term loan (the "DIP Facility"). |
| **Purpose:** | To finance (i) the costs associated with Borrower's Chapter 11 bankruptcy cases; (ii) the continued operation of Borrower's business; (iii) the maintenance of Borrower's assets while the Borrower restructures and/or pursues a strategic transaction that will provide this basis for a chapter 11 plan of reorganization; and (iv) the repayment of at least 50% of the outstanding Credit Cash NJ, LLC ("Credit Cash") facility. |
| **Maturity:** | Eighteen months from the date of the Borrower's Chapter 11 bankruptcy filing, accelerated by typical DIP financing acceleration events, including without limitation, reasonable performance and timing milestones to be agreed to by the parties. If the Borrower successfully emerges from Chapter 11, the DIP Facility can be converted to an exit loan at the Borrower's option (subject to a 5% conversion fee applied to the principal amount converted). |
| **Security:** | The DIP Facility will be secured by: 1) a first priority security position on all of the Borrowers' Intellectual Property (including, but not limited to: trademarks, trade names, customer lists and domain names) (with respect to the No Fear trademark, this first position may be obtained either through consensual subordination by Credit Cash or by full payment of Credit Cash's claim from initial proceeds disbursed under the DIP Facility); 2) Subject to the attachment liens held by FMF Racing and Don Emler, a first priority security position on all of Simo's other current and future assets and capital stock, including, but not limited to: accounts receivable, inventory, FF&E, shares and cash but excluding real estate; 3) a second priority security position on all real estate of the Borrowers, subordinated only to existing senior mortgage; 4) a first priority security |

1

position on all other of No Fear MX's and No Fear Retail's current and future assets and capital stock excluding accounts receivable and cash balances (including, but not limited to: inventory, FF&E, and shares); and, 5) a second priority security position on all of No Fear MX's and No Fear Retail's accounts receivable and cash balances, subordinated only to liens held by Credit Cash.

**Commitment Fee:** 5.0% of the total DIP Facility paid at closing.

**Interest Rate:** 12.0% per annum payable quarterly in arrears, and an additional 8.0% per annum that at Borrower's option may be paid quarterly in arrears or else accrues and compounds annually and is payable upon default or upon maturity. If the DIP Facility is not fully repaid at maturity or upon other events of default then the interest rate becomes 23.0% per annum payable quarterly in arrears.

**Early Termination Fee:** 5.0% of any principal amount repaid in year 1 (if Borrower converts DIP Facility to an exit loan then Early Termination Fee would not apply).

**Amortization:** Bullet maturity at close.

**Financial and Other Covenants:** In addition to typical and customary covenants applicable to transactions of this type: 1) any licensing of Intellectual Property subject to DIP Facility lien will require Lenders' approval, which approval will not be unreasonably withheld; and, 2) any net proceeds from the sale of Borrower's owned real estate (including property located in North Carolina) ("Net Sale Proceeds") will be allowed, with the Lenders' approval not to be unreasonably withheld, to support the Company's working capital. Lenders shall provide any such approval based upon receipt of a detailed plan showing the uses of such Net Sale Proceeds, with such approval not to be unreasonably withheld. Under no case will any Net Sale Proceeds be allowed to repay any creditor except to repay the DIP Facility.

**Conditions Precedent:** Closing shall be conditioned upon satisfaction of the following conditions precedent and other conditions customary to transactions of this type, or reasonably required by the Lenders.

1. Bankruptcy Court grants approval of the DIP Facility and all associated terms.

2. Liens on all of the Borrower's collateral shall have been filed and otherwise perfected to the satisfaction of the Lenders, including but not limited to all UCC filings.

3. All necessary consents and approvals to the financing shall all have been obtained.

2

4.  Completion of legal due diligence investigation by the Lenders' counsel, with results satisfactory to the Lenders and their counsel.

5.  Preparation, execution and delivery of definitive documentation satisfactory to the Lenders. Documentation shall contain representations, covenants, events of default, expense reimbursement, and indemnification provisions for the benefit of the Lenders customary for transactions of this size, type, and purpose.

6.  The Lenders shall have received such corporate resolutions, certificates and other documents as the Lenders shall reasonably request.

