CSD 1001A [11/15/04] (Page 1)
Name, Address, Telephone No. & I.D. No.

David S. Kupetz (CA Bar No. 125062)
  dkupetz@sulmeyerlaw.com
Steven F. Werth
  swerth@sulmeyerlaw.com
SulmeyerKupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520
Attorneys for No Fear Retail Stores, Inc., No Fear MX, Inc., and Simo Holdings, Inc., Debtors and Debtors in Possession

Order Entered on
April 25, 2011
by Clerk U.S. Bankruptcy Court
Southern District of California

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re.

NO FEAR RETAIL STORES, INC., a California corporation, NO FEAR MIX INC., a California corporation, and SIMO HOLDINGS, INC., a California corporation,

Debtors.

BANKRUPTCY NO. 11-02896-MM11

(Jointly Administered with Case Nos. 11-02897-MM11; 11-02898-MM11)

Date of Hearing:    April 18, 2011
Time of Hearing:    10:00 a.m.
Name of Judge:      Hon. Margaret M. Mann

## ORDER AUTHORIZING DEBTORS TO ENTER INTO DEBTOR IN POSSESSION CREDIT FACILITY WITH 1903 ONSHORE FUNDING, LLC

**IT IS ORDERED THAT** the relief sought as set forth on the continuation pages attached and numbered two (2) through 94 with exhibits, if any, for a total of 94 pages, is granted. Motion/Application Docket Entry No. 87.

//

//

//

DATED: April 18, 2011 / April 25, 2011

Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under Fed. R. of Bankr. P. 9011 that the relief in the order is the relief granted by the court.

Submitted by:

SulmeyerKupetz, A Professional Corporation

By:     /s/ Steven F. Werth
Attorney for ☒ Movant ☐ Respondent
No Fear Retail Stores, Inc., No Fear MX, Inc., and Simo Holdings, Inc., Debtors and Debtors in Possession

626639.01-Los Angeles Server 1A - MSW

The Court has considered the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "DIP Financing Order") authorizing the Debtors to obtain postpetition financing. On April 7, 2011, the Court entered its Order on Motion for Debtors and Debtors in Possession for Order Authorizing Debtors to Enter Into Debtor in Possession Credit Facility with Hilco Brands, LLC and Infinity FS Brands, LLC [Docket No. 145] (the "Hilco Order"). The Court has considered the record of the Debtors' bankruptcy cases, including, without limitation, the filings made pursuant to the Hilco Order, the positions of the Debtors, the official committees of unsecured creditors appointed in these cases (the "Creditors' Committees"), and other parties in interest, and the evidence before this Court. After due deliberation, the Court finds as follows:

A. The relief granted in this DIP Financing Order is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, and due and sufficient cause exists for the Court to grant such relief under sections 105 and 364 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001(c) of the Federal Rules of the Bankruptcy Procedures (the "Bankruptcy Rules"), the Local Rules of the United States Bankruptcy Court for the Southern District of California, the Guidelines for Motions to Use Cash Collateral or to Obtain Credit (the "Guidelines"), and other applicable law, rules, and guidelines.

B. Due and sufficient notice of the relief granted in this DIP Financing Order has been provided under the circumstances, and no other or further notice is required.

C. Any objections to the relief granted herein have been withdrawn or resolved, or are overruled.

D. The Debtors have determined not to pursue financing from Hilco Brands, LLC and Infinity FS Brands, LLC as allowed under the Hilco Order. The Debtors seek authority to enter into the credit agreement (the "DIP Agreement"), substantially in the form attached hereto as Exhibit A, and the security agreement (collectively with the DIP Agreement and related agreements, including, without limitation, the Intercreditor Agreement (defined below), the "DIP Documents," and, the financing provided thereunder, the "DIP Facility," and, the Debtors' obligations thereunder, the "Obligations"), substantially in the form attached hereto as Exhibit B, with 1903 Onshore Funding LLC or its designee (collectively, the "Lender"). Capitalized terms not defined in this DIP Financing Order shall have the meanings ascribed to them in the DIP Documents.

E.   In connection with the DIP Facility, the Debtors also seek approval of the intercreditor agreement by and between the Lender and Credit Cash NJ, LLC (the "Intercreditor Agreement"), substantially in the form attached hereto as Exhibit C.

F.   The Debtors do not have sufficient available resources of working capital and financing to carry on the operation of their business in the ordinary course without the DIP Facility. The Debtors have an immediate need to obtain financing under the DIP Facility in order to permit, among other things, the Debtors to continue their business operations in an orderly manner, maintain business relationships with vendors, suppliers, and customers, pay employees, satisfy other working capital and operational needs, and fund payment of administrative expenses.

G.   The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or pursuant to sections 364(a) and 364(b) of the Bankruptcy Code. The Lender has indicated its willingness to provide financing to the Debtors under the terms and conditions of the DIP Documents. The Debtors are otherwise unable to obtain financing on more favorable terms from sources other than the Lender under the terms of the DIP Documents.

