1  David S. Kupetz (CA Bar No. 125062)
      dkupetz@sulmeyerlaw.com
2  Steven F. Werth (CA Bar No. 205434)
      swerth@sulmeyerlaw.com
3  **SulmeyerKupetz**
   A Professional Corporation
4  333 South Hope Street, Thirty-Fifth Floor
   Los Angeles, California  90071-1406
5  Telephone:  213.626.2311
   Facsimile:   213.629.4520
6
   Bankruptcy Counsel for No Fear Retail
7  Stores, Inc., No Fear MX, Inc., and Simo
   Holdings, Inc., Debtors and Debtors in
8  Possession

9              **UNITED STATES BANKRUPTCY COURT**

10                **Southern District of California**

11  In re                                    Case No.  11-02896-MM11

12                                           (Jointly Administered with Case Nos.
    NO FEAR RETAIL STORES, INC., a            11-02897-MM11; 11-02898-MM11)
13  California corporation, NO FEAR MX,
    INC., a California corporation, and       Chapter 11 Cases
14  SIMO HOLDINGS, INC., a California
    corporation,                             **REPLY TO NO FEAR RETAIL**
15                                           **STORES, INC. AND SIMO HOLDINGS,**
                                             **INC. COMMITTEES' OPPOSITION TO**
16                                           **DEBTORS' MOTION FOR ENTRY OF**
                                             **AN ORDER AUTHORIZING**
17            Related Debtors.               **COMPENSATION OF INSIDERS ON A**
                                             **FINAL BASIS NUNC PRO TUNC TO**
18                                           **FEBRUARY 24, 2011; DECLARATION**
                                             **OF SCOTT BENJAMIN;**
19                                           **DECLARATION OF GEORGE**
                                             **BLANCO; DECLARATION OF JOHN**
20                                           **FERNEBORG**

21                                           **DATE:**      May 5, 2011
                                             **TIME:**      3:00 p.m.
22                                           **JUDGE:**    Hon. Margaret M. Mann
                                             **PLACE:**    Chamber 1—Room 218
23  Employer ID Nos. 20-5238208, 93-                     U.S. Bankruptcy Court
    1037856, 26-0432196                                  325 West "F" Street
24                                                       San Diego, CA 92101

25

26

27

28

SWERTH\ 716933.4

**TO THE HONORABLE MARGARET M. MANN, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, SECURED CREDITORS OF RECORD, THE OFFICIAL COMMITTEES OF UNSECURED CREDITORS, AND PARTIES ENTITLED TO NOTICE:**

No Fear Retail Stores, Inc. ("NFRS"), Simo Holdings, Inc. ("SHI"), and No Fear MX, Inc. ("MX"), the debtors and debtors in possession (collectively, the "Debtors"), hereby reply (the "Reply") to the "No Fear Retail Stores, Inc. And Simo Holdings , Inc. Committees' Opposition To Debtors' Motion For Entry Of An Order Authorizing Compensation Of Insiders On A Final Basis Nunc Pro Tunc To February 24, 2011" filed May 3, 2011 [Docket No. 228] (the "Opposition"). For the reasons stated below, the Opposition lacks merit and should be overruled.

## PROCEDURAL BACKGROUND

The Debtors filed the "Debtors' Motion For Entry Of An Order Authorizing Compensation Of Insiders On A Final Basis Nunc Pro Tunc To February 24, 2011" on March 18, 2011 [Docket No. 88] (the "Motion"). On March 25, 2011, the Debtors filed a response to the Statement of Position of the Office of the United States Trustee ("UST") with respect to the Motion [Docket No. 110] (the "Response"). On March 31, 2011, the Debtors and the Official Committee of Unsecured Creditors of No Fear Retail Stores, Inc. and the Official Committee of Unsecured Creditors of Simo Holdings, Inc. (collectively, the "NFRS/SHI Committees") filed a scheduling stipulation [Docket No. 129] (the "Scheduling Stipulation") to give the NFRS/SHI Committees additional time to respond to the Motion and to provide for interim authorized payments to the Debtors' officers in the meantime.

On April 20, 2011 this Court entered a Tentative Ruling [Docket No. 171] adopting the payment procedure agreed to by the parties in the Scheduling Stipulation, and continuing the hearing on the Motion to May 5, 2011. On May 2,

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  2011, the Debtors and the NFRS/SHI Committees filed a stipulation [Docket No.

2  222] to give the NFRS/SHI Committees until May 3, 2011 to file an opposition to

3  the Motion.  On May 3, 2011, the NFRS/SHI Committees filed the Opposition. The

4  Debtors filed this reply ("Reply") the following day.

5  ## THE QUESTION BEFORE THE COURT

6  The question before the Court is a limited one:  whether the Debtors'

7  request for approval to maintain its existing salary arrangement paying the four

8  officers of the Debtors is reasonable.  The answer, which is supported by the

9  attached declarations of (1) the Debtors' CRO George Blanco, and (2) John

10  Ferneborg, an executive compensation expert and Senior Partner and co-founder

11  of The Ferneborg Group, an executive search firm, who personally as has over 30

12  years experience in placing executive candidates at companies worldwide, is that

13  the salary is reasonable, given the geographic location of the Debtors, the size

14  and nature of their business, their number of employees, and other relevant

15  factors.

