1 | David S. Kupetz (CA Bar No. 125062)
      dkupetz@sulmeyerlaw.com
2 | Steven F. Werth (CA Bar No. 205434)
      swerth@sulmeyerlaw.com
3 | **Sulmeyer**Kupetz
   | A Professional Corporation
4 | 333 South Hope Street, Thirty-Fifth Floor
   | Los Angeles, California  90071-1406
5 | Telephone: 213.626.2311

6 | Bankruptcy Counsel for No Fear Retail
   | Stores, Inc. Simo Holdings, Inc, and No
7 | Fear MX, Inc., Debtors and Debtors in
   | Possession

8

*(Left vertical margin text:)* SulmeyerKupetz, A Professional Corporation  333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR  LOS ANGELES, CALIFORNIA 90071-1406  TEL 213.626.2311 • FAX 213.629.4520

## UNITED STATES BANKRUPTCY COURT

### Southern District of California

In re

NO FEAR RETAIL STORES, INC., a California corporation, SIMO HOLDINGS, INC., a California corporation, and NO FEAR MX, INC., a California corporation,

Related Debtors.

Employer ID Nos. 20-5238208, 93-1037856, 26-0432196

Case No.  11-02896-MM11

(Jointly Administered with Case Nos. 11-02897-MM11; 11-02898-MM11)

Chapter 11 Cases

**EX PARTE MOTION FOR ORDER SHORTENING TIME PURSUANT TO LOCAL BANKRUPTCY RULE 9013-6(a)(1)(F) RE MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR ORDER AUTHORIZING EXTENSION OF EXCLUSIVITY FOR DEBTORS (1) TO FILE DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION AND (2) TO SOLICIT ACCEPTANCES OF PLAN OF REORGANIZATION; DECLARATION OF STEVEN F. WERTH**

**Local Bankruptcy Rules 9013-6(a)(1)(F) & 9006**

DATE:     [No Hearing Required]
TIME:      [No Hearing Required]]
PLACE:  U.S. Bankruptcy Court
             325 West "F" Street
             San Diego, CA 92101

SWERTH\ 718299.1                                    1

TO THE HONORABLE MARGARET M. MANN, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, SECURED CREDITORS OF RECORD, THE OFFICIAL COMMITTEES OF UNSECURED CREDITORS, AND PARTIES ENTITLED TO NOTICE:

## MOTION

No Fear Retail Stores, Inc. ("NFRS"), Simo Holdings, Inc. ("Simo Holdings"), and No Fear MX, Inc. ("NFMX", and together with NFRS and Simo Holdings, the "Debtors") debtors and debtors in possession in the above-captioned cases, hereby submit their "Ex Parte Motion For Order Shortening Time Pursuant To Local Bankruptcy Rule 9013-6(a)(1)(F) Re Motion Of Debtors And Debtors In Possession For Order Authorizing Extension Of Exclusivity For Debtors (1) To File Disclosure Statement And Plan Of Reorganization And (2) To Solicit Acceptances Of Plan Of Reorganization") (the "Motion"), and represent as follows:

1.    This Motion is brought by the Debtors.  The Debtors filed voluntary petitions for relief under title 11 of the United States Code on February 24, 2011.  Pursuant to 11 U.S.C. §§ 1107 and 1108, the Debtors are acting as debtors in possession and continue to manage and operate their business.  No trustee or examiner has been appointed in these cases.

2.    As detailed in the declaration of Mark Simo, attached to the "Motion Of Debtors And Debtors In Possession For Order Authorizing Extension Of Exclusivity For Debtors (1) To File Disclosure Statement And Plan Of Reorganization And (2) To Solicit Acceptances Of Plan Of Reorganization" (the "Exclusivity Motion") attached hereto as **Exhibit "1"** and incorporated herein by reference, the Debtors are related entities that are operated and function together as a business enterprise that primarily involves the retail sale of casual apparel and accessories as well as protective motocross equipment and the licensing of intellectual property rights.

3.    Through the Exclusivity Motion, the Debtors request that the 120-day and 180-day time periods set forth in Sections 1121(b) and (c)(3) be extended an additional

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SWERTH\ 718299.1

2

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  sixty (60) days (such that the exclusivity period for the filing of the plan shall be extended

2  to through and including August 23, 2011 and the exclusive period for soliciting and

3  securing acceptances of the plan shall be extended to through and including October 22,

4  2011). The Exclusivity Motion is made on the grounds that the Debtors are evaluating

5  their operations, are identifying and vetting funding sources to finance a plan of

6  reorganization, and are in the process of developing a plan of reorganization. The

7  Debtors require an additional 60-day extension of the exclusive period in order to

8  focus on these tasks without the distractions, misdirection of resources, and

9  administrative expense that the termination of the exclusivity periods could cause.

10      4.    On May 11, 2011 and May 12, 2011 the Debtors' bankruptcy counsel

11  contacted the Court regarding a hearing date for the Exclusivity Motion so that it

12  may be heard prior to June 24, 2011 deadline. The Court informed the Debtors

13  that the closest hearing date available to June 24, 2011 which was also prior to

14  that deadline was June 10, 2011 at 9:00 a.m. The Debtors understand that the

15  Local Rules of the Southern District of California require 31 days notice of a

16  hearing when such notice is being served in part by mail, so the Debtors are no

17  longer able to provide such notice as of the present date.

18      5.    The nature of the relief requested in the Exclusivity Motion requires

19  that it be heard before June 24, 2011, as that is the date that exclusivity

20  terminates for the Debtors. Because the latest such date that is available to the

21  Court to do so, but which is prior to June 24, 2011, will cause the Debtors to be

22  unable to give 31-day notice of a hearing that is normally required for such a

23  motion, the Debtors seek a hearing on shortened time so that the Exclusivity

24  Motion may be heard.

25      **WHEREFORE** the Debtors respectfully request that the Exclusivity Motion be

26  heard on shortened time on such day as the Court will allow, and that the Debtors be

27  allowed to provide parties entitled to notice of the Exclusivity Motion on such appropriate

28

SWERTH\ 718299.1        3

1  terms as the Court may allow, and for such other and further relief as the Court deems

2  just and proper.