7.  Legal costs associated with the negotiation and documentation of the DIP Facility are estimated to be Sixty Thousand Dollars ($60,000) and will be paid out of the DIP Facility on Closing. The expenses include: $25,000 for documentation, $25,000 for credit review and $10,000 for other out of pocket legal expenses. Upon authorization of the Bankruptcy Court (the "Court") presiding over the Company's chapter 11 cases, Borrower will fund a non-refundable partial Expense payment in the amount of Twenty Five Thousand Dollars ($25,000) and will fund the remaining Thirty Five Thousand Dollars ($35,000) at close. In the event that legal proceedings become more intensive and lengthy than expected, Lenders will submit an itemized legal bill for reimbursement. In any event, the all-in legal costs associated with the negotiation and documentation of the DIP Facility are not to exceed Ninety Thousand Dollars ($90,000) ("Legal Cost Cap").

8.  No material misstatements in or omissions from the materials previously furnished to the Lenders for their review. The Lenders must be satisfied that any financial statements and projections delivered to them fairly represent the business and financial condition of the Borrower; and that there has been no material adverse change in the assets, business, financial condition, income or prospects of the Borrower since the date of the most recent financial information delivered to the Lenders.

9.  Except as disclosed in the Debtor's Bankruptcy Schedules and/or Statement of Affairs to be filed with the Court, the absence of any litigation or other proceeding the result of which might have a material adverse effect on the Borrower.

10. Except as disclosed in the Debtor's Bankruptcy Schedules and/or Statement of Affairs to be filed with the Court, the absence of any default of any material contract or agreement of the Borrower or any of its subsidiaries or related entities.

11. The proposed financing is subject to the condition that no material changes in governmental regulations or policies affecting the Borrower or Lenders involved in this transaction occur prior to the closing date.

3

**Expenses:**     In the event the Lenders are prepared to close the transaction on substantively the same terms and conditions contained herein, and the Borrower chooses not to proceed, the balance of any outstanding legal costs (subject to the Legal Cost Cap) and a Break Fee equal to 3.5% of the DIP Facility will be immediately due and owing and deemed a priority administrative expense in Borrower's Chapter 11 proceeding.

Lenders' reasonable legal costs post funding of the DIP Facility will be deemed a priority administrative expense in Borrower's Chapter 11 proceeding and once approved by the Court, to the extent they require Court approval, they are payable on demand or added to the balance of the outstanding principal amount of the DIP Facility if not timely paid.

EXHIBIT "4"

## Exhibit A

# Simo Holdings, Inc., No Fear Retail Stores, Inc., and No Fear MX, Inc.

## ~~Summary of Terms and Conditions~~ Outline of Terms and Conditions

~~For Senior DIP Credit Facility~~ This Outline of Terms and Conditions is part of the Commitment Letter, dated March 30th, 2011 (the "Commitment Letter") addressed to Borrower by Lenders and is subject to the terms and conditions of the Commitment Letter. Capitalized terms used herein shall have the meanings set forth in the Commitment Letter unless otherwise defined herein.

### ~~03/14/11~~

~~THESE PROPOSED TERMS AND CONDITIONS ARE PROVIDED FOR DISCUSSION PURPOSES ONLY AND DO NOT CONSTITUTE AN OFFER, AGREEMENT OR COMMITMENT TO LEND. THE ACTUAL TERMS AND CONDITIONS UPON WHICH LENDERS MIGHT EXTEND CREDIT TO THE BORROWER ARE SUBJECT TO SATISFACTORY COMPLETION OF DUE DILIGENCE, CREDIT COMMITTEE APPROVAL, SATISFACTORY REVIEW OF DOCUMENTATION AND SUCH OTHER TERMS AND CONDITIONS AS ARE DETERMINED BY LENDERS AND THEIR COUNSEL.~~