H.   The DIP Facility and the Intercreditor Agreement have been negotiated in good faith and at arm's length. Any credit extended and loans made to the Debtors pursuant to the DIP Facility shall be deemed to have been extended, issued, or made, as the case may be, in good faith as required by, and within the meaning of, section 364(e) of the Bankruptcy Code, and the Lender is entitled to the protections of section 364(e) of the Bankruptcy Code.

I.   The terms of the DIP Facility and this DIP Financing Order are fair and reasonable, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. To the extent that any provision of this DIP Financing Order or the DIP Documents departs from the Guidelines, the Court finds that compelling circumstances justify any such departure. Absent entry of this DIP Financing Order, the Debtors' estate could be immediately and irreparably harmed.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1. The Motion is granted on a final basis, subject to the terms, conditions, and modifications set forth in this DIP Financing Order.

2. The terms of the DIP Documents are approved, and the Debtors are authorized to borrow under the DIP Facility subject to the terms and conditions set forth in the DIP Documents. To the extent of any inconsistency between this DIP Financing Order and the DIP Documents, this DIP Financing Order shall control.

3. The Debtors are authorized and directed to take any and all actions as are necessary or appropriate to effect the relief granted in this DIP Financing Order and the transactions contemplated by the DIP Documents. Without limiting the foregoing, the Debtors shall (a) execute and deliver the DIP Credit Documents together with any other document of any kind required to be executed and delivered in connection therewith, (b) comply with and perform, and be bound by, all of the terms, conditions, and waivers contained in the DIP Documents, (c) repay amounts borrowed, with interest, and reasonable fees and expenses, and any other allowed charges and amounts, to the Lender in accordance with and subject to the terms and conditions set forth in the DIP Documents and this DIP Financing Order.

4. The Debtors shall pay all reasonable fees and expenses, including, without limitation, all reasonable fees and expenses of professionals engaged by the Lender, in accordance with the terms of the DIP Documents without any further order of this Court. None of the Lender's fees and expenses, including, without limitation, those of its professionals, shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any application with respect thereto. The Committees shall be provided ten (10) business days notice of Lender's fees and expenses and shall have the opportunity to object to the reasonableness of Lender's fees and expenses by filing a written objection with the Court within that period.

5. The Intercreditor Agreement is approved and shall bind all parties in interest.

6. Repayment of the Obligations shall be secured by the following:

   a. pursuant to section 364(c)(1) of the Bankruptcy Code, the Obligations shall at all times constitute joint and several allowed superpriority administrative expense claims having priority over all other costs and expenses of the kind specified in, or ordered pursuant to, sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, or any other provisions of the Bankruptcy Code, provided, however, that such superpriority administrative expense claims shall not be payable from Avoidance Actions (and the

    recoveries and proceeds derived therefrom) and shall be subject to the Carve-Out Amount (defined below).

    b. except as otherwise provided in the Intercreditor Agreement or this DIP Financing Order, pursuant to section 364(c)(2) of the Bankruptcy Code, the Obligations shall at all times be secured by a perfected first priority Lien on all tangible and intangible property of the Debtors that is not otherwise subject to the Existing Liens or post-petition Permitted Liens (but the lien created by this subparagraph shall not be secured by: (i) claims with respect to Avoidance Actions; (ii) property of the Debtors that is subject to certain attachment liens against Simo Holdings, Inc. in favor of Don Emler and FMF Racing; (iii) real property leases in which the Debtors have an interest; (iv) and the proceeds from any of the foregoing);

    c. consistent with the Intercreditor Agreement, pursuant to section 364(c)(2) of the Bankruptcy Code, the Obligations shall at all times be secured by a perfected first priority Lien on all Intellectual Property Collateral; and

    d. pursuant to section 364(c)(3) of the Bankruptcy Code, the Obligations shall be secured by a perfected junior Lien upon all tangible and intangible property of the Debtors that is subject to the Existing Liens or post-petition Permitted Liens, and the Lien granted by this subparagraph shall be junior to such Existing Liens or Permitted Liens except as otherwise provided in the Intercreditor Agreement or the DIP Documents, and such Lien shall not attach to the Avoidance Actions (and the proceeds and recoveries derived therefrom) or to the Debtors' interests in real property leases.

    e. Notwithstanding anything to the contrary in subparagraphs (b) and (d) of this paragraph 6, the Intercreditor Agreement or the DIP Documents, the Liens of the Lender on any property of the Debtors in which Don Emler and FMF Racing has a valid security interest shall be junior to Don Emler's and FMF Racing's valid security interests in such property.