16  As stated in the Motion, the salaries of the Debtors' officers as of the

17  commencement of these cases were as follows:

| NAME | POSITION | SALARY |
|------|----------|--------|
| Mark Simo | CEO and Assistant Secretary | $468,000 |
| Brian Simo | President and Assistant Secretary | $468,000 |
| Scott Benjamin | Executive Vice-President, General Counsel, and Secretary | $240,000 |
| Kenneth Aurigemma | Chief Financial Officer | $121,000 |

26  Of these four individuals, the NFRS/SHI Committees only object to

27  the compensation of two:  Mark Simo and Brian Simo.  The Debtors have provided

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  adequate background information as to the qualifications and duties of Scott

2  Benjamin and Kenneth Aurigemma, no party has objected to their salary, and by

3  this Reply the Debtors need not repeat their case for these officers' salaries.

4  Nonetheless, the Debtors are prepared to voluntarily reduce the salaries of Mark

5  Simo and Brian Simo from $468,000 to $400,000.

6          The NFRS/SHI Committees object to the compensation of Mark Simo

7  and Brian Simo as being unreasonably high.  While the Opposition does not assert

8  that Mark Simo and Brian Simo are inadequate at performing their duties, the

9  Opposition does assert that there has been a "reduction in burdens placed upon

10  them" by virtue of the retention of George Blanco as the Debtors' Chief

11  Restructuring Officer.  Opposition, 2:18.  While the Debtors cannot be sure what

12  this vague language means, the Motion and the Response set forth substantial

13  facts regarding precisely the burdens now placed upon Mark Simo and Brian

14  Simo, that have not been eliminated due to the welcome assistance (supported by

15  the NFRS/SHI Committees as well as the Debtors) of George Blanco.  While the

16  Debtors have previously briefed the Court on the duties of Mark Simo and Brian

17  Simo in the Motion as well as in the Response, those duties can be briefly

18  summarized as follows:

19  Mark Simo:  CEO of the Debtors.

20  • Founded company in 1990 with Brian Simo

21  • Sets strategy and vision for businesses

22  • Develops, tests, implements business models, markets, products

23  • Sets budgets, secures capital resources

24  • Selects, develops, and leads senior management teams

25  • Primarily engaged in repositioning and licensing Debtors' brands

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

<u>Brian Simo</u>:  President of the Debtors.

- Founded company in 1990 with Mark Simo
- Manages day-to-day operations of retail store business
- Manages inventory selection, inventory upgrades, and inventory sourcing
- Manages store location selection, operations, merchandising
- Identifies and selects new products and vendors

For all of the above services, as identified more fully in the Motion, Mark Simo received total cash compensation from the Debtors, for the time period of 2008, 2009, and 2010, the amount of $520,000, $166,000[1], and $445,000 respectively.  For Brian Simo, the amount of total cash compensation he received from the Debtors was $520,000, $484,000, and $501,000 during that same time period.  Prior to the Petition Date in 2011, the annual salary rate for both Mark Simo and Brian Simo was $468,000.  The question thus is whether this salary for Mark Simo and Brian Simo (as voluntarily reduced to $400,000) is reasonable and in the best interest of the estate.[2]

---

[1] The decrease in Mark Simo's salary in 2009 resulted from Orange 21 and Mr. Simo reaching agreement as to Mr. Simo's compensation for serving as CEO of Orange 21, which compensation Orange 21 paid to Mr. Simo in 2009.  As a result of that payment, and given the financial condition of NFRS and SHI at the time, Mr. Simo voluntarily elected to reduce his salary from NFRS for the year of 2009.

[2] As stated more fully in the Motion, courts also look at other factors, including (1) whether the services to be provided are likely to enhance a successful reorganization, and (2) whether the debtor exercised appropriate business judgment in the process.  *See* In re Dana Corp.*, 358 B.R. 567, 571 (Bankr. S.D.N.Y. 2006).  The Opposition does not assert the Debtors failed to satisfy these factors, so this Reply does not further address them.  In any case, such elements would appear to fit within the overall standard of reasonableness.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

## THE PROPOSED SALARIES ARE REASONABLE FOR BUSINESS OF THE DEBTORS' SIZE, TYPE, LOCATION, AND NUMBER OF EMPLOYEES

As stated more fully in the attached Declaration of John Ferneborg, executive compensation at closely-held companies is not an exact science, but is determined by a number of factors, including a company's geographic location, its nature and type, its number of employees, and its revenue. Many companies have a salary component to their cash compensation of executive, and a bonus-based component to their compensation. For companies with a "two component" compensations structure such as this, any survey that looks exclusively at a salary component of compensation will underestimate the total cash compensation to an executive. In the Debtors' case, the Debtors seek to continue to pay Mark Simo and Brian Simo a straight salary—neither will receive any further cash compensation of any kind (this is the type of salary structure that has been in place for Mark Simo and Brian Simo since 2006). Thus, a comparison of "salary to salary" between companies may not provide useful data. The true comparison needed is one of total cash compensation.

Provided that one compares like terms, a range of reasonableness on executive salaries may be determined by comparison of that company to companies of a similar nature. The credibility of this result depends directly upon the degree of similarity between the compared companies, which as with individuals is necessarily inexact. To best make these comparisons, one should look not only at yearly revenue, but at geographic location, size, nature, and number of employees.