3

4  DATED: May 13, 2011                    Respectfully submitted,

5                                         **Sulmeyer**Kupetz
                                          A Professional Corporation

6                                         By: _____

7                                             Steven F. Werth
                                              Bankruptcy Counsel for No Fear Retail
8                                             Stores, Inc. Simo Holdings, Inc, and No
                                              Fear MX, Inc., Debtors and Debtors in
9                                             Possession

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### THE COURT MAY SHORTEN TIME FOR NOTICE OF THE HEARING ON THE

### EXCLUSIVITY MOTION

Pursuant to Local Bankruptcy Rule 9006-1(f) and Rule 9006(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court may shorten the time period for notice of hearing on a motion.  Bankruptcy Rule 9006(c) specifically provides as follows:

> (c)    Reduction.
>
> (1)    In General.  Except as provided in paragraph (2) of this subdivision, when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown, may in its discretion with or without motion or notice order the period reduced.
>
> (2)    Reduction Not Permitted.  The court may not reduce the time for taking action under Rules 2002(a)(7),   2003(a),   3002(c),   3014,   3015, 4001(b)(2),  (c)(2),  4003(a),  4004(a),  4007(c), 4008(a), 8002, and 9033(b).  In addition, the court may not reduce the time under Rule 1007(c) to file the statement required by Rule 1007(b)(7).

Fed. R. Bankr. P. 9006(c).

In general, the Court should exercise its power under Section 105(a) of the Bankruptcy Code and Rule 1001 of the Federal Rules of Bankruptcy Procedure to implement the Bankruptcy Rules in a manner that is fair and equitable and in the best interest of the estate.  Such concerns dictate that the Exclusivity Motion be heard on shortened notice as there is ample cause warranting an expedited hearing.

/ / /

/ / /

/ / /

/ / /

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

## II.

## THE COURT MAY APPROVE THE FORM AND SCOPE OF NOTICE ON THE

## EXCLUSIVITY MOTION

Rules 2002(m) and 9007 of the Federal Rules of Bankruptcy Procedure authorize the Court to regulate the content of notice and to whom and for which matters notice may be required to be given.  Rule 2002(m) states that

> Orders Designating Matter of Notices.  The court may from time to time enter orders designating the matters in respect to which, the entity to whom, and the form and manner in which notices shall be sent except as otherwise provided by these rules.

Rule 9007 provides as follows:

> When notice is to be given under these rules, the court shall designate, if not otherwise specified herein, the time within which, the entities to whom, and the form and manner in which the notice shall be given.  When feasible, the court may order any notices under these rules to be combined.

Here, the Debtors seek to shorten the time for hearing on the Exclusivity Motion such that a hearing takes place on or about June 10, 2011, which is the date the Debtors understand to be the last available date for the Court to hear the Exclusivity Motion prior to June 24, 2011.  As the Debtors require a hearing on the Exclusivity Motion before June 24, 2011 or will be forced to file a chapter 11 plan before they have had reasonable time to prepare to do so, there is good cause for a hearing on shortened time.

If approved, the Debtors intend to serve notice of the hearing on the Exclusivity Motion on the Office of the United States Trustee, the Official Committees of Unsecured Creditors in these cases, any secured creditors of the Debtors, and any parties that have filed request for special notice.  Accordingly, the Debtors respectfully request that the Court approve the proposed notice as requested herein.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

III.

## CONCLUSION

Based on the foregoing, the Debtors respectfully request that the Motion be granted, that a hearing on the Exclusivity Motion be scheduled on or about June 10, 2011, and for such other and further relief as the Court deems just and proper.

DATED: May 13, 2011                    Respectfully submitted,

**Sulmeyer**Kupetz
A Professional Corporation

By: _____
Steven F. Werth
Bankruptcy Counsel for No Fear Retail
Stores, Inc. Simo Holdings, Inc, and No
Fear MX, Inc., Debtors and Debtors in
Possession

SWERTH\ 718299.1                              7

# DECLARATION

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

## DECLARATION OF STEVEN F. WERTH

I, Steven F. Werth, declare:

1.     I am an attorney at law duly admitted to practice before this Court and am one of the attorneys responsible for the representation of No Fear Retail Stores, Inc. ("NFRS"), Simo Holdings, Inc. ("Simo Holdings"), and No Fear MX, Inc. ("NFMX", and together with NFRS and Simo Holdings, the "Debtors"), debtors and debtors in possession herein. Each of the facts contained in this declaration is based on personal knowledge and, if called as a witness, I could and would competently testify thereto under oath.

2.     Capitalized terms have the meanings given to them in the Motion to which this Declaration is attached.

3.     This Motion is brought by the Debtors, which filed voluntary petitions for relief under title 11 of the United States Code on February 24, 2011. Pursuant to 11 U.S.C. §§ 1107 and 1108, the Debtors are acting as debtors in possession and continue to manage and operate their business. No trustee or examiner has been appointed in these cases.

4.     As detailed in the declaration of Mark Simo, attached to the "Motion Of Debtors And Debtors In Possession For Order Authorizing Extension Of Exclusivity For Debtors (1) To File Disclosure Statement And Plan Of Reorganization And (2) To Solicit Acceptances Of Plan Of Reorganization" (the "Exclusivity Motion") attached hereto as **Exhibit "1"** and incorporated herein by reference, the Debtors are related entities that are operated and function together as a business enterprise that primarily involves the retail sale of casual apparel and accessories as well as protective motocross equipment and the licensing of intellectual property rights.

5.     Through the Exclusivity Motion, the Debtors request that the 120-day and 180-day time periods set forth in Sections 1121(b) and (c)(3) be extended an additional sixty (60) days (such that the exclusivity period for the filing of the plan shall be extended to through and including August 23, 2011 and the exclusive period for soliciting and

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  securing acceptances of the plan shall be extended to through and including October 22,

2  2011).  The Exclusivity Motion is made on the grounds that the Debtors' parallel

3  processes of evaluating the Debtors' business operations and identifying and vetting

4  funding sources to finance a plan of reorganization are underway and will require

5  significant further time and effort, justifying an extension of the exclusive period.

6      6.      On May 11, 2011 and May 12, 2011 I contacted the Court regarding a

7  hearing date for the Exclusivity Motion so that it may be heard prior to June 24,

8  2011 deadline.  The Court informed me that the closest hearing date available to

9  June 24, 2011 which was also prior to that deadline was June 10, 2011 at 9:00

10  a.m.  I understand that the Local Rules of the Southern District of California

11  require 31 days notice of a hearing when such notice is being served in part by

12  mail, so the Debtors are no longer able to provide such notice as of the present

13  date.

14      7.      The nature of the relief requested in the Exclusivity Motion requires

15  that it be heard before June 24, 2011, as that date that exclusivity terminates.

16  Because the latest such date that is available to the Court to do so, but which is

17  prior to June 24, 2011, will cause the Debtors to be unable to give 31-day notice of

18  a hearing that is normally required for such a motion, the Debtors seek a hearing

19  on shortened time so that the Exclusivity Motion may be heard.

20      8.      If approved, our office intends to serve notice of the hearing on the

21  Exclusivity Motion on the Office of the United States Trustee, the Official Committees of

22  Unsecured Creditors in these cases, any secured creditors of the Debtors, and parties

23  that have requested special notice.