| | |
|---|---|
| **Borrower:** | Simo Holdings, Inc. ("Simo"), No Fear Retail Stores, Inc. ("No Fear Retail"), and No Fear MX, Inc. ("No Fear MX") (and such other legal entities deemed appropriate by Lenders in their reasonable discretion) (collectively, "Borrower" or the "Company") on a cross-collateralized basis. |
| **Lenders:** | Hilco Brands, LLC ("Hilco") and Infinity FS Brands, LLC ("Infinity"). |
| **~~Credit~~ DIP Facility:** | $3,000,000 Debtor-in-Possession ("DIP") term loan (the "~~Credit~~ DIP Facility"). |
| **Purpose:** | To finance (i) the costs associated with Borrower's Chapter 11 bankruptcy cases; (ii) the continued operation of Borrower's business; (iii) the maintenance of Borrower's assets while the Borrower restructures and/or pursues a strategic transaction that will provide this basis for a chapter 11 plan of reorganization; and (iv) the repayment of at least 50% of the outstanding Credit Cash NJ, LLC ("Credit Cash") facility. |
| **Maturity:** | Eighteen months from the date of the Borrower's Chapter 11 bankruptcy filing, accelerated by typical DIP financing acceleration events, including without limitation, reasonable performance and timing milestones to be agreed to by the parties. If the Borrower successfully emerges from Chapter 11, the ~~Credit~~ DIP Facility can be |

converted to an exit loan at the Borrower's option (subject to a 5% conversion fee applied to the principal amount converted).

| | |
|---|---|
| **Security:** | The ~~Credit~~ DIP Facility will be secured by: 1) a first priority security position on all of the Borrowers' Intellectual Property (including, but not limited to: trademarks, trade names, customer lists and domain names) (with respect to the No Fear trademark, this first position may be obtained either through consensual subordination by Credit Cash or by full payment of Credit Cash's claim from initial proceeds disbursed under the ~~Credit~~ DIP Facility); 2) Subject to the attachment liens held by FMF Racing and Don Emler, a first priority security position on all of Simo's other current and future assets and capital stock, including, but not limited to: accounts receivable, inventory, FF&E, shares and cash but excluding real estate; 3) a second priority security position on all real estate of the Borrowers, subordinated only to existing senior mortgage;  4) a first priority security position on all other of No Fear MX's and No Fear Retail's current and future assets and capital stock excluding accounts receivable and cash balances (including, but not limited to: inventory, FF&E, and shares); and, 5) a second priority security position on all of No Fear MX's and No Fear Retail's accounts receivable and cash balances, subordinated only to liens held by Credit Cash. |
| **Commitment Fee:** | 5.0% of the total ~~Credit~~ DIP Facility paid at closing. |
| **Interest Rate:** | 12.0% per annum payable quarterly in arrears, and an additional 8.0% per annum that at Borrower's option may be paid quarterly in arrears or else accrues and compounds annually and is payable upon default or upon maturity.  If the ~~Credit~~ DIP Facility is not fully repaid at maturity or upon other events of default then the interest rate becomes 23.0% per annum payable quarterly in arrears. |
| **Early Termination Fee:** | 5.0% of any principal amount repaid in year 1 (if Borrower converts ~~Credit~~ DIP Facility to an exit loan then Early Termination Fee would not apply). |
| **Amortization:** | Bullet maturity at close. |
| **Financial and Other Covenants:** | In addition to typical and customary covenants applicable to transactions of this type: 1) any licensing of Intellectual Property subject to ~~Credit~~ DIP Facility lien will require Lenders' approval, which approval will not be unreasonably withheld; and, 2) any net proceeds from the sale of Borrower's owned real estate (including property located in North Carolina) ("Net Sale Proceeds") will be allowed,  with the Lenders' approval  not to be unreasonably withheld, to support the Company's working capital.  Lenders shall provide any such approval based upon receipt of a detailed plan |

showing the uses of such Net Sale Proceeds, with such approval not to be unreasonably withheld. Under no case will any Net Sale Proceeds be allowed to repay any creditor except to repay the ~~Credit~~ DIP Facility.

**Conditions Precedent:**    Closing shall be conditioned upon satisfaction of the following conditions precedent and other conditions customary to transactions of this type, or reasonably required by the Lenders.