As used herein, "Carve-Out Amount" means the amount from the Debtors' cash, cash equivalents, and other assets representing (i) unpaid fees and expenses due to the clerk of the Bankruptcy Court and the U.S. Trustee pursuant to U.S.C. §1930(a), (ii) unpaid fees, costs, and expenses due to professional Persons retained by Borrowers or any Committee (collectively, the "Professionals"), in each case, incurred on or prior to receipt by the Debtors of a Notice of Default, and (iii) unpaid fees, costs, and expenses due to the Professionals incurred subsequent to receipt of the Notice of Default in an aggregate amount not to exceed $500,000.

    7. The collateral securing repayment of the Obligations shall not be subject to any surcharge under section 506(c) of the Bankruptcy Code.

    8. Subject to the foregoing priorities, the Obligations shall also be secured by a security interest in, and mortgage on, all of the Debtors' right, title, and interest in all real property owned by the Debtors, together in each case with all of the Debtors' right, title, and interest in and to all buildings, improvements, and fixtures related thereto, all general intangibles relating thereto, and all proceeds thereof.

626639.01-Los Angeles Server 1A - MSW

*Signed by Judge Margaret M. Mann April 25, 2011*

9. The liens provided under and/or in connection with this DIP Financing Order or the DIP Documents shall be valid, binding, and perfected automatically upon the entry of this Financing Order. The Lender shall not be required to file, record, or serve financing statements, mortgages, notices of lien, or similar instruments that otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such liens. If the Lender determines, in its sole discretion, to file any such financing statements, mortgages, agreements, notices of lien, or similar instruments, or to otherwise confirm perfection of such liens, the Debtors shall, at the Debtors' expense, cooperate with and assist in such process to the extent provided in the DIP Documents or this DIP Financing Order.

10. Without limiting any rights of access and information afforded to the Lender under the DIP Documents, the Debtors shall (a) afford representatives, agents, and/or employees of the Lender reasonable access to the Debtors' premises and the Debtors' records and (b) provide the Lender with such additional written reports as the Lender may reasonably request, including, without limitation, detailed weekly cash flow reports, and the Debtors shall provide the Committees with copies of such reports.

11. No Fear Retail Stores shall draw $220,000 from the DIP Facility that it shall advance (the "Advance") to No Fear MX to be used to purchase inventory for No Fear MX. No Fear MX shall repay No Fear Retail Stores for the Advance from the first dollars received from sales of inventory of MX, whether purchased with the Advance or otherwise, within five (5) business days of receipt until such time that the Advance is fully repaid. Any net sale proceeds generated in excess of $220,000 from the sale of MX inventory, whether purchased with the Advance or otherwise, shall remain at No Fear MX to fund ongoing working capital needs of No Fear MX. Except as set forth in this paragraph, No Fear Retail Stores and Simo Holdings may not use any of their funds, including, but not limited to, the proceeds of the DIP Facility, to purchase inventory for No Fear MX, without the written consent of both of the Simo Committee and the NFRS Committee or further Court Order. Notwithstanding the provisions of this paragraph 11, nothing herein shall be deemed to alter, modify or affect the DIP Documents or the Obligations.

12. In light of the Court's findings regarding good faith, the Lender is entitled to the protections of section 364(e) of the Bankruptcy Code.

626639.01-Los Angeles Server 1A - MSW

*Signed by Judge Margaret M. Mann April 25, 2011*

13. The provisions of this DIP Financing Order and any actions taken pursuant hereto shall survive entry of any order (a) confirming any plan in the Debtors' bankruptcy cases, (b) converting the Debtors' bankruptcy cases to chapter 7 cases; or (c) substantively consolidating or dismissing the Debtors' bankruptcy cases. To the greatest extent permitted by applicable law, the terms and provisions of this DIP Financing Order and the DIP Documents, including, without limitation, the superpriority claims and lien priorities granted to the Lender hereunder, shall continue in full force and effect notwithstanding the entry of any such order and, without limiting the foregoing, such superpriority claims and liens shall maintain their priorities as provided by this DIP Financing Order and the DIP Documents until all of the Obligations are indefeasibly paid in full.

14. The determinations, findings, judgments, decrees, and orders set forth and incorporated in this DIP Financing Order constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding to Bankruptcy Rule 9014. Each finding of fact set forth or incorporated in this DIP Financing Order, to the extent that it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated in this DIP Financing Order, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

15. Notwithstanding any stay that might be imposed by Bankruptcy Rule 6004(h) or otherwise, this DIP Financing Order shall be effective and enforceable immediately upon entry hereof

16. To the fullest extent permitted by law, the provisions of this DIP Financing Order and the DIP Documents shall be binding upon and inure to the benefit of the parties thereto, and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in these bankruptcy cases or in any subsequent chapter 7 case as a legal representative of the Debtors or their estates.

17. This Court shall retain jurisdiction to enforce this DIP Financing Order, and over any matters or disputes arising from or relating to the implementation of this DIP Financing Order.

\*\*\*