For instance, when one performs a search on www.salary.com, which uses CompAnalyst to provide users with data as to the compensation of executives identified by title, region and size, the results show that for companies in a specific industry (Retail & Wholesale) located in a specific location (San Diego, California Metropolitan Area) with 400 full time employees (the number of

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   the Debtors' full time employees), the results show total compensation for CEOs

2   (as opposed to the base salary for CEOs) averages approximately $936,000, and

3   the total compensation for chief operating officers averages approximately

4   $527,000.  *See* Declaration of John Ferneborg, ¶7; *See* Exhibit "1" hereto.  The

5   total average compensation for these two positions, $1,463,000, is more than 50%

6   greater than the combined proposed salaries of Mark Simo and Brian Simo.  Thus,

7   the salaries fall within the range of reasonableness when total company

8   compensation is reviewed, and relevant factors such as geographic location and

9   number of employees are considered.  As discussed below, these are factors the

10  NFRS/SHI Committees wholly ignore.

## THE COMMITTEES' OBJECTIONS ARE BASELESS, IRRELEVANT, AND SUGGEST THE COMMITTEES FAILED TO READ THE MOTION

13          In the Opposition, the NFRS/SHI Committees appear confused as to

14  the roles and responsibilities of Mark Simo and Brian Simo for the Debtors.

15  Rather than reviewing the Motion, the declarations in support, and the Response,

16  which clearly establishes the duties and obligations of Mark Simo, the NFRS/SHI

17  Committees have apparently determined that the duties of Mark Simo and Brian

18  Simo are identical based upon an employment agreement which expired more

19  than a decade ago.  Opposition, p.5, fn. 5.  The NFRS/SHI Committees also

20  appear to not have read the Response, which explains the duties and

21  responsibilities of Mark Simo and Brian Simo in great detail.  Opposition, 7:27-8:1

22  ("the Debtors merely include perfunctory descriptions of their responsibilities").

23  The apparent failure of the NFRS/SHI Committees to even review the pleadings

24  here suggests that the Opposition was not filed in good faith.

25          The NFRS/SHI Committees further express confusion as to how

26  salaries of Mark Simo and Brian Simo have been determined in the past.

27  Opposition, 5:14.  On the afternoon of May 3, 2011, counsel for the Debtors, along

28  with the Debtors' general counsel Scott Benjamin, contacted NFRS/SHI

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   Committees' counsel to answer questions raised informally regarding executive

2   compensation.  Despite the parties engaging in an extensive conversation in

3   which Debtors answered all of the questions articulated by NFRS/SHI Committees'

4   counsel, the NFRS/SHI Committees now state that the Debtors' proposed

5   compensation to Mark Simo and Brian Simo has not been "adequately explained."

6   Opposition, 5:15.  Why NFRS/SHI Committees' counsel chose to keep its

7   questions to itself during its conversation with the Debtors and their counsel on

8   May 3, 2011 the Debtors cannot conceive.  Given the extended period of time the

9   Debtors gave the NFRS/SHI Committees to prepare an opposition to the Motion,

10  and the conversation NFRS/SHI Committees' counsel had on the eve of filing the

11  Opposition, the statement in the Opposition that the NFRS/SHI Committees "have

12  attempted to understand" the compensation scheme (Opposition, 5:3) and that the

13  Debtors' methodology is "questionable" (Opposition, 5:15) suggests that it is the

14  NFRS/SHI Committees that have failed to even read the Motion, the Response, or

15  listen to anything the Debtors explain to them via informal teleconferences.

16          Regardless, the Motion specifically identifies the compensation paid

17  to Mark Simo and Brian Simo in 2008, 2009, and 2010, and explains the reason

18  for the variances in such compensation.  The statement in the Opposition that the

19  compensation of Mark Simo and Brian Simo was "between $208,000 and

20  $260,000 for each of the years 2006 through 2010" (Opposition, 8:18) is false

21  suggests that the NFRS/SHI Committees did not read the Motion, which states, as

22  described above, the compensation received by each during 2008, 2009, and

23  2010.  The Motion further addresses the efforts the Debtors took in 2009 and 2010

24  to reduce salaries during the economic downturn—a fact which incidentally was

25  repeated to NFRS/SHI Committees' counsel, again, during their May 3, 2011

26  teleconference.  Did the NFRS/SHI Committees not read this?   Apparently not.

27  The Opposition instead incorrectly asserts that "the Debtors made no adjustments

28  to compensation for the Simos" (Opposition, 9:9).  While it is true the Motion

7

1 requests approval to maintain the Debtors' existing salary arrangement with the

2 officers, the Debtors have adjusted those salaries in recent years, as stated in the

3 Motion.

4    For further support that the NFRS/SHI Committees appear to have

5 not bothered to read the Motion, the Opposition objects to an "incentive-based

6 compensation structure".  Opposition, 8:23.  As should be clear to anyone who

7 has read the Motion, the Debtors are not seeking to tie any payments to Mark

8 Simo or Brian Simo to a royalty or any other incentive-based structure.  The

9 Debtors seek authorization to continue to pay them a flat salary (this has been

10 their compensation arrangement with the Debtor since 2006).  There will be no

11 further compensation component.  During their May 3, 2011 teleconference, the

12 Debtors attempted to impress upon NFRS/SHI Committees' counsel that Mark

13 Simo and Brian Simo receive only a salary now, and have only received a flat

14 salary (no incentive or royalty component to their pay) for the past five years.