24          I declare under penalty of perjury under the laws of the United States of

25  America that the foregoing is true and correct.

26          Executed this 13th day of May, 2011, at Los Angeles, California.

27          _____

28          Steven F. Werth

SWERTH\ 718299.1                                     9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

# EXHIBIT "1"

David S. Kupetz (CA Bar No. 125062)
    dkupetz@sulmeyerlaw.com
Steven F. Werth (CA Bar No. 205434)
    swerth@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California  90071-1406
Telephone:    213.626.2311
Facsimile:    213.629.4520

Bankruptcy Counsel for No Fear Retail
Stores, Inc. Simo Holdings, Inc, and No
Fear MX, Inc., Debtors and Debtors in
Possession

# UNITED STATES BANKRUPTCY COURT

## Southern District of California

In re

NO FEAR RETAIL STORES, INC.,
a California corporation, SIMO
HOLDINGS, INC., a California
corporation, and NO FEAR MX, INC.,
a California corporation,

            Related Debtors.

Employer ID Nos. 20-5238208, 93-1037856, 26-0432196

Case No.  11-02896-MM11

(Jointly Administered with Case Nos.
11-02897-MM11; 11-02898-MM11)

Chapter 11 Cases

**MOTION OF DEBTORS AND DEBTORS IN
POSSESSION FOR ORDER AUTHORIZING
EXTENSION OF EXCLUSIVITY FOR
DEBTORS (1) TO FILE DISCLOSURE
STATEMENT AND PLAN OF
REORGANIZATION AND (2) TO SOLICIT
ACCEPTANCES OF PLAN OF
REORGANIZATION; MEMORANDUM OF
POINTS AND AUTHORITIES;
DECLARATION OF MARK SIMO;
DECLARATION OF GEORGE BLANCO**

DATE:  [To Be Set]
TIME:   [To Be Set]
PLACE: U.S. Bankruptcy Court
          325 West "F" Street
          San Diego. CA 92101

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

AMUHTAR\ 713601.2

**TO THE HONORABLE MARGARET M. MANN, UNITED STATES BANKRUPTCY**

**JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE OFFICIAL**

**COMMITTEES OF UNSECURED CREDITORS AND THEIR COUNSEL, AND PARTIES**

**ENTITLED TO NOTICE:**

**MOTION**

No Fear Retail Stores, Inc. ("NFRS"), Simo Holdings, Inc. ("Simo Holdings"), and No Fear MX, Inc. ("NFMX", and together with NFRS and Simo Holdings, the "Debtors"), are the debtors and debtors in possession herein.  Pursuant to 11 U.S.C. §§ 1107 and 1108, the Debtors remains in possession of their assets and continue to operate their business as a debtors in possession.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

Through this "Motion of Debtor and Debtor in Possession for Order Authorizing Extension of Exclusivity for Debtors (1) to File Disclosure Statement and Plan of Reorganization and (2) to Solicit Acceptances of Plan of Reorganization" (the "Motion"), the Debtors request that the Court extend the 120-day and 180-day time exclusive time periods for the Debtors to file and solicit confirmation of a plan of reorganization. Pursuant to Section 1121(d) of the Bankruptcy Code, the Debtors request that the 120-day and 180-day time periods set forth in Sections 1121(b) and (c)(3) be extended an additional sixty (60) days (such that the exclusivity period for the filing of the plan shall be extended to through and including August 23, 2011 and the exclusive period for soliciting and securing acceptances of the plan shall be extended to through and including October 22, 2011) and that the Debtors be authorized to request additional extensions of time if such requests are necessary and appropriate within the requirements of Section 1121(d). As is discussed more fully below, sufficient cause exists to extend these time periods.

This Motion is based on the separately filed notice of Motion, the attached Memorandum of Points and Authorities and declarations of Mark Simo and George Blanco submitted in support thereof, the files and pleadings in the Debtors' cases, all

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  judicially noticeable facts, and the arguments and testimony to be presented at the

2  hearing on the Motion.

3  **WHEREFORE** the Debtors respectfully request that the Court enter an order:

4  (1)  granting this Motion;

5  (2)  authorizing an extension of time of sixty (60) days for the Debtors to

6  exclusively file and solicit acceptances of a plan of reorganization; and

7  (3)  granting such other and further relief as this Court deems just and proper

8  under the circumstances.

9  Dated: May 12, 2011                    Respectfully submitted,

10                                         **Sulmeyer**Kupetz
                                           A Professional Corporation
11

12

13  By:  _____
                                           Bankruptcy Counsel for No Fear Retail
14                                         Stores, Inc. Simo Holdings, Inc, and No
                                           Fear MX, Inc., Debtors and Debtors in
15                                         Possession

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

### I.

### FACTS

#### A.    Background

The Motion is brought by the Debtors, who commenced these cases by filing voluntary chapter 11 petitions on February 24, 2011.  The Debtors remain in possession of their assets and are acting as debtors in possession pursuant to Sections 1107(a) and 1108.

On March 4, 2011, this Court entered an order providing for joint administration of the chapter 11 cases of NFRS (Bankruptcy Case No. 11-02896-MM11), Simo Holdings (Bankruptcy Case No. 11-02898-MM11), and NFMX (Bankruptcy Case No. 11-02897-MM11).

The Debtors are related entities that are operated and function together as a business enterprise that primarily involves the retail and wholesale sale of casual apparel and accessories as well as protective motocross equipment and the development and licensing of intellectual property rights in consumer products brands.  The Debtors currently operate 41 retail stores in seven different states.  The Debtors lease stores through leases executed by NFRS.

#### B.    Factors That Precipitated These Chapter 11 Filings

The Debtors commenced these cases as a result of a combination of factors.  As a consumer business selling discretionary items, the Debtors have been negatively impacted by the recession that hit the United States in late 2007.  The downturn in consumer spending disproportionately impacted the Debtors given (i) the discretionary nature of their products, (ii) their target customer, and (iii) their geographic concentration.

The Debtors' businesses primarily consist of the retail sale of casual apparel

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning scribed to them in the foregoing Motion.

1  and accessories as well as protective motocross equipment.  These items are

2  discretionary purchases for consumers, which decreased significantly in the

3  economic downturn .  Further, much of the Debtors' customer base is made up of

4  "blue collar" workers, who have been hurt severely by the housing and labor

5  crises, and whose discretionary spending power has weakened substantially.  In

6  addition, the Debtors' retail stores are concentrated in California, Arizona and

7  Nevada -- three of the economically hardest-hit areas in the United States.

8       These factors resulted in declining comparable store sales and overall sales

9  for the last three years.  Sales declined approximately 20% in NFRS's fourth fiscal

10  quarter of 2010 compared to the fourth quarter of 2009 and same store sales were

11  down approximately 12% in fiscal 2010.  NFRS is bound by a number of long term

12  leases with landlords who generally were unwilling to renegotiate the terms of

13  those leases to reflect the fundamental changes that the recession has caused in

14  the retail industry generally and NFRS's business in particular.