1. ~~Demonstration of adequate liquidity to fund (i) the expenses of the Chapter 11 bankruptcy proceeding; (ii) the efforts in pursuit of a strategic transaction (if applicable); and (iii) the working capital requirements of the Company through August 31, 2011.~~

1. ~~2.~~Bankruptcy Court grants approval of the ~~Credit~~ DIP Facility and all associated terms.

2. ~~3.~~Liens on all of the Borrower's collateral shall have been filed and otherwise perfected to the satisfaction of the Lenders, including but not limited to all UCC filings.

4. ~~Satisfactory completion of business due diligence, including, without limitation, a satisfactory review by the Lenders of the following items:~~

   - ~~Financial projections.~~
   - ~~Most recent financial statements (income statement, balance sheet and cash flow).~~

3. ~~5.~~All necessary consents and approvals to the financing shall all have been obtained.

4. ~~6.~~Completion of legal due diligence investigation by the Lenders' counsel, with results satisfactory to the Lenders and their counsel.

5. ~~7.~~Preparation, execution and delivery of definitive documentation satisfactory to the Lenders. Documentation shall contain representations, covenants, events of default, expense reimbursement, and indemnification provisions for the benefit of the Lenders customary for transactions of this size, type, and purpose.

6. ~~8.~~The Lenders shall have received such corporate resolutions, certificates and other documents as the Lenders shall reasonably request.

7. ~~9.~~Legal costs associated with the negotiation and documentation of the ~~Credit~~ DIP Facility are estimated to be Sixty Thousand Dollars ($60,000) and will be paid out of the ~~Credit~~ DIP Facility on Closing. The expenses include: $25,000 for documentation, $25,000 for credit review and $10,000 for other out of pocket

legal expenses. Upon authorization of the Bankruptcy Court (the "Court") presiding over the Company's chapter 11 cases, Borrower will fund a non-refundable partial Expense payment in the amount of Twenty Five Thousand Dollars ($25,000) and will fund the remaining Thirty Five Thousand Dollars ($35,000) at close.    In the event that legal proceedings become more intensive and lengthy than expected, Lenders will submit an itemized legal bill for reimbursement. In any event, the all-in legal costs associated with the negotiation and documentation of the ~~Credit~~ DIP Facility are not to exceed Ninety Thousand Dollars ($90,000) ("Legal Cost Cap").

8.  ~~10.~~No material misstatements in or omissions from the materials previously furnished to the Lenders for their review.    The Lenders must be satisfied that any financial statements and projections delivered to them fairly represent the business and financial condition of the Borrower; and that there has been no material adverse change in the assets, business, financial condition, income or prospects of the Borrower since the date of the most recent financial information delivered to the Lenders.

9.  ~~11.~~Except as disclosed in the Debtor's Bankruptcy Schedules and/or Statement of Affairs <u>to be</u> filed with the Court, the absence of any litigation or other proceeding the result of which might have a material adverse effect on the Borrower.

10.  ~~12.~~Except as disclosed in the Debtor's Bankruptcy Schedules and/or Statement of Affairs <u>to be</u> filed with the Court, the absence of any default of any material contract or agreement of the Borrower or any of its subsidiaries or related entities.

11.  ~~13.~~The proposed financing is subject to the condition that no material changes in governmental regulations or policies affecting the Borrower or Lenders involved in this transaction occur prior to the closing date.

~~14. Borrower will grant Hilco Merchant Resources the right of first refusal to liquidate any or all stores that are closed during the term of this Credit Facility and will grant Hilco Real Estate the right of first refusal to advise on any lease mitigation work and landlord negotiations during the term of this Credit Facility.~~

**Expenses:**    In the event the Lenders are prepared to ~~issue a commitment letter or~~ close the transaction on substantially the same terms and conditions contained herein, and the Borrower chooses not to proceed, the balance of any outstanding legal costs (subject to the Legal Cost Cap) and a Break Fee equal to 3.5% of the ~~Credit~~ DIP Facility will be immediately due and owing and deemed a priority administrative expense in Borrower's Chapter 11 proceeding.

Lenders' reasonable legal costs post funding of the ~~Credit~~ DIP Facility will be deemed a priority administrative expense in Borrower's

Chapter 11 proceeding and once approved by the Court, to the extent they require Court approval, they are payable on demand or added to the balance of the outstanding principal amount of the ~~Credit~~ DIP Facility if not timely paid.