15 Prior to 2006 their compensation was calculated differently, as the NFRS/SHI

16 Committees bring to this Court's attention by attaching a nearly twenty year-old

17 and expired employment agreement to the Opposition.  Yet, this fact has

18 absolutely no relevance at all to whether the Debtors' current salary arrangement

19 is reasonable.

20 **THE CHART ATTACHED TO THE OPPOSITION FAILS TO COMPARE TOTAL**

21 **COMPENSATION, AND FAILS TO COMPARE SIMILAR COMPANIES**

22    The Opposition states that "well-respected executive compensation

23 surveys for companies of similar sizes and profiles" show that the median "base

24 salaries" for executives are less than what the Debtors propose to pay here.

25 Opposition, 2:12-15.  The Opposition attaches this chart as Exhibit "1" (the

26 "Chart").  However, this appears to be a situation of "garbage in, garbage out."

27    The first indication that the Chart is useless to the Court, has no

28 probative value, and is apparently deliberately designed to misleadingly

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   understate compensation levels for officers, is the fact that it measures "base

2   salary". Base salary is not total compensation. Base salary is only one

3   component of total compensation. Base salary may be the *smaller* component of

4   total compensation. It may very well be that if BDO had run the Chart to show

5   total compensation instead of simply "base salary", the median compensation paid

6   to CEOs and Presidents would be substantially in excess of what the Debtors

7   seek authorization to continue to pay Mark Simo and Brian Simo here. The chart

8   attached hereto as Exhibit "1", as further addressed in the declaration of John

9   Ferneborg, suggests that this is precisely the case. There, total compensation

10  appears *50% higher* than base salary.

11          The second indication that Chart is useless to the Court is that it

12  appears to compare companies based only on industry type and revenue size.

13  Opposition, 9:24. The Opposition does not explain why the NFRS/SHI

14  Committees did not deem it relevant to look at other factors such as geographic

15  location or total number of employees, nor does it explain how looking at such

16  other factors would affect the results purportedly obtained in these comparisons.

17  The Opposition nowhere explains why the NFRS/SHI Committees believe that a

18  comparison of companies using such data points as geographic location and

19  number of employees is not relevant.

20          If the NFRS/SHI Committees had chosen to add such data points to

21  their analysis, it is very likely that they would obtain data such as that contained in

22  Exhibit "1" hereto. The Debtors submit that the chart attached hereto as Exhibit

23  "1" is a much more useful guidepost for determining the reasonableness of total

24  compensation to Brian Simo and Mark Simo here. At the very least, the Chart

25  used by the NFRS/SHI Committees, which appears to undercut total

26  compensation by at least fifty percent, must be given little weight.

27

28

## CONCLUSION

The NFRS/SHI Committees have apparently failed to review the Motion or the Response, and raise issues in the Opposition that are not issues at all, for they have already been answered in pleadings filed before this Court. For evidence, the Opposition attaches a single page showing two surveys that for companies with similar revenue, but not necessarily similar employee size, and not necessarily located in Southern California, the median "base salary" for CEOs and Presidents is less than what the Debtors seek here. So what? The NFRS/SHI Committees are comparing apples to oranges. The question before the Court is the appropriate level of *total compensation*. For the foregoing reasons, the Debtors submit that the compensation the Debtors seek authority to continue to pay is reasonable, and asks that the Opposition be overruled in its entirety. Nonetheless, the Debtors are prepared to reduce the salaries for Mark Simo and Brian Simo from $468,000 for each of them to $400,000 for each of them and request that the Court approve these reduced salaries.

DATED: May 4, 2011

**Sulmeyer**Kupetz
A Professional Corporation


By: _____
Steven F. Werth
Bankruptcy Counsel for No Fear Retail Stores, Inc., No Fear MX, Inc., and Simo Holdings, Inc., Debtors and Debtors in Possession

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**DECLARATION OF SCOTT BENJAMIN**

I, Scott Benjamin, declare:

1.    I have personal knowledge of the facts contained in this declaration.  I can testify that said facts are true and correct.

2.    I make and execute this declaration in support of the "Reply To No Fear Retail Stores, Inc. And Simo Holdings, Inc. Committees' Opposition To Debtors' Motion For Entry Of An Order Authorizing Compensation Of Insiders On A Final Basis Nunc Pro Tunc To February 24, 2011 (the "Reply").  Capitalized terms not otherwise defined herein have the meanings given them in the Reply.

3.    I am a director and the executive vice president, general counsel and secretary of each of No Fear Retail Stores, Inc. ("NFRS"), Simo Holdings, Inc. ("Simo Holdings") and No Fear MX, Inc. ("NFMX," and together with NFRS and Simo Holdings, the "Debtors").  I have served in those capacities since joining the Debtors in 2007.

4.    I am responsible for all legal affairs of the Debtors.

5.    On the afternoon of May 3, 2011, I participated in a conference call with David Kupetz and Steve Werth of SulmeyerKupetz, general bankruptcy counsel for the Debtors, and Jeffrey Dulberg, counsel for the Official Committee of Unsecured Creditors of NFRS and the Official Committee of Unsecured Creditors of SHI (collectively, the "NFRS/SHI Committees").  The parties engaged in a conversation in which we answered all of the questions articulated by the NFRS/SHI Committees' counsel.  During this conversation, among other things, I discussed the actions the Debtors took pre-petition to reduce salaries during the economic downturn.