15       The Debtors also are burdened by significant expenses incurred in a failed

16  attempt in 2009 and 2010 to raise capital through a proposed reverse merger a

17  public stock offering with Gatorz Inc.  The Debtors incurred approximately

18  $1,000,000 in professional fees, including legal and accounting fees, in order to

19  execute that financing transaction.  That financing ultimately failed.

20       Further, prior to the Petition Date, due to its inability to obtain necessary

21  financing, the Debtors' ability to purchase inventory for its stores was severely

22  impacted.  The resulting inventory deficiencies created a negative downward spiral

23  – the lack of inventory impaired store sales, which impacted cash flow, which, in

24  turn, further impaired the Debtors' ability to secure inventory.

25

26  **C.    Bankruptcy Proceedings**

27       The Debtors commenced these cases on February 24, 2011.  On February 25,

28  2011, the Debtors filed numerous "first day" motions before this Court, seeking

(among other things) authority to use cash collateral, to establish procedures relating to utility providers, to pay employees' priority prepetition claims, preserve existing cash management systems, reject twelve real property leases, and for joint administration of these cases.  These motions were granted by the Court.

On March 18, 2011, the Debtors filed a motion for order authorizing them to enter into a debtor-in-possession credit facility with Hilco Brands, LLC, and Infinity FS Brands, LLC, subject to allowing other lenders to present more favorable proposals [Docket #87], (the "Financing Motion").  On April 7, 2011, the Court entered an order granting the Financing Motion on an interim basis [Docket #145], (the "Interim Financing Order").

After entry of the Interim Financing Order, 1903 Onshore Funding, LLC, ("Onshore"), offered to provide post-petition financing on terms somewhat more favorable to the Debtors than those proposed by Hilco Brands, LLC, and Infinity FS Brands, LLC.  As a result, at a hearing on April 18, 2011, the Court granted the Financing Motion on a final basis and authorized the Debtors to enter into a post-petition financing agreement with Onshore.  An order granting the Financing Motion on a final basis was entered on April 25, 2011.  [Docket. No. 201].  Shortly thereafter, Onshore provided its funding to the Debtors under the credit facility approved by the Court.

In March and April 2011, the Debtors filed applications to retain general bankruptcy counsel, to retain Venturi & Company as a financial advisor, and to retain George Blanco with Avant Advisory Group, LLC as Chief Restructuring Officer.  These applications were granted by the Court at a hearing on May 5, 2011.  Moreover, the Debtors are actively engaging with the creditors' committees appointed in these cases, including (among other things) extensive communications with professionals employed by the NFRS and Simo Holdings committees, an initial  face-to-face meeting with the NFRS and Simo Holdings Committees held on April 19, 2011, and a next face-to-face meeting scheduled

1  with the NFRS and Simo Holdings committees for May 23, 2011.  Further

2  extensive communications with the committees are ongoing.

3       The Debtors are moving as quickly as feasible to develop a viable and

4  confirmable reorganization plan.  Having already engaged in an extensive effort that

5  resulted in successfully obtaining debtor in possession financing, the Debtors are

6  stabilizing their business operations, and working to improve their cash flow from

7  operations.  Contemporaneously, the Debtors (with the recently appointed CRO in place)

8  are evaluating their business operations and have commenced the process of identifying,

9  vetting, and getting in place a funding source or sources that the Debtors anticipate will

10  be part of a plan of reorganization.  In the process of developing their reorganization plan,

11  intend to regularly engage in discussions and negotiations with the committees and other

12  creditors.

13       The Court has approved the Debtors' retention of qualified professionals to assist

14  with their reorganization efforts.  The Debtors' motion for an order authorizing the

15  appointment of George Blanco and Avant Advisory Group as CRO of the Debtors was

16  approved by the Court at a hearing on May 5, 2011, and Mr. Blanco has been working

17  full-time since April 13 in assisting the Debtors.  The Debtors have also employed Venturi

18  & Company as a financial advisor to assist the Debtors with identifying and vetting

19  potential funding sources in connection with a reorganizing plan.  The parallel processes

20  of evaluating the Debtors' business operations and identifying and vetting funding

21  sources to finance a plan of reorganization are underway and will require significant

22  further time and effort.  As stated above, the Debtors are additionally engaged in regular,

23  extensive, and ongoing communications with the official committees of unsecured

24  creditors in these cases and as the Debtors' reorganization plan is developed will

25  required adequate time to discuss and negotiate issues connected with the plan with the

26  committees and other creditors.  For all of these reasons, there is a significant likelihood

27  that it may take more than 120 days from the Petition Date for the Debtors' to be in a

28  position to productively move forward with the filing of a plan of reorganization in these

1  cases.  Therefore, the Debtors are asking for an additional 60 days to file a plan in an

2  effort to avoid the potential misdirection or inefficient allocation of resources that would

3  occur if the Debtors did not obtain an extension.  Accordingly, the Debtors submit that the

4  granting of this Motion and the extension of the exclusivity period is in the best interest of

5  the Debtors and the estates.

6                                              II.

7                    **CAUSE EXISTS TO GRANT THE MOTION**

8          Subject to certain limited exceptions, a debtor in possession has the exclusive

9  right to file a plan of reorganization for the first 120 days after the commencement after

10  the order for relief.  11 U.S.C. § 1121(b).  In addition, once a plan is filed, the Bankruptcy

11  Code provides an additional exclusivity period - up to 180 days after the order for relief -

12  for the Debtor to obtain the acceptance of the plan.  11 U.S.C. § 1121(c)(3).  These

13  exclusivity periods are subject to extensions for "cause" under subsection (d) of Section

14  1121.  Bankruptcy Code section 1121 provides, in pertinent part, as follows:

15          (b) Except as otherwise provided in this section, only the
            debtor may file a plan until after 120 days after the date of the
16          order for relief under this chapter.

17          (c) Any party in interest, including the debtor, the trustee, a
            creditors' committee, an equity security holders' committee, a
18          creditor, an equity security holder, or any indenture trustee,
            may file a plan if and only if –

19
                (1) a trustee has been appointed under this chapter;
20
                (2) the debtor has not filed a plan before 120 days after the
21          date of the order for relief under this chapter; or

22              (3) the debtor has not filed a plan that has been accepted,
            before 180 days after the date of the order for relief under this
23          chapter, by each class of claims or interests that is impaired
            under the plan.
24
            (d) (1) Subject to paragraph (2), <u>on request of a party in</u>
25          <u>interest made within the respective periods specified in</u>
            <u>subsections (b) and (c) of this section and after notice and a</u>
26          <u>hearing, the court may for cause reduce or increase the 120-</u>
            <u>day period or the 180-day period referred to in this section.</u>
27
                (2)(A) This 120-day period specified in paragraph (1) may
28          not be extended beyond a date that is 18 months after the

1    date of the order for relief under this chapter.