**~~Expiration:~~**                    ~~This letter shall expire, if Borrower has not accepted this letter by returning a signed copy to the Lenders by no later than 5:00 p.m. Pacific Time on March 15, 2011.~~

~~Please note that this letter, except with regard to the Expenses provisions set forth above, is not a binding commitment of Borrower or Lenders, nor does it define all of the terms and conditions of the financing, but is a framework upon which the documentation for this transaction shall be structured, and is a basis for further discussion and negotiation of the terms as may be appropriate.~~

~~Sincerely,~~

**~~Hilco Brands, LLC~~**

**~~By:~~**

~~Mitch Berk, CEO~~

**~~Infinity FS Brands, LLC~~**

**~~By:~~**

~~Ike Franco, Managing Partner~~

**~~Infinity FS Brands, LLC~~**

**~~By:~~**

~~Brad Snyder, Managing Partner~~

AGREED & ACCEPTED

No Fear Retail Stores, Inc.

_____

By:_____

Its:_____


Simo Holdings, Inc.

_____

By:_____

Its:_____


No Fear MX, Inc.

_____

By:_____

Its:_____

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
333 South Hope Street, Thirty-Fifth Floor, Los Angeles, California 90071-1406

A true and correct copy of the foregoing document described as **"DEBTORS' REPLY TO OBJECTIONS OF CREDITORS' COMMITTEE AND UNITED STATES TRUSTEE TO MOTION FOR ORDER AUTHORIZING DEBTORS TO ENTER INTO DEBTOR IN POSSESSION CREDIT FACILITY WITH HILCO BRANDS, LLC AND INFINITY FS BRANDS, LLC, DECLARATION OF MARK SIMO; DECLARATION OF MATTHEW VENTURI"** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>March 30, 2011</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address indicated below:

| | | |
|---|---|---|
| ➤ | Robert R. Barnes — Landlords Affiliated with General Growth Properties | bbarnes@allenmatkins.com |
| | | bcrfilings@allenmatkins.com |
| ➤ | Jeffrey D. Cawdrey — Jido & Juniar, Inc. | jcawdrey@gordonrees.com |
| | | ebojorquez@gordonrees.com |
| ➤ | Jeffrey W. Dulberg — No Fear Retail Stores Creditors' Committee | jdulberg@pszjlaw.com |
| ➤ | Christine Fitzgerald — FMF Racing/Don Emler | cfitzgerald@scckg.com |
| ➤ | Thomas M. Geher — Ultimate Brand Management, LLC | tmg@jmbm.com |
| ➤ | Sue J. Hodges — Credit Cash NJ, LLC | sue.hodges@klgates.com |
| ➤ | Mark S. Hoffman — LFP Apparel, LLC | mshllh@aol.com |
| ➤ | Haeji Hong — OUST (SD) | Haeji.Hong@usdoj.gov |
| ➤ | Brian D. Huben — The Macerich Company | brian.huben@kattenlaw.com |
| | | carole.levine@kattenlaw.com |
| ➤ | David S. Kupetz — Debtor No Fear Retail Stores, Inc. | dkupetz@sulmeyerlaw.com |
| ➤ | Jeffrey N. Pomerantz — No Fear Retail Stores Creditors' Committee | jpomerantz@pszjlaw.com |
| | | scho@pszjlaw.com |
| ➤ | Daniel Silva — Jido & Juniar, Inc. | dsilva@gordonrees.com |
| ➤ | Steven F. Werth — Debtor No Fear Stores, Inc. | swerth@sulmeyerlaw.com |
| ➤ | Dennis J. Wickham — Cobra-Blackmore, LP | wickham@scmv.com |
| | | havard@scmv.com |

☐ Service Information continued on attached page.

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On _____, I served the following person(s) and/or entity(ies) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow.

☐ Service Information continued on attached page.

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P.5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method ) by facsimile transmission and/or email as follows.

☐ Service Information continued on attached page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| March 30, 2011 | Kathleen Fox | |
| *Date* | *Type Name* | *Signature* |