6.    The duties of Mark Simo and Brian Simo can be briefly summarized as follows:

Mark Simo:  CEO of the Debtors.

• Founded company in 1990 with Brian Simo
• Sets strategy and vision for businesses

11

- Develops, tests, implements business models, markets, products
- Sets budgets, secures capital resources
- Selects, develops, and leads senior management teams
- Primarily engaged in repositioning and licensing Debtors' brands

<u>Brian Simo</u>:  President of the Debtors.
- Founded company in 1990 with Mark Simo
- Manages day-to-day operations of retail store business
- Manages inventory selection, inventory upgrades, and inventory sourcing
- Manages store location selection, operations, merchandising
- Identifies and selects new products and vendors

7.    Mark Simo and Brian Simo are also on the Boards of Directors of the Debtors, which review and approve business strategies, oversee execution by management of those strategies, review and approve corporate financial objectives, and select senior executives.

8.    For all of the above services, as identified more fully in the Motion, Mark Simo received total compensation from the Debtors, for the time period of 2008, 2009, and 2010, the amount of $520,000, $166,000, and $445,000 respectively.  For Brian Simo, the amount of total compensation he received from the Debtors was $520,000, $484,000, and $501,000 during that same time period. Prior to the Petition Date in 2011, the salaries for both Mark Simo and Brian Simo were $468,000.

9.    The Debtors are not seeking to tie any payments to Mark Simo or Brian Simo to a royalty or any other incentive-based structure.  The Debtors propose to pay them a flat salary (a salary-only compensation arrangement with the Debtors has been in place for Mark Simo and Brian Simo since 2006).  There will be no further compensation component.    During their May 3, 2011

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  teleconference, the Debtors attempted to impress upon the NFRS/SHI

2  Committees' counsel that Mark Simo and Brian Simo receive only a salary now,

3  and have only received a flat salary (no incentive or royalty component to their

4  pay) since 2006.  That structure is no longer used.  The employment agreements

5  attached to the Opposition are out of date, have expired by their terms, and are no

6  longer used.

7      I declare under penalty of perjury under the laws of the United States of America

8  that the foregoing is true and correct.

9      Executed this 4th day of May, 2011, at Carlsbad, California.

10

11

12  Scott Benjamin

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

## DECLARATION OF GEORGE BLANCO

I, George Blanco, declare:

1.    I have personal knowledge of the facts contained in this declaration.  I can testify that said facts are true and correct.

2.    I make and execute this declaration in support of the "Reply To No Fear Retail Stores, Inc. And Simo Holdings, Inc. Committees' Opposition To Debtors' Motion For Entry Of An Order Authorizing Compensation Of Insiders On A Final Basis Nunc Pro Tunc To February 24, 2011 (the "Reply").  Capitalized terms not otherwise defined herein have the meanings given them in the Reply.

3.    I am the Managing Director of Avant Advisory Group (www.avantadvisory.com), a consulting firm specializing in advising troubled companies on the development and implementation of solutions that result in returning businesses to operational health ("Avant"), and have served in that capacity for many years.  I am a nationally known turnaround expert with more than twenty-five years of experience in restructuring companies and serving as a chief restructuring officer of debtors.  I am familiar with the business operations of Avant and I am authorized to speak on its behalf.

4.    I have successfully assisted debtors in numerous chapter 11 cases and have also served as CRO and assisted numerous companies outside of chapter 11 bankruptcy.  As part of the work I perform as CRO for my clients, I review officer compensation and retention programs. I am very familiar with the salary ranges for officers of middle-market companies, including common bonus structures, and I am familiar with the typical roles and responsibilities of officers of such companies.

5.    On April 20, 2011, the Debtors filed a "Motion Of Debtors And Debtors In Possession For Order Appointing George Blanco As Chief Restructuring Officer" (the "Blanco Application").  In the Blanco Application, the Debtors seek to employ me and Avant as the CRO of the Debtors.  The Blanco

14

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  Application will be heard by the Court on May 5, 2011.  The Blanco Application

2  has the support of the NFRS/SHI Committees.

3      6.      I began providing CRO services to the Debtors on April 13, 2011.

4      7.      Prior to April 13, 2011, neither I nor Avant Advisory Services had any

5  connection to the Debtors or their officers

6      8.      Since April 13, 2011, I have worked almost full time in providing the

7  Debtors with restructuring services in these bankruptcy cases.  Since this date I

8  have become immersed in reviewing the Debtors' business operations and have

9  become familiar with the Debtors' finances.  As a result of this work I have also

10 become familiar with the Debtors' businesses, the Debtors' officers, and their roles

11 and responsibilities.

12     9.      During my weeks of work with the Debtors, I have become familiar

13 with the roles and responsibilities of Mark Simo, the CEO of the Debtors.  I have

14 observed  Mark Simo  supervise  the  day-to-day  operations  of  the  Debtors',

15 including supervising global brand management issues, handling strategic vendor

16 relationships, analyzing operating results, directing appropriate following actions to

17 improve operating performance, and providing day-to-day and general guidance to

18 the management team.  Based on my observation of Mark Simo, I believe he is

19 taking on the role of preserving and maximizing the value of the estates in good

20 faith.