2    (B) The 180-day period specified in paragraph (1) may
not be extended beyond a date that is 20 months after the
3    date of the order for relief under this chapter.

4    11 U.S.C. § 1121 (emphasis added).

5    Thus, under section 1121, a debtor has the exclusive right to file a plan of

6    reorganization for the first 120 days after the date of the order for relief, subject to certain

7    limited exceptions. *See* 11 U.S.C. § 1121(b). If a debtor files a plan within the 120-day

8    exclusivity period, section 1121(c)(3) provides that exclusivity is extended for an

9    additional 60 days to allow acceptance of the plan by each class of claims or interests

10   that is impaired under the plan. *See* 11 U.S.C. § 1121(c)(3). These exclusivity periods

11   may be increased for "cause." *See* 11 U.S.C. § 1121(d).

12   The Bankruptcy Code does not define "cause." Whether cause exists to extend

13   the exclusivity period(s) is in the discretion of the court. *See, e.g.*, In re Washington-St.

14   Tammany Elec. Coop., Inc., 97 B.R. 852, 854 (E.D. La. 1989); In re Public Service Co. of

15   New Hampshire, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("the legislative intent has been

16   construed to leave the question to the reorganization court in the exercise of its discretion

17   and to promote maximum flexibility to suit various types of reorganization proceedings.");

18   *see also* In re Henry Mayo Newhall Memorial Hospital, 282 B.R. 444, 452 (Bankr. 9th Cir.

19   2002) (stating that "the question is inherently fact-specific and calls for a delicate exercise

20   of judgment about which seasoned judges could differ."); In re Cramer, Inc., 105 B.R.

21   433, 434 (Bankr. W.D. Tenn. 1989) ("[T]he hallmark of 11 U.S.C. § 1121 is flexibility").

22   In determining whether cause exists to extend the exclusivity period(s), courts

23   consider the following factors:

24   (1)    the size and complexity of the case;

25   (2)    the necessity of sufficient time to permit the debtor to negotiate a
plan of reorganization and prepare adequate information.

26   (3)    the existence of good faith progress toward reorganization;

27   (4)    the fact that the debtor is paying its bills as they become due;

28

AMUHTAR\ 713601.2                            6

(5)     whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(6)     whether the debtor has made progress in negotiations with its creditors;

(7)     the amount of time which has elapsed in the case;

(8)     whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

(9)     whether an unresolved contingency exists.

In re Dow Corning Corp., 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997) (denying creditors' committee's joint motion to terminate two-year exclusivity period in case involving mass tort claims, and enumerating nine factors to be evaluated) (citing In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996)); *see also* In re Henry Mayo Newhall Memorial Hosp., 282 B.R. 444, 452 (Bankr. 9th Cir. 2002) (citing In re Dow Corning Corp. and In re Express One Int'l, Inc.).

This nine-factor test, however, does not require a debtor to satisfy each factor. Rather, courts examine the factors together in the context of a particular case. See In re Amko Plastics, 26 Inc., 197 B.R. 74, 76-77 (Bankr. S.D. Ohio 1996) (granting five month exclusivity extension where debtor exhibited substantial turn-around efforts). Consideration of an exclusivity motion should also involve "a broader, more global view - focused on what is best for these chapter 11 cases; most in keeping with the letter and spirit of chapter 11; and what is most appropriate under the unique facts" of cases before the Court. *See* In re Adelphia Communications Corp., 352 B.R. 578, 582 (Bankr. S.D.N.Y. 2006).

As illustrated below, the application of the Dow Coming factors for determining whether "cause" exists to further extend exclusivity under section 1129(d), favors granting the Debtor's request for an additional 60-day extension.

### A.    Size and Complexity

While the Debtors' cases are not extremely large, they do entail a fair degree of

1 | complexity.  The Office of the United States Trustee ("UST") has appointed three
2 | separate official committees of creditors in these cases (the "Committees"), two of which
3 | have retained counsel and  a financial advisor.  The Debtors retained a CRO to assist
4 | with their reorganization efforts.  The Debtors also retained Venturi & Company as a
5 | financial advisor, which assisted the Debtors with successfully obtaining post-petition
6 | financing and now has turned its attention to obtaining financing for a plan of
7 | reorganization.  The Debtors are in the process of finalizing applications to employ
8 | special intellectual property litigation counsel, as well as an accountant and lease
9 | adjustment specialist.  The complexity of these cases requires the specialized services of
10 | a number different types of professionals.  At the inception of these cases, it was
11 | necessary to obtain debtor in possession funding.  That has occurred.  It will now take
12 | some time that likely may extend beyond 120 days from the commencement of these
13 | cases to develop, prepare, present, negotiate, and file a plan of reorganization.  The
14 | development of the plan encompasses both the ongoing evaluation of the Debtors'
15 | operations and lining up funding to support the plan.  The Debtors desire the plan to be a
16 | consensual plan supported by the Committees and other creditors and this will require
17 | adequate time.

18 | **B.**    **Sufficient Time Is Needed To Prepare And Negotiate A Plan**

19 | The Debtors are moving as quickly as feasible to develop a viable and
20 | confirmable reorganization plan.  Having already engaged in an extensive effort that
21 | resulted in successfully obtaining debtor in possession financing, the Debtors are
22 | stabilizing their business operations, and working to improve their cash flow from
23 | operations.  Contemporaneously, the Debtors (with the recently appointed CRO in place)
24 | are evaluating their business operations and have commenced the process of identifying,
25 | vetting, and getting in place a funding source or sources that the Debtors anticipate will
26 | be part of a plan of reorganization.

27 | The parallel processes of evaluating the Debtors' business operations and
28 | identifying and vetting funding sources to finance a plan of reorganization are underway

AMUHTAR\ 713601.2

8

1  and will require significant further time and effort.  As stated above, the Debtors are

2  additionally engaged in regular, extensive, and ongoing communications with the official

3  committees of unsecured creditors in these cases and as the Debtors' reorganization

4  plan is developed will required adequate time to discuss and negotiate issues connected

5  with the plan with the Committees and other creditors.  The Debtors' goal is to develop

6  and viable, confirmable, and consensual plan.  In order to allow a fair and adequate

7  opportunity for the achievement of this goal, it appears that an extension of exclusivity will

8  be necessary.