21     10      Additionally, I have become familiar with the services and duties of

22 Brian Simo, the President of the Debtors.  I have observed Brian Simo supervise

23 the day-to-day operations of the Debtors and their retail stores, including focusing

24 on all aspects of store operations, managing all aspects of product and store

25 merchandising,  handling  all  day-to-day  aspects  of  vendor  relationships,

26 conducting specific product buying activities,  and overseeing the design of T-

27 shirts which accounts for approximately 25 percent of the Debtors' retail sales.

28

1   Based on my observation of Brian Simo, I believe he is taking on the role of
2   preserving and maximizing the value of the estates in good faith.

3       11.    I believe Mark Simo and Brian Simo face many additional challenges
4   in these cases that are different from the challenges that normally face senior
5   management of a company of this size, including the fact that Mark Simo and
6   Brian Simo cannot be assured of their continuing involvement in a going-forward
7   business enterprise, and the fact that these cases could result in a sale/financing
8   process whereby new management will be brought in to manage the Debtors.

9       12.    Additional further factors exist in determining whether the proposed
10  salaries are reasonable here.  First, a significant reduction in salary could divert
11  the attention of the senior executives who are most needed to drive sales, acquire
12  inventory for the stores, maximize the value of the brand, and identify and secure
13  licensing arrangements for the Debtors' intellectual property.  Second, a significant
14  reduction in salary could impact the loyalty and momentum which currently exists
15  at the top level of management, which could result in a significantly greater loss of
16  value.  In the Debtors' case in particular, Mark Simo and Brian Simo represent the
17  Debtors' best option for driving the perceived value of the Debtors' brands and
18  licensing.    Third, the ability to get additional trade vendor support during the
19  Chapter 11 proceeding is largely dependent on the relationships of Mark Simo and
20  Brian Simo.  The increase in inventory and product availability will be critical to
21  shoring up the needed working capital to operate the business during the next
22  several months.

23      13.    I am familiar with the levels of compensation received by senior
24  officers of closely-held companies of a similar size and type as the Debtors.  The
25  compensation ranges for companies of this kind are broad, and depend upon
26  industry,  geographic  location,  number  of  employees,  and  other  factors.
27  Compensation levels are affected by whether executives receive equity and bonus
28  compensation, which can include bonuses of between 50% and 100% of the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

salary for a CEO and between 50% and 75% of the salary for a President. Further, non-owner equity in the form of stock options can also be a key component of compensation that may otherwise cause posted survey results to show base salary compensation plans to be lower.

14.    Based upon my experience, expertise, knowledge and review of the roles and responsibilities of Mark Simo and Brian Simo in these cases, the Debtors' industry, the geographic location of the Debtors, the size and nature of the Debtors' business, its number of employees, and the fact that the Debtors are not proposing to pay the Debtors' senior management any bonus or other remuneration, the proposed salaries of $468,000 for Mark Simo and $468,000 for Brian Simo are within the range of reasonableness.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 4th day of May, 2011, at San Diego, California.

George Blanco

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**DECLARATION OF JOHN R. FERNEBORG**

I, John Ferneborg, declare:

1.     I have personal knowledge of the facts contained in this declaration. I can testify that said facts are true and correct.

2.     I make and execute this declaration in support of the "Reply To No Fear Retail Stores, Inc. And Simo Holdings, Inc. Committees' Opposition To Debtors' Motion For Entry Of An Order Authorizing Compensation Of Insiders On A Final Basis Nunc Pro Tunc To February 24, 2011 (the "Reply"). Capitalized terms not otherwise defined herein have the meanings given them in the Reply.

3.     I am Senior Partner and Co-Founder of The Ferneborg Group, an executive search firm (www.execsearch.com) with a worldwide reputation in finding and placing top executive candidates with clients that span across different industry sectors and range from start-up ventures to Fortune 500 companies. I have over 30 years experience in placing executive candidates at companies worldwide. I have previously served as the Vice Chairman of the Association of Executive Search Consultants (AESC) and was named by Business Week magazine as one of the 150 most influential head-hunters in the world. I have extensive knowledge of executive compensation rates and ranges in middle-market businesses in a wide range of industries, including retail, apparel and brand licensing.

4.     Other than stated herein, I have no prior relationship with the Debtors or any of their officers or directors.

5.     Executive compensation at closely-held companies is not an exact science, but is determined by a number of factors, including a company's geographic location, its nature and type, its number of employees, and its revenue. Many companies have a salary component to their cash compensation of executive, and a bonus or royalty-based component to their compensation. For companies with a "two component" compensations structure such as this, any

18

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

survey that looks exclusively at a salary component of compensation will underestimate the total cash compensation to an executive. In the Debtors' case, the Debtors propose to pay Mark Simo and Brian Simo a straight salary—neither will receive any further cash compensation of any kind.   Thus, a comparison of "salary to salary" between companies may not provide useful data.   The true comparison needed is one of total cash compensation.

6.     Provided that one compares like terms, a range of reasonableness on executive salaries may be determined by comparison of that company to companies of a similar nature.  The credibility of this result depends directly upon the degree of similarity between the compared companies, which as with individuals is necessarily inexact.  To best make these comparisons, one should look not only at yearly revenue, but at geographic location, size, nature, and number of employees.