9           **C.    Good Faith Progress And Payments In Ordinary Course**

10          In considering an extension of a debtor's exclusivity periods, courts often assess a

11  debtor's progress during the initial stages of a case toward development of a consensual

12  plan.  *See* In re United Press Int'l, 60 B.R. 265, 269-70 (Bankr. D.D.C. 1986) (discussing

13  an extension of exclusivity).  A key purpose of exclusivity is to provide a debtor with

14  incentive to file a plan.  Here, the Debtor has demonstrated good faith progress toward

15  reorganization.

16          As one of their "first day" motions, the Debtors sought to terminate leases of 12

17  stores which the Debtors had closed prior to the commencement of these cases.

18  Additionally, the Debtors have successfully obtained financing so that they may make

19  payments in the ordinary course while a plan is prepared.  The Debtors are current on

20  their obligations to creditors coming due postpetition.  The Debtors have stabilized their

21  business operations, have improved their cash flow, and their improvements to the nature

22  and quality of their store inventory (thanks to obtaining debtor-in-possession financing)

23  have already resulted in improved sales.  The Court has approved the Debtors'

24  appointment of a CRO to assist them in this reorganization (with the consent of the

25  Committees), and are engaged in regular, ongoing, extensive communications with the

26  Committees and professionals employed by the NFRS and Simo Holdings Committees.

27  These actions demonstrate that the Debtors are working in good faith toward a

28  reorganization of these cases.

AMUHTAR\ 713601.2                              9

1      **D.**     **Prospects For Filing a Plan, Negotiations With The Committees**

2      Now that the Debtors have obtained post-petition financing, reorganization is a

3 viable prospect in these cases. While the Debtors' operations and potential funding for

4 an exit plan are still under evaluation, the Debtors' retail outlets continue to generate

5 revenue for the Debtors, and the Debtors' intellectual property has significant value which

6 the Debtors intend to harness in connection with the plan of reorganization that is being

7 developed. The Debtors have retained qualified professionals to assist them with

8 developing a plan of reorganization as well as assessing their business operations. As

9 such, the Debtors have reasonable prospects for filing a viable plan, have negotiated in

10 good faith with the Committees and other creditors with regard to various different issues

11 that have already arisen in these cases, and will be negotiating with the Committees and

12 other creditors in good faith with regard to a chapter plan and related issues.

13      **E.**     **Time Elapsed In Cases**

14      This is the Debtors' first motion to address an extension of the exclusivity periods

15 under Section 1121(d). The Debtors' bankruptcy case has been pending for less than

16 four months, in which the Debtors have been focused on obtaining post-petition

17 financing, rejecting underperforming leases, stabilizing business operations, and tending

18 to administrative matters. In a case as complex as this, an extension of time to develop,

19 prepare, present, negotiate, and file a chapter 11 plan is reasonable.

20      These facts demonstrate that "cause" exists to grant the Motion. An extension of

21 the Debtors' exclusivity period is appropriate to maintain the status quo. The Debtors are

22 in the best position to control the course and timing of a plan. Allowing another party to

23 enter into the plan process, at this stage, would likely result in fragmentation, delay,

24 misdirection of limited resources, diverting necessary attention from the Debtor's

25 development and negotiate of a potential consensual plan, increased litigation and

26 administrative costs and a reduced return to creditors. The increased administrative

27 costs of such a scenario could alone be very damaging to the opportunity for a successful

28 reorganization is these cases.

**V.**

**CONCLUSION**

Based on the foregoing, the Debtors respectfully request that the Motion be granted in all respects, that the Debtors be granted a 60-day extension of the time periods to exclusively file and seek confirmation of a plan of reorganization, that the exclusivity period for the filing of the plan be extended to through and including August 23, 2011, that the exclusivity period for soliciting and securing acceptances of the plan shall be extended to through and including October 22, 2011, that the Court authorize the Debtors to request additional extensions for cause shown, and for such other and further relief as the Court deems just and proper.

Dated: May 12, 2011                          Respectfully submitted,

                                             **Sulmeyer**Kupetz
                                             A Professional Corporation


                                             By: _____
                                                 Bankruptcy Counsel for No Fear Retail
                                                 Stores, Inc. Simo Holdings, Inc, and No
                                                 Fear MX, Inc., Debtors and Debtors in
                                                 Possession

**DECLARATION OF MARK SIMO**

I, Mark Simo, declare:

1.      I am the Chief Executive Officer of No Fear Retail Stores, Inc. ("NFRS"), Simo Holdings, Inc. ("Simo Holdings"), and No Fear MX, Inc. ("NFMX"), the debtors and debtors in possession in the above-captioned bankruptcy cases, (collectively, the "Debtors").

2.      I have been employed by Simo Holdings as its Chief Executive Officer since its founding in 1990. I have been the Chief Executive Officer of NFRS since its incorporation in 2006 and of NFMX since its formation in 2007. I am actively involved in the Debtors' affairs since those dates and matters impacting, or relating to, the Debtors' bankruptcy cases.

3.      I make and execute this declaration in support of the "Motion of Debtors and Debtors in Possession for Extension of Time to Assume or Reject Unexpired Real Property Leases" (the "Motion").

4.      On February 24, 2011 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors remain in possession of their assets and continue to manage their affairs as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.      The Debtors are related entities that are operated and function together as a business enterprise that primarily involves the retail and wholesale sale of casual apparel and accessories as well as protective motocross equipment and the development and licensing of intellectual property rights in consumer products brands. The Debtors currently operate 41 retail stores in seven different states. The Debtors lease stores through leases executed by NFRS.

6.      The Debtors commenced these cases as a result of a combination of factors. As a consumer business selling discretionary items, the Debtors have been negatively impacted by the recession that hit the United States in late 2007.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   The downturn in consumer spending disproportionately impacted the Debtors

2   given (i) the discretionary nature of their products, (ii) their target customer, and

3   (iii) their geographic concentration.

4        7.      The Debtors' businesses primarily consist of the retail sale of casual

5   apparel and accessories as well as protective motocross equipment.  These items

6   are discretionary purchases for consumers, which decreased significantly in the

7   economic downturn .  Further, much of the Debtors' customer base is made up of

8   "blue collar" workers, who have been hurt severely by the housing and labor

9   crises, and whose discretionary spending power has weakened substantially.  In

10  addition, the Debtors' retail stores are concentrated in California, Arizona and

11  Nevada -- three of the economically hardest-hit areas in the United States.

12       8.      These factors resulted in declining comparable store sales and overall

13  sales for the last three years.  Sales declined approximately 20% in NFRS's fourth

14  fiscal quarter of 2010 compared to the fourth quarter of 2009 and same store sales

15  were down approximately 12% in fiscal 2010.  NFRS is bound by a number of long

16  term leases with landlords who generally were unwilling to renegotiate the terms of

17  those leases to reflect the fundamental changes that the recession has caused in

18  the retail industry generally and NFRS's business in particular.