7.     For instance, when one performs a search on www.salary.com, which uses CompAnalyst to provide users with data as to the compensation of executives identified by title, region and size, the results show that for companies in a specific industry (Retail & Wholesale) located in a specific location (San Diego, California Metropolitan Area) with 400 full time employees (the number of the Debtors' full time employees), the results show total compensation for CEOs (as opposed to the base salary for CEOs) averages approximately $936,000, and the total compensation for chief operating officers averages approximately $527,000. The total average compensation for these two positions, $1,463,000, is more than 50% greater than the combined proposed salaries of Mark Simo and Brian Simo.  I have reviewed this search result and based upon my experience, expertise, and knowledge, believe it to be an accurate survey of company compensation of this kind. A true and correct copy of this survey result is attached to the Motion as Exhibit "1".

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

8.      The Chart attached to the Opposition appears to measure "base salary." Base salary is not total compensation. Base salary is only one component of total compensation. Base salary may even be the *smaller* component of total compensation. It may very well be that if the Chart to showed total compensation instead of simply "base salary", the median compensation paid to CEOs and Presidents would be substantially in excess of what the Debtors propose to pay Mark Simo and Brian Simo here. The chart attached to the Motion as Exhibit "1" suggests that this is precisely the case. There, total compensation appears to be approximately *50% higher* than base salary.

9.      Based upon my experience, expertise, knowledge and review of the roles and responsibilities of Mark Simo and Brian Simo in these cases, the geographic location of the Debtors, the size and nature of the Debtors' business, its number of employees, and the fact that the Debtors are not proposing to pay the Debtors' senior management any bonus and the Debtors' senior management will receive no other remuneration from the Debtors though any other means, the proposed total cash compensation of $468,000 for Mark Simo and $468,000 for Brian Simo is within the range of reasonableness.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 4th day of May, 2011, at San Mateo, California.

John Ferneborg

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

# Exhibit 1

EXHIBIT 1
21

# Salary Wizard Professional

**Salary.com**

April 29, 2011

## Summary Report: Multiple Jobs

### Selected scope

| | |
|---|---|
| **Industry** | Retail & Wholesale |
| **Size** | 200 - 500 (FTEs) |
| **Geography** | San Diego (Metro) |

| Source: Salary.com Market Analysis | | | | | | | | | Data effective April 01, 2011 |
|---|---|---|---|---|---|---|---|---|---|
| Currency: US Dollars (000s) † | | | | | | | | | |
| | | | **Base** | | | | **TCC** | | |
| Job Title | #orgs | #incs | 25th% | 50th% | 75th% | Avg | 25th% | 50th% | 75th% | Avg |
| Chief Executive Officer | 999++ | 1,300++ | $374.0 | $489.4 | $634.9 | $510.2 | $514.0 | $788.5 | $1,233.1 | $935.7 |
| Chief Financial Officer | 999++ | 1,200++ | $229.2 | $291.8 | $367.5 | $303.9 | $296.2 | $422.1 | $610.2 | $479.5 |
| Chief Operating Officer | 550++ | 600++ | $236.1 | $301.5 | $383.7 | $313.7 | $309.3 | $447.7 | $672.1 | $526.9 |

\+   Analysis based on at least this many orgs/incs that fully match the selected scope.
\++ Analysis based on at least this many orgs/incs that partially match the selected scope.
\*   Analysis based on all orgs/incs adjusted for selected scope.

Copyright 2011, Salary.com, Inc.

Salary.com's compensation analysts strictly adhere to professional compensation standards and principles when pricing and analyzing jobs. Refer to the statement on methodology for more information.

**EXHIBIT 1**
22

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
333 South Hope Street, Thirty-Fifth Floor, Los Angeles, California  90071-1406

A true and correct copy of the foregoing document described as **REPLY TO NO FEAR RETAIL STORES, INC. AND SIMO HOLDINGS, INC. COMMITTEES' OPPOSITION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING COMPENSATION OF INSIDERS ON A FINAL BASIS NUNC PRO TUNC TO FEBRUARY 24, 2011; DECLARATION OF SCOTT BENJAMIN; DECLARATION OF GEORGE BLANCO; DECLARATION OF JOHN FERNEBORG** will be served or will be served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On  May 4, 2011  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address indicated below:

| | | |
|---|---|---|
| ➢ | Robert R. Barnes — Landlords Affiliated with General Growth Properties | bbarnes@allenmatkins.com |
| | | bcrfilings@allenmatkins.com |
| ➢ | Jeffrey D. Cawdrey — Jido & Juniar, Inc. | jcawdrey@gordonrees.com |
| | | ebojorquez@gordonrees.com |
| ➢ | Jeffrey W. Dulberg — No Fear Retail Stores Creditors' Committee | jdulberg@pszjlaw.com |
| ➢ | Mary Testerman Duvoisin — OUST | mary.m.testerman@usdoj.gov |
| ➢ | Christine Fitzgerald — Secured Creditor Don Emler/FMF Racing | cfitzgerald@scckg.com |
| ➢ | Roger F. Friedman — Secured Creditor Don Emler/FMF Racing | rfriedman@rutan.com |
| ➢ | Thomas M. Geher — Ultimate Brand Management, LLC | tmg@jmbm.com |
| ➢ | Jeffrey Goodfried — 5060 Montclair Plaza Lane Holdings, LLC | jgoodfried@perkinscoie.com |
| ➢ | Charles B. Harris — Robin Houston | charris@airlegal.net |
| ➢ | Sue J. Hodges — Credit Cash NJ, LLC | sue.hodges@klgates.com |
| ➢ | Mark S. Hoffman — LFP Apparel, LLC | mshllh@aol.com |
| ➢ | Haeji Hong — OUST (SD) | Haeji.Hong@usdoj.gov |
| ➢ | Brian D. Huben — The Macerich Company | brian.huben@kattenlaw.com |
| | | carole.levine@kattenlaw.com |
| ➢ | Gregory K. Jones | gjones@stutman.com |
| ➢ | Gregory Jung | gjung@wendel.com |
| ➢ | David S. Kupetz — Debtor No Fear Retail Stores, Inc. | dkupetz@sulmeyerlaw.com |
| ➢ | Ramon Naguiat — 1903 Onshore Funding, LLC | Ramon.Naguiat@skadden.com |
| ➢ | Jeffrey N. Pomerantz — No Fear Retail Stores Creditors' Committee | jpomerantz@pszjlaw.com |
| | | scho@pszjlaw.com |
| ➢ | Daniel Silva — Jido & Juniar, Inc. | dsilva@gordonrees.com |
| ➢ | Steven F. Werth — Debtor No Fear Stores, Inc. | swerth@sulmeyerlaw.com |
| ➢ | Dennis J. Wickham — Cobra-Blackmore, LP | wickham@scmv.com |
| | | havard@scmv.com |

☐ Service Information continued on attached page.

**II.    SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On _____  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service Information continued on attached page.

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P.5 and/or controlling LBR, on  May 4, 2011  I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method ) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service Information continued on attached page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| May 4, 2011 | Lauren Dionneau | *Lauren Dion* |
| *Date* | *Type Name* | *Signature* |

<u>ADDITIONAL SERVICE INFORMATION</u> (if needed):

## INTERESTED PARTIES — SERVED VIA E-MAIL

| | |
|---|---|
| ➤ George Blanco. — (CRO) No Fear Retail/MX/Simo | gblanco@avantadvisory.com |
| ➤ Jonathan Brown, Esq. — LFP Apparel, LLC | jbrown@lglaw.com |
| ➤ Bill Bussiere — Rep. for No Fear Retail Stores Creditors' Committee La Jolla Group | bill.bussiere@lajollagroup.com |
| ➤ John O. Cronin, Esq. — Heather Moates | john@croninandcronin.com |
| ➤ Joel F. Crystal, Esq. — Centro Properties Group/Centro Independence, LLC | joel.crystal@centroprop.com |
| ➤ Van C. Durrer II, Esq. — 1903 Onshore Funding LLC (Gordon Bros.) | van.durrer@skadden.com |
| ➤ Don Elmer — Simo Creditors' Committee FMF Racing | Dre@fmfracing.com |
| ➤ Josh Garver — Venturi & Co., LLC | jgarver@venturico.com |
| ➤ Ken Glowacki — Interested Party | kglowacki@gibsondunn.com |
| ➤ Ivan M. Gold, Esq. | igold@allenmatkins.com |
| ➤ Barry R. Gore, Esq. — Secured Creditor Don Emler/FMF Racing | bgore@scckg.com |
| | lee@fmfracing.com |
| ➤ Lorraine Green, Analyst — OUST (SD) | Lorraine.green@usdoj.com |
| ➤ Laith Haisha — Simo Creditors' Committee Jido & Juniar, Inc. | laith@jandjclothing.com |
| ➤ Jared Hickey — Serigraphic Screen Printing | Jared@serigraphic-screen.com |
| ➤ Nicole Kelley — Orange 21 N.A., Inc. | nkelley@o21na.com |
| ➤ Josh Kritman — No Fear MX Creditors' Committee Mage Design, LLC | josh@snrgy.net |
| ➤ Dean Landis — Secured Creditor Credit Cash NJ, LLC | dlandis@egcap.com |
| | jricchiuti@egcap.com |
| ➤ Thomas J. Leanse, Esq. — The Macerich Company/Westfield, LLC. | thomas.leanse@kattenlaw.com |
| ➤ Jamie Leigh Middleton — Simo Creditors' Committee | Email4JLM@aol.com |
| ➤ Cecilia Morales — Firemaster | cemorales@firemaster-mpc.com |
| ➤ Jorge Navarro — No Fear MX Creditors' Committee Silver Triangle Industries | silverind@aol.com |
| ➤ Ernie Zachary Park, Esq. — The Irvine Co., LLC | ernie.park@bewleylaw.com |
| ➤ Jeffrey M. Pomeroy — Rep. for NFRS Creditors' Comm. Reno Retail Company, LLC | jpomeroy@bayerproperties.com |
| ➤ Drina Scheiber — Paymentech | dscheiber@thebartgroup.com |
| ➤ Jeff Surwall — No Fear MX Creditors' Committee J2 LLC | surwall@yahoo.com |
| ➤ Matthew B. Venturi — Venturi & Co., LLC | mventuri@venturico.com |
| ➤ Ryan White— Rep. for NFRS Creditors' Committee SRH Productions Inc. | Ryan@srh.com |

LDIONNEAU\ 716587.1