19       9.      The Debtors also are burdened by significant expenses incurred in a

20  failed attempt in 2009 and 2010 to raise capital through a proposed reverse

21  merger a public stock offering with Gatorz Inc.  The Debtors incurred

22  approximately $1,000,000 in professional fees, including legal and accounting

23  fees, in order to execute that financing transaction.  That financing ultimately

24  failed.

25       10.     Further, prior to the Petition Date, due to its inability to obtain

26  necessary financing, the Debtors' ability to purchase inventory for its stores was

27  severely impacted.  The resulting inventory deficiencies created a negative

28  downward spiral – the lack of inventory impaired store sales, which impacted cash

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    flow, which, in turn, further impaired the Debtors' ability to secure inventory.

2        11.    The Debtors commenced these cases on February 24, 2011. On February

3    25, 2011, the Debtors filed numerous "first day" motions before this Court, seeking

4    (among other things) authority to use cash collateral, to establish procedures

5    relating to utility providers, to pay employees' priority prepetition claims, preserve

6    existing cash management systems, reject twelve real property leases, and for

7    joint administration of these cases. These motions were granted by the Court.

8        12.    On March 18, 2011, the Debtors filed a motion for order authorizing

9    them to enter into a debtor-in-possession credit facility with Hilco Brands, LLC,

10   and Infinity FS Brands, LLC, subject to allowing other lenders to present more

11   favorable proposals [Docket #87], (the "Financing Motion"). On April 7, 2011, the

12   Court entered an order granting the Financing Motion on an interim basis [Docket

13   #145], (the "Interim Financing Order").

14       13.    After entry of the Interim Financing Order, 1903 Onshore Funding,

15   LLC, ("Onshore"), offered to provide post-petition financing on terms somewhat

16   more favorable to the Debtors than those proposed by Hilco Brands, LLC, and

17   Infinity FS Brands, LLC. As a result, at a hearing on April 18, 2011, the Court

18   granted the Financing Motion on a final basis and authorized the Debtors to enter

19   into a post-petition financing agreement with Onshore. An order granting the

20   Financing Motion on a final basis was entered on April 25, 2011. [Docket. No.

21   201]. Shortly thereafter, Onshore provided its funding to the Debtors under the

22   credit facility approved by the Court.

23       14.    In March and April 2011, the Debtors filed applications to retain

24   general bankruptcy counsel, to retain Venturi & Company as a financial advisor,

25   and to retain George Blanco with Avant Advisory Group, LLC as Chief

26   Restructuring Officer. These applications were granted by the Court at a hearing

27   on May 5, 2011. Moreover, the Debtors are actively engaging with the creditors'

28   committees appointed in these cases, including (among other things) extensive

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

communications with professionals employed by the NFRS and Simo Holdings

committees, an initial face-to-face meeting with the NFRS and Simo Holdings

Committees held on April 19, 2011, and a next face-to-face meeting scheduled

with the NFRS and Simo Holdings committees for May 23, 2011. Further

extensive communications with the committees are ongoing.

15.    The Debtors are moving as quickly as feasible to develop a viable

and confirmable reorganization plan. Having already engaged in an extensive effort

that resulted in successfully obtaining debtor in possession financing, the Debtors are

stabilizing their business operations, and working to improve their cash flow from

operations. Contemporaneously, the Debtors (with the recently appointed CRO in place)

are evaluating their business operations and have commenced the process of identifying,

vetting, and getting in place a funding source or sources that the Debtors anticipate will

be part of a plan of reorganization. In the process of developing their reorganization plan,

intend to regularly engage in discussions and negotiations with the committees and other

creditors.

16.    The Court has approved the Debtors' retention of qualified professionals to

assist with their reorganization efforts. The Debtors' motion for an order authorizing the

appointment of George Blanco and Avant Advisory Group as CRO of the Debtors was

approved by the Court at a hearing on May 5, 2011, and Mr. Blanco has been working

full-time since April 13 in assisting the Debtors. The parallel processes of evaluating the

Debtors' business operations and identifying and vetting funding sources to finance a

plan of reorganization are underway and will require significant further time and effort. As

stated above, the Debtors are additionally engaged in regular, extensive, and ongoing

communications with the official committees of unsecured creditors in these cases and as

the Debtors' reorganization plan is developed will required adequate time to discuss and

negotiate issues connected with the plan with the committees and other creditors. For all

of these reasons, there is a significant likelihood that it may take more than 120 days

from the Petition Date for the Debtors' to be in a position to productively move forward

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    with the filing of a plan of reorganization in these cases.  Therefore, I believe that the

2    granting of this Motion and the extension of the exclusivity period is in the best interest of

3    the Debtors and the estates.

4         17.    While the Debtors' cases are not extremely large, they do entail a fair

5    degree of complexity.  The Office of the United States Trustee ("UST") has appointed

6    three separate official committees of creditors in these cases (the "Committees"), two of

7    which have retained counsel and  a financial advisor.  The Debtors retained a CRO to

8    assist with their reorganization efforts.  The Debtors also retained Venturi & Company as

9    a financial advisor, which assisted the Debtors with successfully obtaining post-petition

10   financing and now has turned its attention to obtaining financing for a plan of

11   reorganization.  The Debtors are in the process of finalizing applications to employ

12   special intellectual property litigation counsel, as well as an accountant and lease

13   adjustment specialist.  The complexity of these cases requires the specialized services of

14   a number different types of professionals.  At the inception of these cases, it was

15   necessary to obtain debtor in possession funding.  That has occurred.  It will now take

16   some time that likely may extend beyond 120 days from the commencement of these

17   cases to develop, prepare, present, negotiate, and file a plan of reorganization.  The

18   development of the plan encompasses both the ongoing evaluation of the Debtors'

19   operations and lining up funding to support the plan.  The Debtors desire the plan to be a

20   consensual plan supported by the Committees and other creditors and this will require

21   adequate time.

22        18.    The Debtors are moving as quickly as feasible to develop a viable

23   and confirmable reorganization plan.  Having already engaged in an extensive effort

24   that resulting in successfully obtaining debtor in possession financing, the Debtors are

25   stabilizing their business operations, and working to improve their cash flow from

26   operations.  Contemporaneously, the Debtors (with the recently appointed CRO in place)

27   are evaluating their business operations and have commenced the process of identifying,

28   vetting, and getting in place a funding source or sources that I anticipate will be part of a

1   plan of reorganization.

2        19.    The Debtors are current on their obligations to creditors coming due

3   postpetition.

4        20.    Now that the Debtors have obtained post-petition financing, reorganization

5   is a viable prospect in these cases.  While the Debtors' operations and potential funding

6   for an exit plan are still under evaluation, the Debtors' retail outlets continue to generate

7   revenue for the Debtors, and the Debtors' intellectual property has significant value which

8   the Debtors intend to harness in connection with the plan of reorganization that is being

9   developed.  As such, the Debtors have reasonable prospects for filing a viable plan.

10        I declare under penalty of perjury that the foregoing is true and correct and

11   that this declaration was executed on May __, 2011, at Carlsbad, California

12

13

14                                                              Mark Simo

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**DECLARATION OF GEORGE BLANCO**

I, George Blanco, declare:

1.    I have personal knowledge of the facts contained in this declaration.  I can testify that said facts are true and correct.

2.    I make and execute this declaration in support of the "Motion of Debtors and Debtors in Possession for Extension of Time to Assume or Reject Unexpired Nonresidential Real Property Leases" (the "Motion").  Capitalized terms not otherwise defined herein have the meanings given them in the Motion.

3.    I am the Managing Director of Avant Advisory Group (www.avantadvisory.com), a consulting firm specializing in advising troubled companies on the development and implementation of solutions that result in returning businesses to operational health ("Avant"), and have served in that capacity for many years.  I am a nationally known turnaround expert with more than twenty-five years of experience in restructuring companies and serving as a chief restructuring officer of debtors.  I have successfully assisted debtors in numerous chapter 11 cases and have also served as CRO and assisted numerous companies outside of chapter 11 bankruptcy.

4.    On April 20, 2011, the Debtors filed a "Motion Of Debtors And Debtors In Possession For Order Appointing George Blanco As Chief Restructuring Officer" (the "Blanco Application").  In the Blanco Application, the Debtors seek to employ me and Avant as the CRO of the Debtors.  The Blanco Application was approved by the Court at the hearing on May 5, 2011.

5.    I began providing CRO services to the Debtors on April 13, 2011.

6.    Since April 13, 2011, I have worked almost full time in providing the Debtors with restructuring services in these bankruptcy cases.  Since this date I have become immersed in reviewing the Debtors' business operations and have become familiar with the Debtors' finances.  As a result of this work I have also become familiar with the Debtors' business operations and prospects for

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  reorganization.

2       7.     The Debtors are moving as quickly as feasible to develop a viable

3  and confirmable reorganization plan. Having already engaged in an extensive effort

4  that resulted in successfully obtaining debtor in possession financing, the Debtors are

5  stabilizing their business operations, and working to improve their cash flow from

6  operations. Contemporaneously, the Debtors (with the recently appointed CRO in place)

7  are evaluating their business operations and have commenced the process of identifying,

8  vetting, and getting in place a funding source or sources that the Debtors anticipate will

9  be part of a plan of reorganization. In the process of developing their reorganization plan,

10  intend to regularly engage in discussions and negotiations with the committees and other

11  creditors.

12       8.     The parallel processes of evaluating the Debtors' business operations and

13  identifying and vetting funding sources to finance a plan of reorganization are underway

14  and will require significant further time and effort. The Debtors are additionally engaged

15  in regular, extensive, and ongoing communications with the official committees of

16  unsecured creditors in these cases and as the Debtors' reorganization plan is developed

17  will required adequate time to discuss and negotiate issues connected with the plan with

18  the Committees and other creditors. For all of these reasons, there is a significant

19  likelihood that it may take more than 120 days from the Petition Date for the Debtors to

20  be in a position to productively move forward with the filing of a plan of reorganization in

21  these cases. Because of the potential misdirection or inefficient allocation of resources

22  that would occur if the Debtors did not obtain an extension, I believe the extension of the

23  exclusivity period is in the best interest of the Debtors and the estates.

24       9.     While the Debtors' cases are not extremely large, they do entail a fair

25  degree of complexity. The Office of the United States Trustee ("UST") has appointed

26  three separate official committees of creditors in these cases (the "Committees"), two of

27  which have retained counsel and  a financial advisor. The Debtors retained a CRO to

28  assist with their reorganization efforts. The Debtors also retained Venturi & Company as

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   a financial advisor, which assisted the Debtors with successfully obtaining post-petition

2   financing and now has turned its attention to obtaining financing for a plan of

3   reorganization.  The Debtors are in the process of finalizing applications to employ

4   special intellectual property litigation counsel, as well as an accountant and lease

5   adjustment specialist.  The complexity of these cases requires the specialized services of

6   a number different types of professionals.  At the inception of these cases, it was

7   necessary to obtain debtor in possession funding.  That has occurred.  It will now take

8   some time that likely may extend beyond 120 days from the commencement of these

9   cases to develop, prepare, present, negotiate, and file a plan of reorganization.  The

10  development of the plan encompasses both the ongoing evaluation of the Debtors'

11  operations and lining up funding to support the plan.  The Debtors desire the plan to be a

12  consensual plan supported by the Committees and other creditors and this will require

13  adequate time.

14      10.    The Debtors are current on their obligations to creditors coming due

15  postpetition.  The Debtors have stabilized their business operations, have improved their

16  cash flow, and their improvements to the nature and quality of their store inventory

17  (thanks to obtaining debtor-in-possession financing) have already resulted in improved

18  sales.  The Court has approved the Debtors'  appointment of a CRO to assist them in this

19  reorganization (with the consent of the Committees), and are engaged in regular,

20  ongoing, extensive communications with the Committees and professionals employed by

21  the NFRS and Simo Holdings Committees.  These actions demonstrate that the Debtors

22  are working in good faith toward a reorganization of these cases.

23      11.    Now that the Debtors have obtained post-petition financing, reorganization

24  is a viable prospect in these cases.  While the Debtors' operations and potential funding

25  for an exit plan are still under evaluation, the Debtors' retail outlets continue to generate

26  revenue for the Debtors, and the Debtors' intellectual property has significant value which

27  the Debtors intend to harness in connection with the plan of reorganization that is being

28  developed.  The Debtors have reasonable prospects for filing a viable plan, and have

1  negotiated in good faith with the Committees and other creditors with regard to various

2  different issues that have already arisen in these cases.

3       12.    An extension of the Debtors' exclusivity period is appropriate to maintain the

4  status quo.  The Debtors are in the best position to control the course and timing of a

5  plan.  Allowing another party to enter into the plan process, at this stage, would likely

6  result in fragmentation, delay, misdirection of limited resources, diverting necessary

7  attention from the Debtor's development and negotiate of a potential consensual plan,

8  increased litigation and administrative costs and a reduced return to creditors.  The

9  increased administrative costs of such a scenario could alone be very damaging to the

10  opportunity for a successful reorganization is these cases.

11       I declare under penalty of perjury under the laws of the United States of

12  America that the foregoing is true and correct.

13       Executed this __th day of May, 2011, at San Diego, California.

14

15                                                 George Blanco

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA  90071-1406
TEL 213.626.2311 • FAX 213.629.4520